UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, TEAMSTERS LOCAL UNION NO. 357 and AIRLINE PROFESSIONALS ASSOCIATION TEAMSTERS LOCAL UNION NO. 1224,<br><br>Plaintiffs,<br><br>v.<br><br>REPUBLIC AIRWAYS, INC., REPUBLIC AIRWAYS HOLDINGS, INC. AND HYANNIS AIR SERVICE INC.,<br><br>Defendants. | Civil Action No.: 1:23-cv-995 |

## COMPLAINT

Plaintiffs International Brotherhood of Teamsters, Teamsters Local Union No. 357 and Airline Professionals Association, Teamsters Local Union No. 1224 (collectively "Teamsters"), for their complaint against Defendants Republic Airways, Inc. ("Republic"), Republic Airways Holdings, Inc. ("Holdings") and Hyannis Air Service, Inc., d/b/a Cape Air and Nantucket Airlines ("Hyannis Air") (collectively "Defendants"), states as follows:

1.  This is an action for injunctive relief, declaratory judgment and other appropriate relief, brought pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq.* (hereinafter "RLA" or "the Act"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, against Defendants' unlawful direct dealing with pilots for individual employment agreements to govern the pilots' conditions of employment while they are members of the crafts or classes of pilots for whom Teamsters are the certified representative under Section 2, Ninth of the RLA, 45 U.S.C. § 152,

Ninth. The individual agreements allow Defendants to evade the terms of the collective bargaining agreements covering those pilot crafts or classes. These unlawful agreements also allow Defendants to require that the affected pilots work for Defendants for what may be an indefinite period of servitude and restrict the post-employment opportunities of the affected pilots by imposing oppressive and unlawful restrictions that prevent them from accepting employment by other airlines. Finally, these unlawful agreements deprive the affected pilots of the privileges and benefits of the Teamsters' collective bargaining agreements and their representation by Teamsters while they are members of the crafts or classes represented by Teamsters, all in violation of Defendants' duties under the Railway Labor Act.

## **STATEMENT OF JURISDICTION**

2. This action arises under the Railway Labor Act, 45 U.S.C. §§ 151, *et seq.*, and the Court therefore has Federal Question jurisdiction pursuant to 28 U.S.C. § 1331, as well as jurisdiction under 28 U.S.C. § 1337, over this dispute concerning contracts made under federal law affecting interstate commerce. This Court possesses jurisdiction to enforce the parties' obligations under the Railway Labor Act and to issue an order compelling Defendants to refrain from further violations of the Act; to invalidate *ab initio* Defendants' illegal individual employment agreements; and to order Defendants to refrain from dealing with any other person or party except the certified representative of the crafts or classes of pilots at Republic and Hyannis Air concerning the rates of pay, rules and working conditions applicable to the pilots of those airlines.

3. The Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq.*, does not deprive this Court of jurisdiction over Teamsters' claim for injunctive relief because this action is brought to enforce the mandatory procedures of the Railway Labor Act, 45 U.S.C. § 151, *et seq.*

## VENUE AND PERSONAL JURISDICTION

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and (c)(2). This Court possesses personal jurisdiction over Defendants Republic and Holdings, which maintain their principal places of business in this district. This Court has personal jurisdiction over Hyannis Air because its unlawful agreements, to which Republic is also a party, require affected pilots to become employees of Republic, are "delivered in the State of Indiana" in this district and recite that they are "governed by Indiana law", and require judicial review and enforcement in this district.

## PARTIES

5. The International Brotherhood of Teamsters is an unincorporated labor organization with its headquarters at 25 Louisiana Avenue, N.W., Washington, D.C. Through its Airline Division, the IBT is the certified bargaining representative of the approximately 2,000 pilots employed by Defendants Republic and Holdings, pursuant to certifications issued by the National Mediation Board in Case No. R-6199 on July 30, 1993 and Case No. R-7284 on June 28, 2011 and the approximately 210 pilots employed by Defendant Hyannis Air pursuant to a certification issued by the National Mediation Board in Case No. R-7201 on January 14, 2010.

6. Plaintiff Teamsters Local Union No. 357 is an unincorporated labor organization and affiliated local union of the IBT duly chartered and designated by the IBT to act as its agent for purposes of day-to-day contract administration and representation of the Republic pilots with its principal office in Plainfield, IN. The pilots of Republic are members of Teamsters Local 357, which has the capacity to sue and be sued in its own name.

