**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, TEAMSTERS LOCAL UNION NO. 357 AND AIRLINE PROFESSIONALS ASSOCIATION TEAMSTERS LOCAL UNION NO. 1224,<br><br>   Plaintiffs,<br><br>      v.<br><br>REPUBLIC AIRWAYS INC., REPUBLIC AIRWAYS HOLDINGS INC. AND HYANNIS AIR SERVICE INC.,<br><br>   Defendants. | Civil Action No. 1:23-cv-995-RLY-MG |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 3

    A.    Parties............................................................................................................ 3

    B.    The Republic-IBT Collective Bargaining Agreement ........................................... 3

    C.    The Cape Air-IBT Collective Bargaining Agreement .......................................... 4

    D.    Pre-Hire Employment Incentive Agreements at Republic and Cape Air ............... 5

    E.    IBT's 2023 Grievances Over Pre-Hire Employment Incentives ........................... 8

ARGUMENT ................................................................................................................. 8

I.     THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS'
      CLAIMS ............................................................................................................. 8

    A.    Under The RLA, "Minor Disputes" Are Subject To The Exclusive Jurisdiction Of
        The System Board Of Adjustment ...................................................................... 8

    B.    Counts I Through III Raise Minor Disputes Subject To The Exclusive Jurisdiction
        Of The System Board Of Adjustment ................................................................ 11

        1.    Plaintiffs' Allegations Regarding the Republic Pre-Hire Employment
             Incentives Raise Minor Disputes ......................................................... 13

        2.    Plaintiffs' Allegations Regarding the Pathway Program Pre-Hire
             Employment Incentive Agreement Raise Minor Disputes ...................... 16

II.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER COUNTS I & II AS TO
      THE CARRIERS AND AS TO ALL CLAIMS AGAINST REPUBLIC AIRWAYS
      HOLDINGS INC. .............................................................................................. 19

    A.    Plaintiffs Have Failed To State A Claim Under Counts I Through III Against
        Republic Airways Holdings Inc. ....................................................................... 20

    B.    Plaintiffs Have Failed To State A Claim Under Count I ..................................... 20

    C.    Plaintiffs Have Failed To State A Claim Under Count II .................................... 22

CONCLUSION ............................................................................................................ 23

## PRELIMINARY STATEMENT

Regional air carriers Republic Airways Inc. ("Republic") and Hyannis Air Service, Inc. ("Cape Air") (collectively the "Carriers") offer pre-hire employment incentives to aid with pilot recruitment.  These incentives are set forth in individual agreements with pilot candidates, and they are in accord with the collective bargaining agreements ("CBAs") between the Carriers and the pilots' union, International Brotherhood of Teamsters ("IBT").  In their Complaint, Plaintiffs—IBT and two of its local unions—have asserted three causes of action against the Carriers under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* ("RLA"): a claim under Section 2, Third and Fourth for interference with representation rights (Count I); a claim under Section 2, Ninth for failure to "treat" with the certified bargaining representative (Count II); and a claim under Section 2, First, Seventh and Section 6 for improperly altering the parties' status quo without negotiation (Count III).[1]  Plaintiffs' causes of action fail as a matter of law and should be dismissed.

*First*, this Court lacks jurisdiction over Plaintiffs' claims, and the Complaint should accordingly be dismissed under Federal Rule of Civil Procedure 12(b)(1).  Under the RLA, where an air carrier's conduct is "arguably justified" by the express or implied terms of the applicable collective bargaining agreement, the dispute in question is a "minor dispute" and is subject to the mandatory and exclusive arbitration jurisdiction of the applicable System Board of Adjustment ("System Board").  *Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 307 (1989) ("*Conrail*") (holding carriers bear a "relatively light burden" in establishing that a dispute is minor) (quotation omitted); *Ry. Lab. Execs. Ass'n v. Norfolk & W. Ry. Co.*, 833 F.2d 700, 705

---

[1] Plaintiffs have also asserted these causes of action against the parent company, Republic Airways Holdings Inc., which wholly owns Republic, as well as approximately 40% of Cape Air through a wholly-owned subsidiary.  (*See generally* Compl.)  However, Republic Airways Holdings Inc. is not a proper defendant.  *See infra* at 20.

(7th Cir. 1987) ("[I]f there is any doubt as to whether a dispute is major or minor a court will construe the dispute to be minor.").  Plaintiffs' allegations—that the Carriers' pre-hire employment incentives interfered with representation rights, that the Carriers failed to "treat" with IBT over the pre-hire employment incentives, and that the pre-hire employment incentives violated the status quo—all plainly implicate and are governed by the terms of the applicable collective bargaining agreements: the agreement between Republic and IBT ("Republic-IBT CBA"), and the agreement between Cape Air and IBT ("Cape Air-IBT CBA").  Indeed, prior to filing their Complaint in this case, Plaintiffs sought relief in the proper forum by filing grievances with the Carriers alleging violation of the applicable CBAs.  But instead of submitting those contract grievances to arbitration, Plaintiffs now attempt to invoke the jurisdiction of this Court, which they may not do because the Carriers' pre-hire incentives are, at the very least, "arguably justified" by the Republic-IBT CBA and Cape Air-IBT CBA.  *See Conrail*, 491 U.S. at 307. Plaintiffs' claims should therefore be dismissed for lack of jurisdiction.

*Second*, Counts I (violation of Section 2, Third and Fourth) and II (violation of Section 2, Ninth) of Plaintiffs' Complaint should be dismissed for the additional reason that Plaintiffs fail to state a claim.  Count I fails as a matter of law because Plaintiffs have not pled that the arbitration process fails to provide an adequate remedy or that the Carriers have acted with anti-union animus.  Count II similarly fails because the mere fact that an individual agreement exists does not constitute a violation of Section 2, Ninth, and Plaintiffs assert no other factual allegations about the bargaining process that could plausibly support this claim.