7. Plaintiff Airline Professionals Association, Teamsters Local Union No. 1224 is an unincorporated labor organization and affiliated local union of the IBT duly chartered and

designated by the IBT to act as its agent for purposes of day-to-day contract administration and representation of the pilots employed by Defendant Hyannis Air, with its principal office in Wilmington, OH.  The pilots of Hyannis Air are members of Local 1224, which has the capacity to sue and be sued in its own name.

8. Defendant Republic Airways, Inc. is an "air carrier" subject to the Federal Aviation Act of 1958, as amended, 49 U.S.C. §§ 40101 *et seq.*  Republic is also a "carrier" as that term is defined in Sections 201 and 202 of the RLA, 45 U.S.C. §§ 181, 182.  Defendant Republic maintains its principal place of business in this judicial district.

9. Defendant Republic Airways Holdings, Inc. is a holding company and corporation organized under the laws of Delaware with its principal office located in Indianapolis, Indiana and does business within this district.  At all relevant times herein, Republic was a subsidiary of Holdings and under its control.  Further, Holdings acts as agent of Republic for purposes of fulfilling its duties under the Railway Labor Act, including negotiations over the formation of new collective bargaining agreements with the pilots of Republic and administration of the Republic pilot collective bargaining agreement.

10. Defendant Hyannis Air, Inc., d/b/a Cape Air and Nantucket Airlines, is an "air carrier" subject to the Federal Aviation Act of 1958, as amended, 49 U.S.C. §§ 40101 et seq.  It is also a "carrier" as that term is defined in Sections 201 and 202 of the RLA, 45 U.S.C. §§ 181, 182.  Defendant Hyannis Air maintains its principal place of business in Hyannis, MA.

11. Defendant Holdings owns an approximately 40 percent shareholder interest in Defendant Hyannis Air.

## FACTS AND BACKGROUND

12.     Republic is a "regional airline" providing air service to "mainline" airlines American Airlines, Delta Air Lines and United Air Lines, as part of those mainline airlines' overall route network.  Republic is a subcontractor of the mainline airlines to fly their passengers in aircraft it operates and maintains on routes assigned by the mainline airlines.  Republic does not maintain any routes of its own nor does it sell airline tickets to passengers.  It solely operates flight schedules to and from destinations assigned by its mainline airline customers.

13.     Republic employs approximately 2,000 pilots who operate the airline's flights.

14.     As the certified representative of Republic's pilots, Teamsters has entered collective bargaining agreements in 1994, 1998, 2003, 2015, 2018 and 2022 with Republic, which established the rates of pay, rules and working conditions applicable to Republic pilots.

15.     Teamsters and Republic recently concluded a new collective bargaining agreement in October 2022.

16.     Defendant Hyannis Air is a "commuter airline" operating as both a scheduled air service carrier, selling tickets directly to passengers, and a contract carrier to carry other airlines' passengers.  It conducts flight operations in the Northeast, Midwest, Montana and the Caribbean.

17.     Hyannis Air employs approximately 210 pilots.

18.     As the certified representative of the Hyannis Air pilots, Teamsters has entered collective bargaining agreements in 2012, 2015 and in April 2020 with Hyannis Air, which established the rates of pay, rules and working conditions applicable to Hyannis Air pilots.

19.     In May 2023, Teamsters learned that Defendants had begun requiring new hire pilots hired by Defendants to execute individual employment agreements with one or more of Defendants that will apply to, and are intended to apply to, the employment of the pilot at Hyannis

Air or Republic.  *See* Exhibits 1, 2.  The pilots were required to enter the agreement in order to be hired as pilots by Hyannis Air and/or Republic, and were threatened with loss of that pilot job if they refused to sign the agreement.

20. These individual employment agreements include numerous oppressive and unlawful terms.

21. For example, the agreements impose an obligation that the employee remain a pilot employed by Defendants for what may in actual effect be an indefinite period of time.  The individual agreement between a pilot, Hyannis Air and Republic requires the pilot to remain employed at Hyannis until the pilot accumulates 720 hours of pilot-in-command (Captain) flying.  *See* Exhibit 1, p. 2.

22. The agreement then requires the pilot to resign their employment at Hyannis Air, surrendering all benefits of seniority and longevity for purposes of pay, benefits, and job bidding, to become pilots employed by Republic.  Exhibit 1, p. 3.