For these reasons, the Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

### A.        Parties

Republic is a regional passenger air carrier headquartered in Indianapolis, Indiana and is a wholly-owned subsidiary of Republic Airways Holdings Inc. (Compl. ¶¶ 8-9.)  Republic provides regional passenger air service to American Airlines, Delta Air Lines, and United Airlines.  (*Id.* ¶ 12.)  Republic currently employs approximately 2,000 pilots.  (*Id.* ¶¶ 5, 13.) Cape Air is also a regional air carrier, of which Republic Airways Holdings Inc. owns an approximate 40% shareholder interest.  (*Id.* ¶ 11.)  Cape Air currently employs approximately 210 pilots.  (*Id.* ¶¶ 5, 17.)

Plaintiff IBT is an unincorporated labor organization with its principal offices in Washington, D.C.  (*Id.* ¶ 5.)  IBT is the collective bargaining representative certified by the National Mediation Board ("NMB") as the exclusive representative of pilots employed by Republic, and pilots employed by Cape Air.  (*Id.*)

Plaintiff Teamsters Local Union No. 357 is an unincorporated labor organization and affiliated local union of IBT, which is duly chartered and designated by IBT to act as its agent for purposes of representation of pilots employed by Republic.  (*Id.* ¶ 6.)  Plaintiff Airline Professionals Association, Teamsters Local Union No. 1224 is also an unincorporated labor organization and an affiliated local union of IBT, duly chartered and designated by IBT to act as its agent for purposes of representation of pilots employed by Cape Air.  (*Id.* ¶ 7.)

### B.        The Republic-IBT Collective Bargaining Agreement

Republic and IBT are parties to a CBA, the Republic-IBT CBA, dated October 14, 2022. (*Id.* ¶¶ 14-15; *see generally* Declaration of Chad Pulley ("Pulley Decl."), Ex. A.)  As relevant here, Article 3.O. of that CBA is titled "Signing Bonuses, New Hire Incentives, and Other Bonuses/Incentives," and states in part:

3

With respect to signing bonuses, stipends and other new hire incentives, the Company has the discretion to offer, and to increase or decrease, signing bonuses, stipends, and/or incentives in its recruitment efforts of New Hire Pilots. **The Company has the discretion to determine the terms** of the signing bonus, stipend, and/or other incentives for New Hire Pilots **including but not limited to** the timing of payments of such signing bonuses, stipends, and/or incentives.
…

**The Company, in its discretion, may offer a bonus or financial incentive at any time and of any type or form** to incentivize a qualified Pilot to complete Captain qualification training. **The Company has the discretion to determine the terms** of the bonuses, or other incentives for Pilots, **including but not limited to** the timing of payments of such bonuses and/or incentives.

(Pulley Decl., Ex. A, Art. 3.O.1., 3.O.3 at 3-7 (emphasis added).)

In addition, Article 6.K.8. identifies various "entitlements and provisions" that are waivable by an individual pilot including "the entitlements and provisions in Article 6 [Scheduling], Article 7 [Reserve Duty], Article 8 [Paid Days Off], Article 23 [Hours of Service], and Article 26 [Vacancies and Displacements]." (*Id.*, Art. 6.K.8. at 6-26.)

Article 18 outlines the parties' dispute resolution procedures under the CBA, commencing with discussion with Republic and filing of a grievance, and culminating in arbitration before the System Board as required by the RLA. (*Id.*, Art. 18 at 18-1-18-9.) Article 18.D.2.a. explains that "[a] Pilot, or the Union on behalf of a Pilot or group of Pilots, may file a grievance concerning any action of the Company affecting him or them." (*Id.* at 18-3.)

C. **The Cape Air-IBT Collective Bargaining Agreement**

Cape Air and IBT are parties to a separate collective bargaining agreement, the Cape Air-IBT CBA, dated April 1, 2020. (Compl. ¶ 18; *see generally* Declaration of Linda Markham ("Markham Decl."), Ex. A.) Section 1.J. of the Cape Air-IBT CBA reserves broad management rights to Cape Air to manage and direct its operations to the extent Cape Air's right to do so is not otherwise restricted by the terms of the CBA. (Markham Decl., Ex. A, § 1.J at 11.) Section 1.J states, "The Company has and retains and the Union recognizes the sole and exclusive right

4

of the Company to exercise all rights or functions of management except to the extent that such rights of management are limited by this Agreement and so long as the exercise of such rights does not conflict with the terms of this Agreement." (*Id.*)

The Cape Air-IBT CBA also includes various provisions that are waivable by an individual pilot. (*See generally* Markham Decl., Ex. A.) For example, Section 10.C.2.b establishes that a pilot may "waive the Day Off restriction," which establishes minimum days off and Section 14.E.3 allows a pilot to "waive, reduce or reschedule any break." (*Id.* §§ 10.C.2.b, 14.E.3 at 61, 102.)

Section 18 of the Cape Air-IBT CBA provides contractual dispute resolution procedures, commencing with the filing of a grievance and culminating in arbitration before the System Board as required by the RLA. (*Id.* § 18 at 123-31.) Section 18.C.2. provides that "[a] Pilot, or the Union on behalf of the Pilots, covered by this Agreement who have a grievance concerning any action of the Company affecting them, except matters involving Discipline or Discharge [subject to the procedures in Section 18.C.1], *shall use the dispute resolution procedures as established herein*." (*Id.* at 125 (emphasis added).)

### D.      Pre-Hire Employment Incentive Agreements at Republic and Cape Air

As a measure to aid with pilot recruitment, Republic and Cape Air offer employment incentives to pilot candidates before they are hired by the Carriers. (Compl. ¶ 19; *see generally* Compl. Exs. 1, 3.) Republic offers individual pilot candidates the Republic Airways New First Officer Career Advancement Program, the terms and conditions of which are provided in the Career Advancement Program Pre-Hire Enrollment Agreement ("Republic Pre-Hire Agreement").[2] (*See generally* Compl. Ex. 3.)