23. The individual agreement then requires a further indefinite period of "at least a three year employment commitment" to the two air carriers and two years' employment as a Captain at Republic, after the pilot is successfully able to satisfy the training requirements for Republic captain upgrade.  Exhibit 1, p. 3.  A pilot may require as much as two to three years to have an opportunity to upgrade to captain at Republic.

24. While purporting to be definite periods of employment, these restrictions may in actual effect result in indefinite periods of employment if there is insufficient flying available to the pilot at Hyannis Air or Republic, which would result in the pilot being unable to begin to satisfy the 720 hours as PIC at Hyannis Air or start the "two-year commitment as a captain at Republic." Rather, the pilot would be required to remain employed indefinitely at Hyannis Air or Republic

until the pilot accumulates the required flight time and receives and completes a captain upgrade position to then begin satisfying the periods recited in the agreements.

25. Neither the collective bargaining agreement covering pilots of Republic nor the collective bargaining agreement covering pilots of Hyannis Air have a provision requiring a minimum period of employment for pilots at the airlines.

26. Neither collective bargaining agreement has a provision requiring that a pilot accept a captain upgrade opportunity.

27. Neither collective bargaining agreement has a provision requiring a pilot to accept the first captain upgrade opportunity offered the pilot.

28. The individual employment agreements further impose a penalty on the pilot to repay to Republic the sum of $250,000 if the pilot leaves its employment prior to satisfying the potentially indefinite periods identified in the individual agreements. *See* Exhibit 1, p. 3-4; Exhibit 2, p. 3. The agreements assert as justification for this $250,000 penalty that Republic will incur consequential damages in excess of $1 million if a pilot breaches the agreement by leaving its employment.

29. Upon information and belief, Defendants' assertion of consequential damages arising from a pilot's breach of the individual employment agreement in excess of $1 million is false and without any good faith basis in fact. Local 357 has demanded Republic provide facts to validate its claimed consequential damages and Republic has refused to do so.

30. The contractual assertion that the $250,000 penalty imposed on pilots for leaving employment of Republic or Hyannis Air prior to satisfying the indefinite periods of employment identified in the individual agreements constitutes "liquidated damages" rather than a penalty is also false and without any good faith basis in fact.

31. The individual agreements further impose a post-employment restriction on the affected pilots that they may not seek employment by any other airline for a period of one-year after leaving the employment of Republic or Hyannis Air.  Exhibit 1, p. 4; Exhibit 2, p. 3.

32. This post-employment "noncompete provision" has never previously been imposed by Republic or Hyannis Air. On information and belief, no commercial airline has imposed such a restriction on its pilots before.  It is an unprecedented restriction on the freedom of movement and labor of pilots.

33. The noncompete provision does not protect any legitimate business interest of Republic or Hyannis Air and is intended solely to restrict the free labor market for pilots and restrict the employment opportunities of the pilots signing these agreements.

34. The noncompete provision's assertion that other airlines operate "in competition with Republic" with routes competing with Republic for the flying public is knowingly false and without any good faith basis in fact.

35. Republic does not provide its pilots with any trade secrets or other proprietary information.

36. In addition to imposing oppressive and burdensome restrictions on the pilots supported by nothing more than Defendants' knowingly false claims, the individual agreements are intended to evade numerous provisions of the Teamster collective bargaining agreements covering Hyannis Air and Republic pilots.

37. For example, these individual employment agreements irrevocably conflict with and are intended to evade the Teamsters collective bargaining agreements with Republic and/or Hyannis Air:

a. By imposing as a new working condition that Pilots must fly a minimum number of hours each month, which in turn, alters the contractual rules that govern work schedule bidding, days off, and leave entitlements.

b. By creating a requirement that pilots must report on their days off to perform additional work, depriving the pilots of negotiated rights with respect to schedule and over time bidding and minimum days off.

c. By requiring Hyannis Air to make additional overtime flying available to pilots covered by these agreements, thereby evading contractual scheduling rules and the bidding rights of other pilots not subject to the agreements.

d. By creating new hotel and housing entitlements, or monthly stipends in lieu thereof, for individual pilots that are not provided for in the Hyannis Air Pilots' collective bargaining agreement.

e. By forcing pilots covered by these agreements to meet heightened attendance standards, modifying vacation, sick leave, personal time, fatigue and other leave provisions and depriving them of the terms of the collective bargaining agreements governing these issues.

f. By requiring that pilots maintain continuously their FAA Medical Certificates, thereby evading the contractual rules with respect to physical standards, sick and medical leave.