---

[2] The Republic Pre-Hire Agreement is the current and operative agreement for pre-hire pilot

In the Republic Pre-Hire Agreement, Republic and individual pilot candidates agree that the pilot candidate will be eligible for an incentive payment of $100,000, to be paid in installments according to the payment schedule and terms and conditions therein, beginning with a first installment of $25,000 upon the pilot candidate's successful completion of First Officer training, a second installment of $50,000 upon the pilot candidate's successful completion of Captain upgrade training, and a third installment of $25,000 after successfully completing one year of active service as a Captain.  (Compl. Ex. 3 at 2 ¶ II.A.)  In exchange, pursuant to the terms of the agreement, the pilot candidate agrees to make a two-year employment commitment as an active status Captain at Republic, or a five-year commitment as an active status pilot for Republic.  (*Id.* at 3-4 ¶¶ II.C., III.A., C.)  The pilot candidate further acknowledges that in order to hire and train the pilot candidate, Republic will invest time, resources, and money.  (*Id.* at 3 ¶ III.B.)  The pilot candidate also agrees that failure to comply with the employment commitment constitutes a material breach of the Republic Pre-Hire Agreement, requiring them to pay certain liquidated damages depending on how much of their employment commitment period they have completed, up to $100,000.  (*Id.* at 4 ¶ III.C.)  The pilot candidate further agrees that in the event they resign from employment with Republic or are terminated in accordance with the Republic CBA prior to fulfilling the specified employment commitment, for a period of one year they will not work as a pilot for an airline other than American Airlines, Delta Air Lines, or United Airlines mainline operations.  (Compl. ¶ 52; Compl. Ex. 3 at 5 ¶ III.G.)

Similarly, Republic offers the Republic Airways Captain Pathway Program ("Pathway Program") based on the terms and conditions of the Republic Airways Captain Pathway Program

---

candidates at Republic, which Republic has provided to Plaintiffs.  (*See generally* Compl. Ex. 3.) Plaintiffs erroneously attach to their Complaint a *former* version of this agreement, which is no longer used by Republic.  (*See generally* Compl. Ex. 2.)

Enrollment Agreement (the "Pathway Program Pre-Hire Agreement"), which is a three-party agreement between a pilot candidate, Cape Air, and Republic.  (*See generally* Compl. Ex. 1.)  In the Pathway Program Pre-Hire Agreement, individual pilot candidates who choose to start their career under the Pathway Program at Cape Air and Republic agree that upon performing at least 720 hours of qualifying Pilot in Command time at Cape Air, the pilot candidate will receive a guaranteed First Officer Trainee class date at Republic.  (*Id.* at 2 ¶ II.)  Upon successfully upgrading to the position of Captain at Republic, the pilot candidate will be eligible for an incentive payment of up to $100,000.  (*Id.* ¶ III.)

The terms of the incentive payment set forth in the Pathway Program Pre-Hire Agreement explain that the amount of the payment from Republic depends on the number of months in which the pilot candidate completes the required flight hours and the number of months in which the pilot candidate upgrades to Captain at Republic.  (*Id.* at 2-3.)  In exchange for that payment, the pilot candidate agrees to a three-year employment commitment, which includes 720 hours of qualifying Pilot in Command time at Cape Air, with the remainder of that commitment at Republic.  (*Id.* at 3 ¶ IV.)  This three-year employment commitment also specifically includes a two-year commitment as a Captain at Republic.  (*Id.*)  The pilot candidate acknowledges that Republic will invest time, resources, and money.  (*Id.*)  In this pre-hire agreement, the pilot candidate agrees that failure to satisfy the agreed employment commitment shall constitute a material breach of the Pathway Program Pre-Hire Agreement, requiring the pilot to pay the sum of $250,000 in liquidated damages to Republic.  (*Id.* at 3-4.)  The pilot further agrees that in the event the pilot is terminated or terminates from employment at Republic, the pilot will not work as a pilot for another airline that is in competition with Republic for one year.  (*Id.* at 4.)  While a pilot must perform 720 hours of qualifying Pilot in Command

7

time at Cape Air to receive a guaranteed First Officer Trainee class date at Republic, *see id.* at 2 ¶ II., there are no requirements in the Pathway Program Pre-Hire Agreement to pay liquidated damages to Cape Air.  (*See generally* Compl. Ex. 1.)

### E.   IBT's 2023 Grievances Over Pre-Hire Employment Incentives

On May 28, 2023, IBT filed a grievance pursuant to Article 18 of the Republic-IBT CBA. (Pulley Decl., Ex. C.)  On May 30, 2023, IBT also filed a grievance pursuant to Section 18 of the Cape Air-IBT CBA.  (Markham Decl., Ex. B.)  Those grievances allege that the pre-hire employment incentives offered by Republic and Cape Air violate various provisions of the CBAs.  (Pulley Decl., Ex. C at 1; Markham Decl., Ex. B at 1-2.)  Subsequent to filing their grievances, Plaintiffs filed the instant lawsuit on June 8, 2023.  (*See generally* Compl.)

## ARGUMENT

## I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of any claim over which the federal court lacks subject matter jurisdiction.  To survive a Rule 12(b)(1) motion, a plaintiff bears the burden of demonstrating that the court has subject matter jurisdiction.  *See, e.g.*, *Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987); *Alonso v. Blue Sky Resorts, LLC*, 179 F. Supp. 3d 857, 860 (S.D. Ind. 2016).  The court may "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *Gann v. Richardson*, 43 F. Supp. 3d 896, 900 (S.D. Ind. 2014) (quotation omitted).  Here, Plaintiffs cannot satisfy their burden, and the Complaint should be dismissed.