g. By forcing Hyannis Air pilots to terminate their employment at Hyannis Air to accept employment at Republic upon accumulation of a set number of flight hours, thereby forfeiting their seniority rights and other contractual rights and privileges under the Hyannis Air pilot contract, which permits Defendants to evade

contractual seniority provisions and the contract's just cause and discipline and discharge terms under the Teamster contract with Hyannis Air.

      h.      By granting Hyannis Air and Republic, sole discretion to terminate a pilot's individual agreement and triggering its punitive contractual conditions against the pilot if they determine a standard under the agreement is not met, thereby evading the disciplinary just cause and grievance provisions of the Teamsters collective bargaining agreements with the carriers.

      i.      By designating the pilot as "at will," thereby evading the disciplinary just cause and grievance provisions of the contract.

38.      The individual agreements also seek to evade Defendants' agreements with Teamsters, which provide that only the collective bargaining agreements negotiated by Teamsters will govern the rates of pay, rules and working conditions applicable to pilots employed by Defendants.

39.      Republic is also forcing its new hire pilots (pilots hired directly by Republic rather than from Hyannis Air) to sign similarly oppressive individual agreements on pain of termination if the pilot refuses to sign the agreement.  (Exhibit 2)  These individual agreements are intended to evade, and have the effect of evading, numerous provisions of the Republic pilot collective bargaining agreement.

40.      These individual agreements also impose oppressive terms on the new hire Republic pilots intended to prevent those pilots from leaving the employment of Republic to be hired by another airline with better terms and conditions of employment for five years.

41.      These agreements require a minimum three-year term of employment at Republic to avoid the punitive conditions of the agreement.  That allegedly defined term of employment can

in fact be an undefined obligation to remain employed by Republic if the pilot is unable to obtain an upgrade to captain due to a reduction in flying at the airline.

42. Defendants' attempt to support consideration for these oppressive terms and contract by purporting to pay pilots a $100,000 bonus in return for their agreement to remain employed by Defendants and upgrade to captain at the first opportunity. The Hyannis Air pilot contract has no provision permitting the airline to offer captain upgrade bonuses to new hire pilots. The Republic pilot contract has no provision permitting the airline to offer captain upgrade bonuses to any persons other than existing Republic First Officers who are eligible for captain upgrade.

43. The individual employment agreements impose as a penalty for leaving Republic's employment prior to the three-year (or longer) term forfeiture and repayment of this purported captain upgrade bonus.

44. The individual agreements make false assertions with no good faith basis in fact to justify oppressive post-employment conditions and financial penalties on pilots who seek other employment.

45. The individual agreements include a one-year noncompete provision that is unsupported by any legitimate business interest of Republic and is intended solely to restrict the employment opportunities of the affected pilots, deprive other airlines of the ability to hire Republic pilots at superior rates of pay, rules and working conditions, and force pilots into what could be indefinite employment by Republic.

46. Teamsters are not parties to any of the individual employment agreements signed by Defendants with new hire pilots.

47. Teamsters did not participate in any negotiations or agreements to require that new hire pilots sign these individual employment agreements to govern their employment by Defendants.

48. The individual employment agreements are not administered by Teamsters, nor are they subject to the dispute resolution provisions of the pilot contracts governing the rates of pay, rules and working conditions of Republic and Hyannis Air pilots.

49. Republic sought in 2022 negotiations with Teamsters to obtain the right to force pilots to accept captain upgrade or resign from the airline. Teamsters rejected that proposal and Republic abandoned the proposal.

50. Republic is now using the artifice of individual employment agreements obtained by direct dealing with individual pilots to evade the rights and privileges Republic pilots have under their pilot contract to decide when they wish to upgrade to captain in order to impose on new-hire Republic pilots a forced captain upgrade requirement the airline failed to obtain in collective bargaining.

51. Republic has asserted to Local 357 that it communicates daily with its airline partners, American Airlines, Delta Air Lines and United Airlines about its scheme to force new hire pilots to enter into the individual agreements with anticompetitive terms restricting their ability to seek employment at other airlines.

52. After Teamsters objected to the individual agreements, including the noncompete provision, on the grounds they were illegal, Republic revised the noncompete provision to permit affected pilots to seek employment with one of Republic's airline partners, American Airlines, Delta Air Lines or United Airlines. Exhibit 3, p. 5.

53. Republic representatives asserted to Teamsters that it had discussed the revised noncompete provision with its airline partners.