### A.   Under The RLA, "Minor Disputes" Are Subject To The Exclusive Jurisdiction Of The System Board Of Adjustment

"Embedded in the [RLA] is a strong preference for arbitration, as opposed to judicial

resolution of disputes." *Bhd. of Locomotive Eng'rs & Trainmen (Gen. Comm. of Adjustment, Cent. Region) v. Union Pac. R.R. Co.*, 879 F.3d 754, 755 (7th Cir. 2017).[3]  For disputes arising under the RLA, the jurisdiction of the federal courts "depends on whether [the dispute] is 'major' or 'minor.'"  *Id.* at 757.  A "minor dispute" is a grievance or matter involving the interpretation or application of a collective bargaining agreement.[4]  *Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 722-23 (1945); *Conrail*, 491 U.S. at 307.

For minor disputes, parties must submit their contract interpretation issues to the appropriate board of adjustment for final and binding arbitration.  45 U.S.C. § 153(i); *BLET GCA UP v. Union Pac. R.R. Co.*, 988 F.3d 409, 412-13 (7th Cir. 2021) ("minor disputes must go

---

[3] Congress enacted the RLA and extended it to air transportation "to promote stability in labor-management relations."  *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978).  At the "heart" of the RLA is the statute's mandatory arbitral mechanism.  *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 377-78 (1969).  Congress found that mandatory arbitration is the key to "minimizing interruptions in the Nation's transportation services."  *Int'l Ass'n of Machinists, ALF-CIO v. Cent. Airlines, Inc.*, 372 U.S. 682, 687 (1963).  Accordingly, Congress deemed it "essential" that "minor disputes" be kept "out of the courts."  *Sheehan*, 439 U.S. at 94.

In the context of a related statute, the Federal Arbitration Act, the Supreme Court recently acknowledged the importance of Congress' intent with respect to a statutory scheme to determine arbitrability, holding that a district court must stay its proceedings while an interlocutory appeal on the issue of arbitrability is ongoing, in part because "[i]f the district court could move forward with pre-trial and trial proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost," and "parties [] could be forced to settle to avoid the district court proceedings (including discovery and trial) that they contracted to avoid through arbitration."  *Coinbase, Inc. v. Bielski*, -- S. Ct. --, 2023 WL 4138983, at *4 (U.S. June 23, 2023).

[4] "Major disputes," in contrast, "arise where there is no . . . agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy."  *Elgin*, 325 U.S. at 723.  "In essence, a major dispute involves the creation of a contract or a change in the terms of an existing contract, while a minor dispute involves the interpretation or application of an existing contract."  *Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps. v. Atchison, Topeka & Santa Fe Ry. Co.*, 847 F.2d 403, 406 (7th Cir. 1988).  Plaintiffs do not allege a major dispute in their Complaint.

directly to binding arbitration"); *Loc. 591, Transp. Workers Union of Am. v. Am. Airlines, Inc.*, 2015 WL 3852958 (N.D. Ill. June 19, 2015) (dismissing claims that carrier violated RLA for lack of jurisdiction because the claims raised minor disputes).  The jurisdiction of the adjustment board is "mandatory and exclusive." *Grimes v. CSX Transp., Inc.*, 2009 WL 10709792, at *1 (S.D. Ind. Feb. 25, 2009) (Young, J.), *aff'd*, *Grimes v. CSX Transp., Inc.*, 338 F. App'x 522 (7th Cir. 2009); *see also Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 322-24 (1972). "A plaintiff's claim is properly characterized as a minor dispute (and is therefore subject to mandatory and exclusive arbitration under the RLA) when the resolution of the plaintiff's claim requires interpretation of the CBA." *Grimes*, 2009 WL 10709792, at *1.

Carriers have a "relatively light burden" in establishing that a dispute is minor and therefore subject to mandatory arbitration. *Conrail*, 491 U.S. at 307 (quotation omitted). "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is *arguably justified* by the terms of the parties' collective-bargaining agreement." *Id.* (emphasis added); *see also Union Pac.*, 879 F.3d at 756 (affirming dismissal where Company had "at least a non-frivolous argument that interpretation of the agreement between the parties . . . is at stake").  An employer may rely on express and/or implied rights in the CBA. *Conrail*, 491 U.S. at 308, 311-12 (finding employer's action under RLA may be arguably justified by express or implied terms of collective bargaining agreement).  If the parties "disagree on whether a dispute can be resolved under an existing agreement, the dispute is minor unless the carrier's claims of contractual justification are 'frivolous' or 'obviously insubstantial.'" *Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps. v. Atchison, Topeka & Santa Fe Ry. Co.*, 847 F.2d 403, 406 (7th Cir. 1988) (citation omitted); *see also Bhd. of Maint. of Way Emps. Div./IBT v. Norfolk S. Ry. Co.*, 745 F.3d 808, 813 (7th Cir.

2014) ("To be considered minor, an employer's action only needs to be 'arguably justified' by a contractual right under the terms of the collective bargaining agreement." (quoting *Conrail*, 491 U.S. at 307)).  Thus, "an employer's reliance on a right set forth in the parties' collective bargaining agreement ordinarily is enough to confirm the existence of a minor dispute unless it is clear that the employer's claim is 'insincere' or founded on 'insubstantial grounds.'" *Loc. 591, Transp. Workers*, 2015 WL 3852958, at *6 (quoting *Conrail*, 491 U.S. at 306).

As explained below, the Carriers' alleged conduct with respect to the pre-hire employment incentive agreements is "arguably justified" by the provisions of the Republic-IBT CBA and Cape Air-IBT CBA.  To the extent Plaintiffs dispute facts or the meaning or application of the contract language upon which the Carriers relied, such disagreement raises interpretation issues for resolution by the System Board.  The federal court need only determine whether the Carriers' position is "frivolous and obviously insubstantial," and if it is not, the dispute must be resolved in arbitration by the System Board.  *Conrail*, 491 U.S. at 307.