54. The purpose of Republic's revised noncompete provision is to make its airline partners beneficiaries of the anticompetitive provisions of these individual agreements that restrain the free market in pilot labor among airlines.

## FIRST CLAIM FOR RELIEF

(Defendants' Violation of Sections 2, Third and Fourth
of the Railway Labor Act, 45 U.S.C. §§ 152, Third, Fourth)

55. The allegations of paragraphs 1 through 54 are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

56. Defendants' individual employment agreements evade the requirements of their collective bargaining agreements with Teamsters, deprive the affected pilots of the rights and privileges accorded them under the collective bargaining agreements, deprive the affected pilots of representation by Teamsters and preclude Teamsters from representing the affected pilots concerning the terms and conditions governed by the individual agreements.

57. Defendants' individual agreements deprive the affected pilots of their right to the protection of collective bargaining and representational rights under the RLA as to the employment terms of the agreements.

58. That Republic and Hyannis Air are able to compel individual pilots to enter these oppressive employment agreements on pain of job loss simply illustrates the grossly disproportionate economic and bargaining power of carriers toward individual employees that collective bargaining under the RLA is intended to remedy for employees.

59. By reason of the foregoing, Defendants have violated Sections 2, Third and Fourth of the RLA, 45 U.S.C. §§ 152, Third and Fourth.

## SECOND CLAIM FOR RELIEF

(Violation of Section 2, Ninth, 45 U.S.C. § 152, Ninth)

60. The allegations of paragraphs 1 through 54 are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

61. The individual employment agreements govern terms of employment of affected pilots while members of the crafts or classes represented by Teamsters as to terms covered by the agreements.

62. These unlawful agreements permit Defendants to avoid any negotiations with Teamsters concerning the terms covered by the agreements.

63. These unlawful agreements preclude Teamsters from representing the affected pilots concerning the terms of the agreements.

64. These unlawful agreements evade the terms of Defendants' existing collective bargaining agreements covering their pilots.

65. Defendants' individual agreements deprive the affected pilots of their right to the protection of collective bargaining and representational rights by Teamsters as their certified representative under the RLA as to the employment terms covered by the agreements.

66. By reason of the foregoing, Defendants have violated Section 2, Ninth of the RLA, 45 U.S.C. §§ 152, Ninth.

## THIRD CLAIM FOR RELIEF

(Violation of Sections 2, First, Seventh and Section 6
45 U.S.C. §§ 152, First, Seventh and 45 U.S.C. § 156)

67. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 54 pursuant to Fed. R. Civ. P. 10(c).

68. Section 2, First of the Railway Labor Act, 45 U.S.C. § 152, First, requires that carriers, including their officers, employees and agents, "exert every reasonable effort to make and maintain agreements." This obligation is the "heart" of the Act.

69. Section 2, Seventh of the Railway Labor Act, 45 U.S.C. § 152, Seventh, prohibits air carriers from changing the terms of their collective bargaining agreements except in the manner permitted by Section 6 of the RLA or permitted under procedures of the collective bargaining agreement.

70. Section 6 of the Railway Labor Act, 45 U.S.C. § 156, establishes mandatory procedures a carrier must follow to negotiate changes to its collective bargaining agreement.

71. The individual agreements with pilots evade provisions of Defendants' collective bargaining agreements with Teamsters in violation of Sections 2, First and Seventh, 45 U.S.C. §§ 152, First, Seventh, and Section 6, 45 U.S.C. § 156, of the Railway Labor Act.

72. By entering the individual agreements with pilots without negotiating their terms with Teamsters, Defendants have violated and are violating Sections 2, First and Seventh, 45 U.S.C. §§ 152, First, Seventh, and Section 6, 45 U.S.C. § 156, of the Railway Labor Act.

73. By entering the individual agreements with pilots without agreement of Teamsters, Defendants have violated and are violating Sections 2, First and Seventh, 45 U.S.C. §§ 152, First, Seventh, and Section 6, 45 U.S.C. § 156, of the Railway Labor Act.

74. By entering the individual agreements with pilots that preclude Teamsters from administering and enforcing the agreements in accordance with the requirement of the Railway Labor Act, Defendants have violated and are violating Sections 2, First and Seventh, 45 U.S.C. §§ 152, First, Seventh, and Section 6, 45 U.S.C. § 156, of the Railway Labor Act.

75. The Defendants' actions are destructive of the collective bargaining process under Section 6 of the Railway Labor Act, 45 U.S.C. § 156, such that they violate Defendants' Section 2, First duty to make every reasonable effort to make and maintain agreements over rates of pay, rules and working conditions.