### B.    Counts I Through III Raise Minor Disputes Subject To The Exclusive Jurisdiction Of The System Board Of Adjustment

Resolution of each of Plaintiffs' claims—that by offering the pre-hire employment incentive agreements, the Carriers interfered with Plaintiffs' representation rights (Count I), failed to negotiate or otherwise deal with IBT (Count II), and improperly altered the parties' status quo under the CBAs (Count III)—requires interpretation of provisions of the Republic-IBT CBA and Cape Air-IBT CBA, most notably Article 3.O. of the Republic-IBT CBA and Section 1.J of the Cape Air-IBT CBA.  Accordingly, these claims must be resolved by the System Board.[5]

_____

[5] To the extent the meaning of the relevant CBA provisions is disputed by the parties, the Carriers will present to the System Board evidence about the relevant bargaining history, such as

While the parties may disagree about whether any terms of the pre-hire employment agreements violate the Republic-IBT CBA or Cape Air-IBT CBA, under the RLA that is precisely the kind of contract dispute that must be resolved by the System Board.  *Grimes*, 2009 WL 10709792, at *1 ("A plaintiff's claim is properly characterized as a minor dispute . . . when the resolution of the plaintiff's claim requires interpretation of the CBA."); *Union Pac.*, 879 F.3d at 760 (affirming dismissal of minor dispute in favor of arbitration; noting that "[i]f the Railroad's interpretation [of the CBA] is wrong, the arbitrator will tell it so").  Here, albeit without specificity as to the particular terms, IBT lists no less than nine different CBA articles that it contends the individual pre-hire incentive agreements violate at Republic.  (Pulley Decl. at Ex. C at 1 ("Applicable Articles and Sections of the Collective Bargaining Agreement which have been violated: 1, 3, 6, 13,18, 26, 27, 29, LOA9 and all other applicable articles.").)  In fact, Plaintiffs' filing of grievances pursuant to the dispute resolution procedures in the CBAs reflects their acknowledgement that the dispute they have raised involves interpretation and application of terms of the CBAs and thus can be resolved by the System Board.  (*Id.*; Markham Decl., Ex. B at 2 (IBT Local Union No. 357 grievance listing remedies sought as "Cease and Desist. Nullification of all individual employment agreements covered by the grievance.  And any other remedies to make the grievant whole.").)

That Plaintiffs "purport to bring [] statutory claim[s]" does not alter the claims' nature as minor disputes subject to the jurisdiction of the System Board.  *See U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 305 (E.D.N.Y. 2012).  "Simply reiterating

the parties' expressed intent to provide broad discretion to the Carriers to offer the pre-hire employment incentives, including with respect to both upgrading to the position of Captain and retention of those pilots who have successfully upgraded to Captain.

12

the same argument in another context does not somehow endow the court with jurisdiction over the minor disputes that plaintiff brings before it." *Id.* at 308 (rejecting alternative argument that jurisdiction was proper over Section 2, Third and Fourth claim where court determined that it lacked jurisdiction over other RLA claims pertaining to same issue, including alleged violations of the status quo and Section 2, First and Second); *see also Loc. 591, Transp. Workers*, 2015 WL 3852958, at *7 (finding union's Section 2, Ninth claim based on same allegations as Section 2, Third and Fourth claims, and concluding all claims raise minor disputes subject to mandatory arbitration under RLA).

 This Court should dismiss the Complaint in its entirety to allow Plaintiffs' claims to proceed in arbitration as mandated by the RLA.

   **1.**  **Plaintiffs' Allegations Regarding the Republic Pre-Hire Employment Incentives Raise Minor Disputes**

 Plaintiffs' claims regarding the Republic Pre-Hire Agreement raise minor disputes subject to the exclusive jurisdiction of the System Board because the allegations implicate the express provisions of the Republic-IBT CBA.  As part of the exchange for a nearly 54% increase in pay rates for Captains and 70 to 90% increase in First Officer pay rates, and in acknowledgement of the hiring and attrition problems that Republic was facing, IBT and Republic negotiated to give Republic broad rights to address those problems.  (*Compare* Pulley Decl., Ex. A, Art. 3.O. at 3-7, *with id.* Table 3.1, 3.2 at 3-9-3-10.)  Accordingly, Article 3.O. of the Republic-IBT CBA expressly provides Republic with "the discretion to offer, and to increase or decrease, signing bonuses, stipends, and/or incentives in its recruitment efforts of New Hire Pilots."  (*Id.*, Art. 3.O.1. at 3-7.)  Article 3.O. also grants Republic the right to "***determine the terms of*** the signing bonus, stipend, and/or other incentives for New Hire Pilots ***including but not limited to*** the timing of payments of such signing bonuses, stipends, and/or incentives."  (*Id.*

(emphasis added).)  And Article 3.O. allows Republic to "offer a bonus or financial incentive at any time ***and of any type or form*** to incentivize a qualified Pilot to complete Captain qualification training.  Republic has the discretion to determine the terms of the bonuses, or other incentives for Pilots, ***including but not limited to*** the timing of payments of such bonuses and/or incentives." (*Id.* at Art. 3.O.3. at 3-7 (emphasis added).)  The Republic Pre-Hire Agreement is thus "arguably justified" by the terms of the Republic-IBT CBA.

As further evidenced by the text of the Republic-IBT CBA, Republic specifically negotiated with IBT to obtain this wide discretion under Article 3.O.  Under the previous CBA in 2018, Article 3.O. provided a narrower set of rights to Republic to establish incentives for pilots and new hires.  (Pulley Decl., Ex. B, Art. 3.O. at 3-8-3-9.)  That previous version of Article 3.O. provided as follows:

Signing Bonuses and New Hire Incentives

1. With respect to signing bonuses, stipends and other new hire incentives, the Company has the discretion to offer, and to increase or decrease, signing bonuses and/or incentives in its recruitment efforts of New Hire Pilots. The Company has the discretion regarding the timing of payments of such signing bonuses and/or incentives for New Hire FO Pilots.