76. The Defendants have also violated Section 2, Seventh of the Act by using the individual agreements to evade contractually established terms for the affected pilots without complying with the Railway Labor Act's Section 6 prescribed process.

77. Teamsters requested Defendants' agreement to restore the statutory status quo prior to filing of this action but they have refused.

## IRREPARABLE INJURY

78. The allegations of paragraphs 1 through 77 are incorporated by reference pursuant to Fed. R. Civ. P. Rule 10(c).

79. The Defendants' violations of their obligations under Sections 2, First and Seventh and Section 6 of the Railway Labor Act set forth above undermine the Act's statutory purpose for parties to make and maintain collective bargaining agreements and to prevent disruptions to interstate commerce through bargaining in conference between the carriers and their employees, and are therefore contrary to the public interest.

80. In addition to the irreparable injury to the statutory purposes and machinery of the Act, the illegal and wrongful acts and conduct described above are continuing, and, if not enjoined, Teamsters and the pilots they represent will be injured in ways that cannot be measured accurately in terms of money, either as to extent or amount. As a proximate result of the defendant's unlawful practices:

   a. Affected pilots are deprived of rights and privileges established for them under the collective bargaining agreements governing the crafts or classes of which they are members;

   b. The collective bargaining agreement and statutory bargaining process will be undermined by permitting Defendants to evade their collective bargaining agreements with Teamsters through the device of these individual agreements;

   c. Defendants' conduct is contrary to the public interest in stable labor relations and the maintenance of agreements, as well as their orderly change through the Act's procedures.

  81. Teamsters and the pilots they represent are being denied their statutory right to require Defendants to maintain their collective bargaining agreements and only make changes to those agreements in accordance with the prescribed procedures of the Railway Labor Act and in negotiations with Teamsters.

  82. The injury being suffered by the public, Teamsters and the pilots they represent is irreparable and continuing and cannot be remedied in an action at law, or administrative or contractual proceedings.

  83. Defendants will not be injured by granting of injunctive relief requiring them to comply with their duties under the RLA.  Defendants are required to address any operational or financial need for changes to existing agreements only through bargaining under the Railway Labor Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Teamsters request the following relief:

A. A declaratory judgment declaring that the individual employment agreements entered into by Defendants with pilots are null and void ab initio, and that all actions taken pursuant thereto are null and void ab initio;

B. An injunction prohibiting Defendants from taking any action to enforce the individual agreements;

C. An injunction requiring Defendants to accord the affected pilots all rights and privileges of the collective bargaining agreements covering the craft or class of which they are a member in regard to any term of employment affected by the individual agreements;

D. An order directing that Defendants negotiate only with Teamsters concerning any rates of pay, rules or working conditions intended to apply, or having the effect of applying, to pilots when they are members of the crafts or classes of pilots represented by Teamsters, including those established in the individual employment agreements;

E. An order directing that Defendants make prominent postings on all outlets, whether physical, digital, internet-based, or print, through which they communicate with or provide information to prospective pilot recruits stating that they have nullified the unlawful individual employment agreements they previously entered, will refrain from enforcing the terms of those agreements against any pilot and will permanently refrain from seeking to enter such individual agreements with any pilot in the future;

F. An award of costs incurred by Teamsters in bringing this action, including reasonable attorney's fees; and

G. All such other relief the Court deems necessary and just to remedy Defendants' violations of the Railway Labor Act.

## **DECLARATION**

We hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the facts alleged above are true and correct.

As to allegations relevant to Republic Airways and Republic Airways Holdings, Inc.

Executed on June 8, 2023.   /s/ Josh LeBlanc
                                          Josh LeBlanc

As to allegations relevant to Hyannis Air, Inc.

Executed on June 8, 2023.   /s/ Joe Muckle
                                          Joe Muckle

Dated: June 8, 2023.   Respectfully submitted,

Attorneys for Plaintiffs

/s/ Jeffrey Macey
Jeffrey Macey
Macey Swanson, LLP
429 N. Pennsylvania Street
Suite 204
Indianapolis, IN 46204
(317) 637-2345
jmacey@maceylaw.com

/s/William R. Wilder
William R. Wilder
Wilder Law Group, PLLC
1750 Tysons Blvd.
Suite 1500
Tysons, VA 22182
(703) 712-4772
wwilder@wilderlg.com