2. The Company, in its discretion, may forgive or reimburse (directly or indirectly, in whole or in part, over any duration(s) defined by the Company) any loan(s) that were taken out by Pilots (or provided to the Pilot) to offset costs associated with any form of training, education and/or certification of becoming qualified to be a New Hire Pilot at the Company.

(*Id.*)

The earlier, narrower version of Article 3.O. made no mention of "Other Bonuses/Incentives," or the right of Republic to "determine the terms of" these incentives "***at any time and of any type or form to incentivize*** a qualified Pilot" either to complete Captain training or to remain employed.  (*Compare id.*, *with* Pulley Decl., Ex. A, Art. 3.O. at 3-7.)  All of

14

that broad language was added to Article 3.O. in the 2022 CBA, expressly granting Republic the discretion to ***determine the terms*** of the incentives, without limitation.  The current Republic-IBT CBA further permits Republic to do what Plaintiffs are challenging here: "offer a bonus or financial incentive at any time and of any type or form to incentivize a qualified Pilot to complete Captain qualification training."  (Pulley Decl., Ex. A, Art. 3.O.3. at 3-7.)  The expansion of Article 3.O.—from the narrow terms in 2018, to the broad grant of rights to Republic in 2022—demonstrates that Republic bargained for and obtained the right to offer a wide range of incentives to help with recruiting of pilots.

Plaintiffs assert that the Republic Pre-Hire Agreement contains terms on which the Republic-IBT CBA is silent and therefore are impermissible.  For example, Plaintiffs allege that the Republic-IBT CBA does not include provisions on (1) a minimum period of employment for pilots; (2) a requirement to accept a Captain upgrade opportunity; or (3) post-employment non-compete restrictions.  (Compl. ¶¶ 27-29, 31-34.)  But Plaintiffs' allegations of silence in the Republic-IBT CBA do not support their position.  To the contrary, these allegations actually support *Republic's* position because they concede that the cited provisions in the Republic Pre-Hire Agreement do not contradict or supersede any terms in the Republic-IBT CBA.  *Cf. Ord. of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 346 (1944).  And to the extent Plaintiffs disagree regarding the meaning of the alleged contractual silence, that disagreement raises interpretation issues for resolution by the System Board.  To be sure, Republic is at least "arguably justified" by the broad discretion granted in Article 3.O. of the Republic-IBT CBA to include the cited terms in the Republic Pre-Hire Agreement.  *Conrail*, 491 U.S. at 306-07.

In addition to the express contract language in Article 3.O., at an arbitration before the System Board on the grievance filed by IBT, Republic could also show that the implied terms of

15

the CBA rooted in longstanding past practice acquiesced in by IBT further support Republic's position.  For example, Republic would be able to present evidence, to be assessed by the System Board, that it previously has required employment commitment periods in its offer letters to pilot candidates, and has required pilot candidates to pay damages if they choose to breach that employment commitment.  Any factual dispute raised by IBT regarding this past practice would be properly resolved by the System Board in determining whether implied, as well as express, terms of the CBA permits the pre-hire employment incentive agreements.  *Conrail*, 491 U.S. at 311-12 (implied terms of a CBA based on past practice can constitute sufficient ground for a minor dispute under the "arguably justified" standard).

Because resolution of these claims requires interpretation of disputed terms of the Republic-IBT CBA, and Republic's position is at least "arguably justified," these claims are minor disputes that must be decided within the exclusive arbitration jurisdiction of the System Board.

### 2.    Plaintiffs' Allegations Regarding the Pathway Program Pre-Hire Employment Incentive Agreement Raise Minor Disputes

Plaintiffs also allege that by offering the Pathway Program Pre-Hire Agreement, Republic and Cape Air interfered with Plaintiffs' representation rights (Count I), failed to negotiate or otherwise deal with IBT (Count II), and improperly altered the parties' status quo under the Cape Air-IBT CBA (Count III).  Like the allegations against Republic addressed above, these claims raise minor disputes subject to the exclusive jurisdiction of the System Board because the allegations implicate the provisions of the Cape Air-IBT CBA and Republic-IBT CBA.

The Pathway Program Pre-Hire Agreement is permitted by both the Republic-IBT CBA and the Cape Air-IBT CBA.  As explained above, Article 3.O. of the Republic-IBT CBA expressly provides Republic with broad discretion to offer pre-hire employment incentives,

16

including the Pathway Program Pre-Hire Agreement. *See supra* 13-16. Similarly, Section 1.J of the Cape Air-IBT CBA provides Cape Air with "the sole and exclusive right . . . to exercise all rights or functions of management except to the extent that such rights of management are limited by this Agreement and so long as the exercise of such rights does not conflict with the terms of this Agreement." (Markham Decl., Ex. A § 1.J at 11.) That provision is broad on its face, granting Cape Air wide discretion on, among other things, offering employment incentives and the specific terms to govern any such incentives where they are not otherwise limited. (*Id.*) IBT fails to identify any provision of the CBA that, in fact, limits Cape Air's management rights to enter into the Pathway Program Pre-Hire Agreement. The Pathway Program Pre-Hire Agreement is thus "arguably justified" by the express terms of the Republic-IBT CBA and the Cape Air-IBT CBA.

Plaintiffs' assertion of a series of allegations that the Pathway Program Pre-Hire Agreement conflicts with the Republic-IBT CBA and the Cape Air-IBT CBA does not alter this conclusion. Plaintiffs allege that the Pathway Program Pre-Hire Agreement "alters … contractual rules" by requiring a minimum number of hours, reporting on days off, making overtime flying available, heightened attendance standards, maintaining FAA medical certificates, giving Republic sole discretion to terminate the Pathway Pre-Hire Agreement and remove the pilot from the Pathway Program. (Compl. ¶ 37(a)-(c), (e)-(f), (h).) These terms affect the pilot candidate's eligibility with respect to the incentive but, on the face of the Pathway Program Pre-Hire Agreement, do not result in discipline or discharge. While the Carriers dispute these allegations, even if Plaintiffs' allegations were taken as true, the Pathway Program Pre-Hire Agreement remains "arguably justified" by the terms of the CBAs. For example, the Republic-IBT CBA expressly provides that the provisions of the CBA that the IBT alleges are

17

violated (e.g., scheduling, bidding, minimum days off) are waivable provisions of the CBA. In particular, Article 6.K.8. of the Republic-IBT CBA states that "[e]ach Pilot may waive the entitlements and provisions in Article 6 [Scheduling], Article 7 [Reserve Duty], Article 8 [Paid Days Off], Article 23 [Hours of Service], and Article 26 [Vacancies and Displacements] on an individual basis." (Pulley Decl., Ex. A, Art. 6.K.8. at 6-26.)

And Plaintiffs' allegations similarly fail with respect to the Cape Air-IBT CBA. As explained above, that CBA includes a broad management rights clause providing Cape Air wide discretion to offer employment incentives, and Plaintiffs do not plausibly allege how the Pathway Program Pre-Hire Agreement "irrevocably conflict[s]" with the Cape Air-IBT CBA in light of that broad management right. (*See generally* Compl. Ex. 1.) For example, while the Pathway Program Pre-Hire Agreement provides that, in order to obtain the maximum incentive payment amount, pilots would need to "pick up incremental shifts above and beyond a standard line assignment," that provision is permitted by the Cape Air-IBT CBA, which expressly reserves broad rights to Cape Air to both manage and direct its operations absent a conflict with the terms of the CBA. (Markham Decl., Ex. A § 1.J at 11.) IBT does not identify any provision of the CBA that prohibits pilots from picking up additional flying beyond a standard line assignment. Pursuant to the terms of the Pathway Program Pre-Hire Agreement, a pilot who chooses to pick up such additional shifts is eligible to receive the highest amount of the incentive payment but they are not required to do so. (Compl. Ex. 1 at 1-3 ¶¶ I., III.)[6] Any dispute as to

---

[6] Plaintiffs also allege that Pathway Program Pre-Hire Agreement designates a pilot as "at will," thereby evading the disciplinary just cause and grievance provisions of the contract." (Compl. ¶ 37(i).) But that allegation is a red herring. The agreement uses the term "at will" to mean a voluntary commitment by the pilot candidate to the program—it is not a reference to any right of management to supersede the just cause requirement in the parties' CBA, and IBT makes no allegation that it has ever been applied in that manner. (Compl. Ex. 1 at 3 ¶ IV. (explaining that

the meaning of the broad management rights provision in the Cape Air-IBT CBA provision is subject to the exclusive jurisdiction of the System Board.

Plaintiffs also assert that the Pathway Program Pre-Hire Agreement includes provisions on which the CBAs are silent and therefore the agreement is impermissible.  For example, Plaintiffs allege that the Cape Air-IBT CBA and Republic-IBT CBA do not include provisions on (1) a minimum period of employment for pilots; (2) a requirement to accept a Captain upgrade opportunity; (3) post-employment non-compete restrictions; or (4) hotel and housing entitlements, or monthly stipends in lieu thereof.  (Compl. ¶¶ 27-29, 31-34, 37(d).)  But as demonstrated above with regard to the Republic Pre-Hire Agreement, allegations of contractual silence only show that the pre-hire agreements *do not contradict* any provisions of the CBA. The same point applies here with respect to the Pathway Program Pre-Hire Agreement.  And, as noted above, to the extent the meaning of this alleged silence raises contract interpretation issues, they must be resolved by the System Board.  What matters here—for the purpose of determining the Court's jurisdiction—is that Republic and Cape Air's actions are justified—or at the very least "arguably justified"—by Article 3.O. of the Republic-IBT CBA and Section 1.J of the Cape Air-IBT CBA, as well as the implied terms of those CBAs.  *Conrail*, 491 U.S. at 306-07.

## II.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER COUNTS I & II AS TO THE CARRIERS AND AS TO ALL CLAIMS AGAINST REPUBLIC AIRWAYS HOLDINGS INC.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  The court "may consider, in addition to

---

Republic "has invested time, resources, and money . . . in return for this three (3) year at-will commitment" by the pilot); *see also* Pulley Decl., Ex. D at 2 ("For example, the at-will reference, of course, was never intended to alter the just cause standard in the CBA but instead was referring to the optional nature of the candidate electing to enter into the agreement.")

the allegations set forth in the complaint itself, documents that are attached to the complaint,

documents that are central to the complaint and are referred to in it, and information that is

properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Even if jurisdiction were proper here, which it is not, Counts I and II are supported by no more

than vague and conclusory allegations, and should therefore be dismissed pursuant to Rule

12(b)(6).  All Counts of the Complaint fail to state a claim against Republic Airways Holdings

Inc. because it is not a "carrier by air," and, as a result, all claims against it should be dismissed

pursuant to Rule 12(b)(6).  *See U.S. Airways Grp.*, 609 F.3d at 344.

### A.  Plaintiffs Have Failed To State A Claim Under Counts I Through III Against Republic Airways Holdings Inc.

Plaintiffs have asserted Counts I through III of the Complaint against the parent

company, Republic Airways Holdings Inc., which wholly owns Republic, as well as

approximately 40% of Cape Air through a wholly-owned subsidiary.  (*See generally* Compl.)

However, Republic Airways Holdings Inc. is not a "carrier by air," and thus, is not subject to the

requirements of the RLA.  *See U.S. Airways Grp.*, 609 F.3d at 344.  Therefore, the Complaint

fails to state a claim against Republic Airways Holdings Inc. and should be dismissed pursuant to

Rule 12(b)(6).[7]

### B.  Plaintiffs Have Failed To State A Claim Under Count I

Claims of interference with organizing rights under Sections 2, Third and Fourth of the

RLA "address[] primarily the *precertification* rights and freedoms of unorganized employees."

*Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 440 (1989)

(emphasis added).  This is because, after a union has been certified, employees have "an arbitral

---

[7] To the extent that the Court finds that the RLA does apply to Republic Airways Holdings Inc., then Defendants' other arguments for dismissal herein apply equally to Republic Airways Holdings Inc.

remedy" available.  *Renneisen v. Am. Airlines, Inc.*, 990 F.2d 918, 923 (7th Cir. 1993).  And as

the Seventh Circuit has explained, "in those disputes in which the RLA's extra-judicial dispute-

resolution mechanisms are capable of adequately protecting the rights of the parties, federal

courts may not interfere."  *Id.* (quotation and alterations omitted).

After a union has been certified, courts have required plaintiffs to show "anti-union

animus," or that the RLA's "extrajudicial dispute-resolution framework is . . . either unavailable .

. . or ineffective," before intervening in labor disputes under Section 2, Third and Fourth.  *See*

*Atchison*, 847 F.2d at 411 (citations omitted); *Dempsey v. Atchison, Topeka & Santa Fe Ry. Co.*,

16 F.3d 832, 841-42 (7th Cir. 1994); *Belcastro v. United Airlines, Inc.*, 2021 WL 1172242, at *5-

6 (N.D. Ill. Mar. 29, 2021); *accord Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914, 917-19 (7th

Cir. 1974) ("The last sentence allegedly evidences the *anti-union motivation* of the discharge."

(emphasis added)).  "Under these circumstances, the courts have intervened only in the unusual

case where the plaintiff can show that the employer's actions strike a fundamental blow to union

or employer activity and the collective bargaining process itself."  *Carr v. Chi., Cent. & Pac.*

*R.R.*, 853 F. Supp. 282, 288 (N.D. Ill. 1994) (internal quotation marks omitted).

Plaintiffs make no allegation that the pre-hire employment incentives are in any way

motivated by "anti-union animus"—nor could they, given that the agreements are plainly rooted

in Article 3.O. of the Republic-IBT CBA and Section 1.J of the Cape Air-IBT CBA, which

Defendants negotiated and to which Plaintiffs agreed.  Moreover, Plaintiffs also do not, and

cannot, allege that the RLA's dispute resolution framework is unavailable or ineffective here.

Given the absence of any allegation or reasonable inference of anti-union motivation behind the

pre-hire employment incentive agreements, Plaintiffs fail to state a viable claim under Count I.

**C.      Plaintiffs Have Failed To State A Claim Under Count II**

Count II similarly fails because Plaintiffs assert no factual allegations about the

bargaining process that could plausibly support this claim.  Claims against a carrier under

Section 2, Ninth for failure to "treat" require allegations that a carrier failed to recognize and/or

deal with the NMB-certified union for collective bargaining purposes with respect to rates of

pay, rules, and working conditions of the craft or class.  *See, e.g.*, *Int'l Ass'n of Machinists and*

*Aerospace Workers, AFL-CIO v. Alitalia Airlines*, 600 F. Supp. 268, 273-74, 276 (S.D.N.Y

1984).

The Supreme Court has held that Section 2, Ninth creates a duty of a carrier to "treat"

with the representative of a craft or class of its employees over rates of pay, rules, and working

conditions, which arises upon certification of the representative by the NMB.  *See, e.g.*,

*Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 548 (1937).  But the Supreme Court has

also held that making individual agreements with employees governed by a CBA is not

prohibited as long as those agreements do not conflict with the CBA.  *See J.I. Case Co. v.*

*N.L.R.B.*, 321 U.S. 332, 339 (1944) ("We know of nothing to prevent the employee's, because he

is an employee, making any contract provided it is not inconsistent with a collective agreement

or does not amount to or result from or is not part of an unfair labor practice.").  Applying that

principle to the RLA, the Supreme Court confirmed that the RLA does not preclude a carrier

from entering into agreements with individual employees, but that individual agreements cannot

supersede the CBA.  *See Ord. of R.R. Telegraphers*, 321 U.S. at 347.  Thus, resolution of Count

II requires interpretation of the Republic-IBT CBA and Cape Air-IBT CBA to determine if those

agreements allow for the Carriers' pre-hire employment incentives—which, as explained above,

the express CBA provisions clearly do.

Here, Plaintiffs allege only in conclusory terms that the pre-hire employment incentive

agreements offered by Republic and Republic/Cape Air violate Section 2, Ninth.  Plaintiffs make

no factual allegations that the Carriers failed to recognize and/or deal with IBT that could

plausibly support this claim—nor can they.  Indeed, just the opposite is true based on Republic's

express right to enter into these agreements under Article 3.O. of the Republic-IBT CBA, and

Cape Air's similar right under Section 1.J of the Cape Air-IBT CBA, both of which the Plaintiffs

ignore in this claim.  These CBA provisions, as well as the expansion of rights between Article

3.O. in the previous and current Republic-IBT CBA, demonstrate that the Carriers in fact

negotiated with IBT over this right.  Plaintiffs thus fail to state a viable claim under Count II.

## CONCLUSION

For these reasons, the Court should dismiss the Complaint in its entirety with prejudice.


Dated: July 14, 2023                          Respectfully submitted,

By: /s/ Robert A. Siegel
Robert A. Siegel (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street 18th Floor
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: rsiegel@omm.com

Aparna B. Joshi (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 I Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: ajoshi@omm.com

David J. Carr  (Atty. No. 4241-49)
Paul C. Sweeney (Atty. No. 20392-29)
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282-0002
Telephone: (317) 236-2100
Fax: (317) 236-2219

23

E-mail: david.carr@icemiller.com
E-mail:  paul.sweeney@icemiller.com

*Attorneys for Defendants*