**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

|  |  |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, TEAMSTERS LOCAL UNION NO. 357 AND AIRLINE PROFESSIONALS ASSOCIATION TEAMSTERS LOCAL UNION NO. 1224, <br><br> Plaintiffs, <br><br> v. <br><br> REPUBLIC AIRWAYS INC., REPUBLIC AIRWAYS HOLDINGS INC. AND HYANNIS AIR SERVICE INC., <br><br> Defendants. | Civil Action No. 1:23-cv-995-RLY-MG |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

**TABLE OF CONTENTS**

                                                                              **Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 3

    A.    Parties............................................................................................................ 3

    B.    The Republic-IBT Collective Bargaining Agreement ........................... 4

    C.    The Cape Air-IBT Collective Bargaining Agreement ........................... 5

    D.    Pre-Hire Employment Incentive Agreements at Republic and Cape Air ............... 6

    E.    IBT's 2023 Grievances Over Pre-Hire Employment Incentives .......................... 8

ARGUMENT .......................................................................................................... 9

I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS'
CLAIMS ........................................................................................................... 9

    A.    Under The RLA, "Minor Disputes" Are Subject To The Exclusive Jurisdiction Of
The System Board Of Adjustment............................................................... 9

    B.    Counts I Through III Raise Minor Disputes Subject To The Exclusive Jurisdiction
Of The System Board Of Adjustment................................................. 12

        1.    Plaintiffs' Allegations Regarding the Republic Pre-Hire Employment
Incentive Agreement Raise Minor Disputes ............................. 15

        2.    Plaintiffs' Allegations Regarding the Pathway Program Pre-Hire
Employment Incentive Agreement Raise Minor Disputes ...................... 20

    C.    Count IV Must Be Dismissed Along With The Minor Dispute Claims In Counts I
Through III................................................................................................ 23

II.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER COUNTS I THROUGH
III AGAINST REPUBLIC AIRWAYS HOLDINGS INC. AND COUNTS I & II AS TO
THE CARRIERS ............................................................................................ 24

    A.    Plaintiffs Have Failed To State A Claim Under Counts I Through III Against
Republic Airways Holdings Inc.................................................................. 25

    B.    Plaintiffs Have Failed To State A Claim Under Count I ..................................... 25

    C.    Plaintiffs Have Failed To State A Claim Under Count II .................................... 27

CONCLUSION....................................................................................................... 28

## PRELIMINARY STATEMENT

Regional air carriers Republic Airways Inc. ("Republic") and Hyannis Air Service, Inc. ("Cape Air") (collectively the "Carriers") offer pre-hire employment incentives to aid with pilot recruitment.  These incentives are set forth in individual agreements with pilot candidates, and they are in accord with the collective bargaining agreements ("CBAs") between the Carriers and the pilots' union, International Brotherhood of Teamsters ("IBT").  In their First Amended Complaint ("FAC"), Plaintiffs—IBT and two of its local unions—have asserted three causes of action against the Carriers under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* ("RLA"): a claim under Section 2, Third and Fourth for interference with representation rights (Count I); a claim under Section 2, Ninth for failure to "treat" with the certified bargaining representative (Count II); and a claim under Section 2, First, Seventh and Section 6 for improperly altering the parties' status quo without negotiation (Count III).[1]  Plaintiffs also raise a new state-law claim alleging that the post-employment non-compete provisions in the pre-hire employment incentive agreements violate the Indiana law of restrictive covenants (Count IV).  Each of Plaintiffs' causes of action  should be dismissed.

*First*, this Court lacks jurisdiction over each of Plaintiffs' claims, and the FAC should accordingly be dismissed under Federal Rule of Civil Procedure 12(b)(1).  With respect to Counts I through III, under the RLA, where an air carrier's conduct is "arguably justified" by the express or implied terms of the applicable collective bargaining agreement ("CBA"), the dispute in question is a "minor dispute" and subject to the mandatory and exclusive arbitration jurisdiction of the applicable System Board of Adjustment ("System Board").  *Consol. Rail*

---

[1] Plaintiffs have also asserted these causes of action against the parent company, Republic Airways Holdings Inc., which wholly owns Republic, as well as approximately 40% of Cape Air through a wholly-owned subsidiary.  (*See generally* FAC.)  However, Republic Airways Holdings Inc. is not a proper defendant.  *See infra* at 25.

*Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 307 (1989) ("*Conrail*") (holding carriers bear a "relatively light burden" in establishing that a dispute is minor) (quotation omitted); *Ry. Lab. Execs. Ass'n v. Norfolk & W. Ry. Co.*, 833 F.2d 700, 705 (7th Cir. 1987) ("[I]f there is any doubt as to whether a dispute is major or minor a court will construe the dispute to be minor."). Plaintiffs' allegations under the RLA (Counts I through III)—that the Carriers' pre-hire employment incentives interfered with representation rights, that the Carriers failed to "treat" with IBT over the pre-hire employment incentives, and that the pre-hire employment incentives violated the status quo—all plainly implicate and are governed by the terms of the applicable CBAs: the agreement between Republic and IBT ("Republic-IBT CBA"), and the agreement between Cape Air and IBT ("Cape Air-IBT CBA"). Indeed, prior to filing their original Complaint in this case, Plaintiffs sought relief in the proper forum by filing grievances with the Carriers alleging violation of the applicable CBAs. But instead of submitting those contract grievances to arbitration, Plaintiffs now attempt to invoke the jurisdiction of this Court, which they may not do because the Carriers' pre-hire employment incentives are, at the very least, "arguably justified" by the Republic-IBT CBA and Cape Air-IBT CBA. *See Conrail*, 491 U.S. at 307. Thus, Counts I through III of the FAC should therefore be dismissed for lack of jurisdiction.

Count IV should similarly be dismissed for lack of jurisdiction. Because Counts I through III raise minor disputes under the RLA and are thus subject to the exclusive jurisdiction of the System Board, the Court has no original jurisdiction over Plaintiffs' claims in Counts I through III. Therefore, according to Seventh Circuit precedent, the Court cannot exercise supplemental jurisdiction over Plaintiffs' new state-law claim in Count IV. All of Plaintiffs' claims should thus be dismissed for lack of jurisdiction.

*Second*, Counts I (violation of Section 2, Third and Fourth) and II (violation of Section 2, Ninth) of the FAC should be dismissed for the additional reason that Plaintiffs fail to state a claim. Count I fails as a matter of law because Plaintiffs have not pled that the arbitration process fails to provide an adequate remedy or that the Carriers have acted with anti-union animus. Count II similarly fails because the mere fact that an individual agreement exists does not constitute a violation of Section 2, Ninth, and Plaintiffs assert no other factual allegations about the bargaining process that could plausibly support this claim.

For these reasons, Plaintiffs' FAC should be dismissed in its entirety.

## STATEMENT OF FACTS

### A.    Parties

Republic is a regional passenger air carrier headquartered in Indianapolis, Indiana and is a wholly-owned subsidiary of Republic Airways Holdings Inc. (FAC ¶¶ 8-9.) Republic provides regional passenger air service to American Airlines, Delta Air Lines, and United Airlines. (*Id.* ¶ 12.) Republic currently employs approximately 2,000 pilots. (*Id.* ¶¶ 5, 13.) Cape Air is also a regional air carrier, of which Republic Airways Holdings Inc. owns an approximate 40% shareholder interest. (*Id.* ¶ 11.) Cape Air currently employs approximately 167 pilots. (*Id.* ¶¶ 5, 17.)

Plaintiff IBT is an unincorporated labor organization with its principal offices in Washington, D.C. (*Id.* ¶ 5.) IBT is the collective bargaining representative certified by the National Mediation Board ("NMB") as the exclusive representative of pilots employed by Republic, and pilots employed by Cape Air. (*Id.*)

Plaintiff Teamsters Local Union No. 357 ("Local 357") is an unincorporated labor organization and affiliated local union of IBT, which is duly chartered and designated by IBT to act as its agent for purposes of representation of pilots employed by Republic. (*Id.* ¶ 6.) Plaintiff

3

Airline Professionals Association, Teamsters Local Union No. 1224 ("Local 1224") is also an unincorporated labor organization and an affiliated local union of IBT, duly chartered and designated by IBT to act as its agent for purposes of representation of pilots employed by Cape Air.  (*Id.* ¶ 7.)

### B.    The Republic-IBT Collective Bargaining Agreement

Republic and IBT are parties to a CBA, the Republic-IBT CBA, dated October 14, 2022. (*Id.* ¶¶ 14-15; *see generally* Declaration of Chad Pulley ("Pulley Decl."), Ex. A.)  As relevant here, Article 3.O. of the Republic-IBT CBA is titled "Signing Bonuses, New Hire Incentives, and Other Bonuses/Incentives," and states in part:

> With respect to signing bonuses, stipends and other new hire incentives, the Company has the discretion to offer, and to increase or decrease, signing bonuses, stipends, and/or incentives in its recruitment efforts of New Hire Pilots.  **The Company has the discretion to determine the terms** of the signing bonus, stipend, and/or other incentives for New Hire Pilots **including but not limited to** the timing of payments of such signing bonuses, stipends, and/or incentives.
> …
>
> **The Company, in its discretion, may offer a bonus or financial incentive at any time and of any type or form** to incentivize a qualified Pilot to complete Captain qualification training.  **The Company has the discretion to determine the terms** of the bonuses, or other incentives for Pilots, **including but not limited to** the timing of payments of such bonuses and/or incentives.

(Pulley Decl., Ex. A, Art. 3.O.1., 3.O.3 at 3-7 (emphasis added).)

In addition, Article 6.K.8. of the Republic-IBT CBA identifies various "entitlements and provisions" that are waivable by an individual pilot including "the entitlements and provisions in Article 6 [Scheduling], Article 7 [Reserve Duty], Article 8 [Paid Days Off], Article 23 [Hours of Service], and Article 26 [Vacancies and Displacements]."  (*Id.*, Art. 6.K.8. at 6-26.)

Article 18 outlines the parties' dispute resolution procedures under the Republic-IBT CBA, commencing with discussion with Republic and filing of a grievance, and culminating in arbitration before the System Board as required by the RLA.  (*Id.*, Art. 18 at 18-1-18-9.)  Article

4

18.D.2.a. explains that "[a] Pilot, or the Union on behalf of a Pilot or group of Pilots, may file a grievance concerning any action of the Company affecting him or them."  (*Id.* at 18-3.)

### C.       The Cape Air-IBT Collective Bargaining Agreement

Cape Air and IBT are parties to a separate CBA, the Cape Air-IBT CBA, dated April 1, 2020.  (FAC ¶ 18; *see generally* Declaration of Linda Markham ("Markham Decl."), Ex. A.) Section 1.J. of the Cape Air-IBT CBA reserves broad management rights to Cape Air to manage and direct its operations to the extent Cape Air's right to do so is not otherwise restricted by the terms of the Cape Air-IBT CBA.  (Markham Decl., Ex. A, § 1.J at 11.)  Section 1.J states, "The Company has and retains and the Union recognizes the sole and exclusive right of the Company to exercise all rights or functions of management except to the extent that such rights of management are limited by this Agreement and so long as the exercise of such rights does not conflict with the terms of this Agreement."  (*Id.*)

The Cape Air-IBT CBA also includes various provisions that are waivable by an individual pilot.  (*See generally* Markham Decl., Ex. A.)  For example, Section 10.C.2.b establishes that a pilot may "waive the Day Off restriction," which establishes minimum days off and Section 14.E.3 allows a pilot to "waive, reduce or reschedule any break."  (*Id.* §§ 10.C.2.b, 14.E.3 at 61, 102.).

Section 18 of the Cape Air-IBT CBA provides contractual dispute resolution procedures, commencing with the filing of a grievance and culminating in arbitration before the System Board as required by the RLA.  (*Id.* § 18 at 123-31.)  Section 18.C.2. provides that "[a] Pilot, or the Union on behalf of the Pilots, covered by this Agreement who have a grievance concerning any action of the Company affecting them, except matters involving Discipline or Discharge [subject to the procedures in Section 18.C.1], *shall use the dispute resolution procedures as established herein*."  (*Id.* at 125 (emphasis added).)

**D.       Pre-Hire Employment Incentive Agreements at Republic and Cape Air**

As a measure to aid with pilot recruitment, Republic and Cape Air offer employment incentives to pilot candidates before they are hired by the Carriers.  (FAC ¶ 19; *see generally* FAC Exs. 1 (ECF No. 20-1), 3 (ECF No. 20-3).)  Republic offers individual pilot candidates the Republic Airways New First Officer Career Advancement Program ("Career Advancement Program"), the terms and conditions of which are provided in the Career Advancement Program Pre-Hire Enrollment Agreement ("Republic Pre-Hire Agreement").[2]  (*See generally* FAC Ex. 3 (ECF No. 20-3).)

In the Republic Pre-Hire Agreement, Republic and individual pilot candidates agree that the pilot candidate will be eligible for an incentive payment of $100,000, to be paid in installments according to the payment schedule and terms and conditions therein, beginning with a first installment of $25,000 upon the pilot candidate's successful completion of First Officer training, a second installment of $50,000 upon the pilot candidate's successful completion of Captain upgrade training, and a third installment of $25,000 after successfully completing one year of active service as a Captain.  (*Id.* at 2 ¶ II.A.)  In exchange, pursuant to the terms of the agreement, the pilot candidate agrees to make a two-year employment commitment as an active status Captain at Republic, or a five-year commitment as an active status pilot for Republic.  (*Id.* at 3-4 ¶¶ II.C., III.A., C.)  The pilot candidate further acknowledges that in order to hire and train the pilot candidate, Republic will invest time, resources, and money.  (*Id.* at 3 ¶ III.B.)  The pilot candidate also agrees that failure to comply with the employment commitment constitutes a material breach of the Republic Pre-Hire Agreement, requiring them to repay the incentive

---

[2] The Republic Pre-Hire Agreement is the current and operative agreement for pre-hire pilot candidates at Republic, which Republic has provided to Plaintiffs.  (*See generally* FAC Ex. 3 (ECF No. 20-3).)  Plaintiffs erroneously attach to the FAC a *former* version of this agreement, which is no longer used by Republic.  (*See generally* FAC Ex. 2 (ECF No. 20-2).)

payment and pay certain liquidated damages depending on how much of their employment commitment period they have completed, up to $100,000.  (*Id.* at 4 ¶ III.C.)  The pilot candidate further agrees that in the event they resign from employment with Republic or are terminated in accordance with the Republic-IBT CBA prior to fulfilling the specified employment commitment, for a period of one year they will not work as a pilot for an airline other than American Airlines, Delta Air Lines, or United Airlines mainline operations.  (*Id.* at 5 ¶ III.G.)

Similarly, Republic offers the Republic Airways Captain Pathway Program ("Pathway Program") based on the terms and conditions of the Republic Airways Captain Pathway Program Enrollment Agreement (the "Pathway Program Pre-Hire Agreement"), which is a three-party agreement between a pilot candidate, Cape Air, and Republic.  (*See generally* FAC Ex. 1 (ECF No. 20-1).)  In the Pathway Program Pre-Hire Agreement, individual pilot candidates who choose to start their career under the Pathway Program at Cape Air and Republic agree that upon performing at least 720 hours of qualifying Pilot in Command time at Cape Air, the pilot candidate will receive a guaranteed First Officer Trainee class date at Republic.  (*Id.* at 2 ¶ II.) The pilot candidates receive a $2,500 signing bonus paid by Republic.  (*Id.* at 1 ¶ I.)  Upon successfully upgrading to the position of Captain at Republic, the pilot candidate will be eligible for an incentive payment of up to $100,000.  (*Id.* at 2 ¶ III.)

The terms of the incentive payment set forth in the Pathway Program Pre-Hire Agreement explain that the amount of the payment from Republic depends on the number of months in which the pilot candidate completes the required flight hours and the number of months in which the pilot candidate upgrades to Captain at Republic.  (*Id.* at 2-3.)  In exchange for that payment, the pilot candidate agrees to a three-year employment commitment, which includes 720 hours of qualifying Pilot in Command time at Cape Air, with the remainder of that

commitment at Republic.  (*Id.* at 3-4 ¶ IV.)  This three-year employment commitment also specifically includes a two-year commitment as a Captain at Republic.  (*Id.*)  The pilot candidate acknowledges that Republic will invest time, resources, and money.  (*Id.*)  In this pre-hire employment incentive agreement, the pilot candidate agrees that failure to satisfy the agreed employment commitment shall constitute a material breach of the Pathway Program Pre-Hire Agreement, requiring the pilot to repay the incentive payments made and pay the sum of $250,000 in liquidated damages to Republic.  (*Id.*)  The pilot further agrees that in the event the pilot is terminated or terminates from employment at Republic, the pilot will not work as a pilot for another airline that is in competition with Republic for one year.  (*Id.* at 4.)  While a pilot must perform 720 hours of qualifying Pilot in Command time at Cape Air to receive a guaranteed First Officer Trainee class date at Republic, *see id.* at 2 ¶ II., there are no requirements in the Pathway Program Pre-Hire Agreement to pay liquidated damages to Cape Air and Cape Air does not make incentive payments to the pilot candidate.  (*See generally* FAC Ex. 1 (ECF No. 20-1).)

     **E.**    **IBT's 2023 Grievances Over Pre-Hire Employment Incentives**

On May 28, 2023, IBT filed a grievance pursuant to Article 18 of the Republic-IBT CBA. (Pulley Decl., Ex. C.)  On May 30, 2023, IBT also filed a grievance pursuant to Section 18 of the Cape Air-IBT CBA.  (Markham Decl., Ex. B.)  Those grievances allege that the pre-hire employment incentives offered by Republic and Cape Air violate various provisions of the CBAs.  (Pulley Decl., Ex. C at 1; Markham Decl., Ex. B at 1-2.)  Subsequent to filing their grievances, Plaintiffs filed the instant lawsuit on June 8, 2023.  (ECF No. 1.)  Defendants filed a motion to dismiss Plaintiffs' Complaint for lack of jurisdiction as to all Counts and failure to state a claim for certain Counts on July 14, 2023.  (ECF No. 18, 19.)  On August 3, 2023, Plaintiffs responded by filing an amended complaint. (ECF No. 20.)

# ARGUMENT

## I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of any claim over which the federal court lacks subject matter jurisdiction.  To survive a Rule 12(b)(1) motion, a plaintiff bears the burden of demonstrating that the court has subject matter jurisdiction.  *See, e.g.*, *Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987); *Alonso v. Blue Sky Resorts, LLC*, 179 F. Supp. 3d 857, 860 (S.D. Ind. 2016).  The court may "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *Gann v. Richardson*, 43 F. Supp. 3d 896, 900 (S.D. Ind. 2014) (quotation omitted).  Here, Plaintiffs cannot satisfy their burden, and the FAC should be dismissed.

### A.      Under The RLA, "Minor Disputes" Are Subject To The Exclusive Jurisdiction Of The System Board Of Adjustment

Congress enacted the RLA and extended it to air transportation "to promote stability in labor-management relations."  *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978).  At the "heart" of the RLA is the statute's mandatory arbitral mechanism.  *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co*., 394 U.S. 369, 377-78 (1969).  Thus, "[e]mbedded in the [RLA] is a strong preference for arbitration, as opposed to judicial resolution of disputes."  *Bhd. of Locomotive Eng'rs & Trainmen (Gen. Comm. of Adjustment, Cent. Region) v. Union Pac. R.R. Co.*, 879 F.3d 754, 755 (7th Cir. 2017).  For disputes arising under the RLA, the jurisdiction of the federal courts "depends on whether [the dispute] is 'major' or 'minor.'"  *Id.* at 757.  A "minor dispute" is a grievance or matter involving the interpretation or application of a CBA.[3]

---

[3]  "Major disputes," in contrast, "arise where there is no . . . agreement or where it is sought to

*Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 722-23 (1945); *Conrail*, 491 U.S. at 307.

Congress found that mandatory arbitration is the key to "minimizing interruptions in the Nation's

transportation services." *Int'l Ass'n of Machinists, ALF-CIO v. Cent. Airlines, Inc*., 372 U.S.

682, 687 (1963). Accordingly, Congress deemed it "essential" that "minor disputes" be kept

"out of the courts."[4] *Sheehan*, 439 U.S. at 94. For minor disputes, parties must submit their

contract interpretation issues to the appropriate board of adjustment for final and binding

arbitration. 45 U.S.C. § 153(i); *BLET GCA UP v. Union Pac. R.R. Co.*, 988 F.3d 409, 412-13

(7th Cir. 2021) ("minor disputes must go directly to binding arbitration"); *Loc. 591, Transp.*

*Workers Union of Am. v. Am. Airlines, Inc.*, 2015 WL 3852958 (N.D. Ill. June 19, 2015)

(dismissing claims that carrier violated RLA for lack of jurisdiction because the claims raised

minor disputes). The jurisdiction of the adjustment board is "mandatory and exclusive." *Grimes*

*v. CSX Transp., Inc.*, 2009 WL 10709792, at *1 (S.D. Ind. Feb. 25, 2009) (Young, J.), *aff'd*,

*Grimes v. CSX Transp., Inc.*, 338 F. App'x 522 (7th Cir. 2009); *see also Andrews v. Louisville &*

*Nashville R.R. Co.*, 406 U.S. 320, 322-24 (1972). "A plaintiff's claim is properly characterized

---

change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy." *Elgin*, 325 U.S. at 723. "In essence, a major dispute involves the creation of a contract or a change in the terms of an existing contract, while a minor dispute involves the interpretation or application of an existing contract." *Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps. v. Atchison, Topeka & Santa Fe Ry. Co*., 847 F.2d 403, 406 (7th Cir. 1988).

[4]  In the context of a related statute, the Federal Arbitration Act, the Supreme Court recently acknowledged the importance of Congress' intent with respect to a statutory scheme to determine arbitrability, holding that a district court must stay its proceedings while an interlocutory appeal on the issue of arbitrability is ongoing, in part because "[i]f the district court could move forward with pre-trial and trial proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost," and "parties [] could be forced to settle to avoid the district court proceedings (including discovery and trial) that they contracted to avoid through arbitration." *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915, 1921 (2023).

as a minor dispute (and is therefore subject to mandatory and exclusive arbitration under the RLA) when the resolution of the plaintiff's claim requires interpretation of the CBA." *Grimes*, 2009 WL 10709792, at *1.

Carriers have a "relatively light burden" in establishing that a dispute is minor and therefore subject to mandatory arbitration. *Conrail*, 491 U.S. at 307 (quotation omitted). "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is *arguably justified* by the terms of the parties' collective-bargaining agreement." *Id.* (emphasis added); *see also Union Pac.*, 879 F.3d at 756 (affirming dismissal where Company had "at least a non-frivolous argument that interpretation of the agreement between the parties . . . is at stake"). An employer may rely on express and/or implied rights in the CBA. *Conrail*, 491 U.S. at 308, 311-12 (finding employer's action under RLA may be arguably justified by express or implied terms of CBA). If the parties "disagree on whether a dispute can be resolved under an existing agreement, the dispute is minor unless the carrier's claims of contractual justification are 'frivolous' or 'obviously insubstantial.'" *Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps. v. Atchison, Topeka & Santa Fe Ry. Co.*, 847 F.2d 403, 406 (7th Cir. 1988) (citation omitted); *see also Bhd. of Maint. of Way Emps. Div./IBT v. Norfolk S. Ry. Co.*, 745 F.3d 808, 813 (7th Cir. 2014) ("To be considered minor, an employer's action only needs to be 'arguably justified' by a contractual right under the terms of the collective bargaining agreement." (quoting *Conrail*, 491 U.S. at 307)). Thus, "an employer's reliance on a right set forth in the parties' collective bargaining agreement ordinarily is enough to confirm the existence of a minor dispute unless it is clear that the employer's claim is 'insincere' or founded on 'insubstantial grounds.'" *Loc. 591, Transp. Workers*, 2015 WL 3852958, at *6 (quoting *Conrail*, 491 U.S. at 306).

11

As explained below, the Carriers' alleged conduct with respect to the pre-hire employment incentive agreements is "arguably justified" by the provisions of the Republic-IBT CBA and Cape Air-IBT CBA.  To the extent Plaintiffs dispute facts or the meaning or application of the contract language upon which the Carriers relied, such disagreement raises interpretation issues for resolution by the System Board.  The Court need only determine whether the Carriers' position is "frivolous and obviously insubstantial," and if it is not, the dispute must be resolved in arbitration by the System Board.  *Conrail*, 491 U.S. at 307.

## B.  Counts I Through III Raise Minor Disputes Subject To The Exclusive Jurisdiction Of The System Board Of Adjustment

Resolution of Plaintiffs' federal claims—*i.e.*, that the Carriers interfered with Plaintiffs' representation rights (Count I), failed to negotiate or otherwise deal with IBT (Count II), and improperly altered the parties' status quo under the CBAs (Count III)—requires interpretation of provisions of the CBAs, most notably Article 3.O. of the Republic-IBT CBA and Section 1.J of the Cape Air-IBT CBA.  Accordingly, these claims must be resolved by the System Board.[5]

In their FAC, Plaintiffs make clear that they disagree with the Carriers on whether particular terms of the pre-hire employment agreements violate the terms of the CBAs, and whether past practice supports the agreements.  But under the RLA, that is precisely the kind of dispute that must be resolved in arbitration before the System Board.  *Grimes*, 2009 WL 10709792, at *1 ("A plaintiff's claim is properly characterized as a minor dispute . . . when the resolution of the plaintiff's claim requires interpretation of the CBA."); *Union Pac.*, 879 F.3d at

---

[5] To the extent the meaning of the relevant provisions in the CBAs is disputed by the parties, the Carriers will present to the System Board evidence about the relevant bargaining history, such as the parties' expressed intent to provide broad discretion to the Carriers to offer the pre-hire employment incentives, including with respect to both upgrading to the position of Captain and retention of those pilots who have successfully upgraded to Captain.

760 (affirming dismissal of minor dispute in favor of arbitration).  Indeed, the FAC contains at least 12 paragraphs alleging that the pre-hire employment incentive agreements generally are not "authorized" by the CBAs, or that various provisions of the agreements are not specifically authorized under the CBAs.  (FAC ¶¶ 41, 57, 58, 59, 60, 61, 72, 73, 83, 84, 96, 97; *see also id.* ¶ 39 (alleging that the agreements "conflict with" other provisions in the CBAs)).  Plaintiffs go as far as alleging that the Carriers' contrary interpretations of the CBAs are "knowingly false." (FAC ¶¶ 73, 84, 97.)

But the Supreme Court made clear in *Conrail* that the only question here is whether the Carriers' actions are "arguably justified" by the CBAs.  *See* 491 U.S. at 306-07.  If they are, then the claims must be resolved by the System Board in arbitration.  To be "arguably justified," the Carriers' interpretation of the CBAs cannot be "frivolous" or "obviously insubstantial."  *Id.* at 312; *see also id.* at 317.  That is a "relatively light burden."  *Id.* at 307 (quotation omitted). Indeed, *Conrail* held that a company's position was "arguably justified" even though the CBA had *no language* supporting the company's interpretation of it, and the company's interpretation "rest[ed] solely upon implied contractual terms, as interpreted in light of past practice."  *Id.* at 312.

Here, the *plain language* of the CBAs arguably justifies the Carriers' action to implement pre-hire employment incentive agreements—both Article 3.O. of the Republic-IBT CBA and Section 1.J of the Cape Air-IBT CBA.  Plaintiffs do not even address these two provisions in their FAC.  Rather, Plaintiffs merely allege, without factual support, that the Carriers' interpretation of the CBA language is "knowingly false," and then raise allegations about *other* provisions of the CBAs or past practice that might lead to a different interpretation of the two CBAs.  (FAC ¶¶ 73, 84, 97.)  Plaintiffs' conclusory allegations entirely fail to establish that the

Carriers' position is "frivolous and obviously insubstantial" as required under *Conrail*.[6] 491 U.S. at 307. And Plaintiffs' allegations about other provisions and past practice highlight and confirm that the dispute presented is one regarding the interpretation of the CBAs, which must be decided by the System Board under the RLA.[7]

Moreover, the very fact that Plaintiffs filed grievances *before* this litigation—under the dispute resolution procedures mandated by the CBAs—reflects their acknowledgement that the issue here is one of contract interpretation and application, which must be resolved by the System Board. (*See* Pulley Decl., Ex. C at 1 (grievance from Local 357 listing at least nine articles and sections of the Republic-IBT CBA that have allegedly been violated by the pre-hire employment incentive agreements and seeking remedies including cease and desist and nullification of the agreements); Markham Decl., Ex. B at 2 (grievance from Local 1224 listing at least eight articles and sections of the Cape Air-IBT CBA that have allegedly been violated by the pre-hire employment incentive agreements and seeking remedies including cease and desist

---

[6] Moreover, the Court is not required to accept conclusory allegations in deciding whether jurisdiction is proper. *See Lawrence v. United States*, 597 F. App'x 599, 602 (11th Cir. 2015) ("When reviewing a ruling on a facial jurisdictional attack . . . we accept the well-pleaded factual allegations in the complaint as true. However, we are not required to accept mere conclusory allegations as true." (citation omitted)); *see also Zickler Assocs., LLC v. Medivolve, Inc.*, 2022 WL 18540502, at *1 (S.D. Ind. Sept. 22, 2022) ("Conclusory jurisdictional allegations are insufficient.").

[7] Plaintiffs have added several new allegations about the past practice or negotiations of the parties that led to the current language in the CBAs. (*E.g.*, FAC ¶¶ 42, 45-47.) That is exactly the kind of evidence that the System Board often considers when deciding these kinds of disputes between labor and management over the interpretation of the CBA. *See* Elkouri & Elkouri, *How Arbitration Works*, Chapter 12 (Elizabeth J. Fabrizio ed., 2021) (ebook) ("Unquestionably, the custom and past practice of the parties constitutes one of the most significant evidentiary considerations in labor-management arbitration . . . [and] may be introduced . . . to indicate the proper interpretation of contract language."). The Carriers plan to present evidence of past practice that *supports* the use of pre-hire agreements, but the Carriers will present that evidence in the proper forum—arbitration—to aid the System Board's interpretation of the CBAs. Plaintiffs may present whatever bargaining history and past practice evidence they have in that forum as well.

14

and nullification of the agreements).)  The parties clearly disagree about the meaning of the CBA language, and it is the exclusive jurisdiction of the System Board to decide who is right.

Finally, the fact that Plaintiffs "purport[] to bring [] statutory claim[s]" does not alter the claims' nature as minor disputes.  *See U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 305 (E.D.N.Y. 2012).  "Simply reiterating the same argument in another context does not somehow endow the court with jurisdiction over the minor disputes that plaintiff brings before it."  *Id.* at 308 (rejecting alternative argument that jurisdiction was proper over Section 2, Third and Fourth claim where court determined that it lacked jurisdiction over other RLA claims pertaining to same issue, including alleged violations of the status quo and Section 2, First and Second); *see also Loc. 591, Transp. Workers*, 2015 WL 3852958, at *7 (finding union's Section 2, Ninth claim based on same allegations as Section 2, Third and Fourth claims, and concluding all claims raise minor disputes subject to mandatory arbitration under RLA).

This Court should dismiss Counts I through III of the FAC in their entirety to allow Plaintiffs' claims to proceed in arbitration as mandated by the RLA.

### 1.  Plaintiffs' Allegations Regarding the Republic Pre-Hire Employment Incentive Agreement Raise Minor Disputes

Plaintiffs' claims regarding the Republic Pre-Hire Agreement raise minor disputes subject to the exclusive jurisdiction of the System Board because the allegations implicate the express provisions of the Republic-IBT CBA.  As part of the exchange for a nearly 54% increase in pay rates for Captains and 70 to 90% increase in First Officer pay rates, and in acknowledgement of the hiring and attrition problems that Republic was facing, IBT and Republic negotiated to give Republic broad rights to address those problems.  (*Compare* Pulley Decl., Ex. A, Art. 3.O. at 3-7, *with id.* Table 3.1, 3.2 at 3-9-3-10.)  Accordingly, Article 3.O. of

the Republic-IBT CBA expressly provides Republic with "the discretion to offer, and to increase or decrease, signing bonuses, stipends, and/or incentives in its recruitment efforts of New Hire Pilots." (*Id.*, Art. 3.O.1. at 3-7.)  Article 3.O. also grants Republic the right to "***determine the terms of*** the signing bonus, stipend, and/or other incentives for New Hire Pilots ***including but not limited to*** the timing of payments of such signing bonuses, stipends, and/or incentives." (*Id.* (emphasis added).)  And Article 3.O. allows Republic to "offer a bonus or financial incentive at any time ***and of any type or form*** to incentivize a qualified Pilot to complete Captain qualification training.  Republic has the discretion to determine the terms of the bonuses, or other incentives for Pilots, ***including but not limited to*** the timing of payments of such bonuses and/or incentives." (*Id.* at Art. 3.O.3. at 3-7 (emphasis added).)  The Republic Pre-Hire Agreement is thus "arguably justified" by the terms of the Republic-IBT CBA.

As further evidenced by the plain text of the Republic-IBT CBA, Republic specifically negotiated with IBT to obtain this wide discretion under Article 3.O.  Under the previous CBA between Republic and IBT in 2018, Article 3.O. provided a narrower set of rights to Republic to establish incentives for pilots and new hires.  (Pulley Decl., Ex. B, Art. 3.O. at 3-8-3-9.)  That previous version of Article 3.O. provided as follows:

Signing Bonuses and New Hire Incentives

1. With respect to signing bonuses, stipends and other new hire incentives, the Company has the discretion to offer, and to increase or decrease, signing bonuses and/or incentives in its recruitment efforts of New Hire Pilots. The Company has the discretion regarding the timing of payments of such signing bonuses and/or incentives for New Hire FO Pilots.

2. The Company, in its discretion, may forgive or reimburse (directly or indirectly, in whole or in part, over any duration(s) defined by the Company) any loan(s) that were taken out by Pilots (or provided to the Pilot) to offset costs associated with any form of training, education and/or certification of becoming qualified to be a New Hire Pilot at the Company.

16

(*Id.*)

The earlier, narrower version of Article 3.O. made no mention of "Other Bonuses/Incentives," or the right of Republic to "determine the terms of" these incentives "***at any time and of any type or form to incentivize*** a qualified Pilot."  (*Compare id.*, *with* Pulley Decl., Ex. A, Art. 3.O. at 3-7.)  All of that broad language was added to Article 3.O. in the Republic-IBT CBA in 2022, expressly granting Republic the discretion to ***determine the terms*** of the incentives, without limitation.  The current Republic-IBT CBA further permits Republic to do what Plaintiffs are challenging here: "offer a bonus or financial incentive at any time and of any type or form to incentivize a qualified Pilot to complete Captain qualification training." (Pulley Decl., Ex. A, Art. 3.O.3. at 3-7.)  The expansion of the plain language of Article 3.O.— from the narrow terms in 2018, to the broad grant of rights to Republic in 2022—demonstrates that Republic bargained for and obtained the right to offer a wide range of incentives to help with recruiting of pilots.

Plaintiffs' allegations that the Republic Pre-Hire Agreement conflicts with the Republic-IBT CBA do not alter this conclusion.  Plaintiffs allege that the Republic Pre-Hire Agreement "irrevocably conflict[s] with and [is] intended to evade" the Republic-IBT CBA by purportedly requiring a minimum number of hours, heightened attendance standards, maintaining FAA medical certificates, and giving Republic sole discretion to terminate the Republic Pre-Hire Agreement and remove the pilot from the Career Advancement Program.  (FAC ¶ 39(a), (e)-(f), (h).)  These alleged terms affect the pilot candidate's eligibility with respect to the incentive and do not result in discipline or discharge.  (FAC Ex. 3 at 1-2 ¶¶ I.B., I.C., II.B. (ECF No. 20-3) (providing that if the pilot candidate does not satisfy these terms, the candidate "will become ineligible for any remaining applicable payment Installment(s)" of the incentive payment).)  And

as explained above, Article 3.O.3 expressly grants Republic the discretion to "determine the terms" of the incentives.  *See supra* 15-17.

While Republic disputes Plaintiffs' allegations that the Republic Pre-Hire Agreement conflicts with the Republic-IBT CBA, even if Plaintiffs' allegations were taken as true, the Republic Pre-Hire Agreement remains "arguably justified" by the plain terms of the Republic-IBT CBA.  For example, although Plaintiffs now assert in their FAC that none of the provisions of the Republic Pre-Hire Agreement that allegedly conflict with the Republic-IBT CBA can be waived or have been waived by pilots under past practice, Plaintiffs ignore the plain language of the Republic-IBT CBA.  (FAC ¶ 40 (citing *id.* ¶ 39).)  The Republic-IBT CBA *expressly provides* that provisions in the CBA that Plaintiffs allege are violated (e.g., scheduling, bidding, minimum days off) can be waived by individual pilots.  In particular, Article 6.K.8. of the Republic-IBT CBA states that "[e]ach Pilot may waive the entitlements and provisions in Article 6 [Scheduling], Article 7 [Reserve Duty], Article 8 [Paid Days Off], Article 23 [Hours of Service], and Article 26 [Vacancies and Displacements] on an individual basis."  (Pulley Decl., Ex. A, Art. 6.K.8. at 6-26.)  Plaintiffs' new allegations of past practice to try to counteract the plain language of the Republic-IBT CBA further establishes the nature of the dispute as one of contract interpretation that must be decided by the System Board.

Plaintiffs also assert that the Republic Pre-Hire Agreement contains terms on which the Republic-IBT CBA is silent and therefore are impermissible.  For example, Plaintiffs allege that the Republic-IBT CBA does not include provisions on a minimum period of employment for pilots; a requirement to accept a Captain upgrade opportunity; or post-employment non-compete restrictions.  (FAC ¶¶ 26-28, 33-34.)  Plaintiffs' allegations of silence in the Republic-IBT CBA do not support their position.  To the contrary, Plaintiffs' allegations actually support *Republic's*

position because they concede that the cited provisions in the Republic Pre-Hire Agreement do not contradict or supersede any terms in the Republic-IBT CBA. *Cf. Ord. of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 346 (1944). And to the extent Plaintiffs disagree regarding the meaning of the alleged contractual silence, that disagreement raises interpretation issues for resolution by the System Board. To be sure, Republic is at least "arguably justified" by the broad discretion granted in Article 3.O. of the Republic-IBT CBA to include the cited terms in the Republic Pre-Hire Agreement. *Conrail*, 491 U.S. at 306-07.

In addition to the express contract language in Article 3.O., at an arbitration before the System Board on the grievance filed by IBT, Republic could also show in further support of its position that the implied terms of the Republic-IBT CBA are rooted in longstanding past practice acquiesced in by IBT. For example, Republic would be able to present evidence, to be assessed by the System Board, that it previously has required employment commitment periods in its offer letters to pilot candidates, and also required pilot candidates to pay damages if they choose to breach that employment commitment. Any factual dispute raised by IBT regarding this past practice would be properly resolved by the System Board in determining whether implied, as well as express, terms of the Republic-IBT CBA permit the pre-hire employment incentive agreements. *Conrail*, 491 U.S. at 311-12 (implied terms of a CBA based on past practice can constitute sufficient ground for a minor dispute under the "arguably justified" standard).

Even in their amended pleading following Defendants' prior motion to dismiss, Plaintiffs still make no mention whatsoever of Article 3.O. Plaintiffs do not allege that the plain language of this provision—to which they agreed in negotiations—does not *arguably justify* the Carriers' actions, rendering this case a minor dispute. Instead, they rely on conclusory allegations of past practice and bargaining history to dispute the carrier's contractual right to enter into the

19

agreements.  Because resolution of these claims requires interpretation of disputed terms of the Republic-IBT CBA, and Republic's position is at least "arguably justified," Counts I through III must be decided within the exclusive arbitration jurisdiction of the System Board.

>  **2.**    **Plaintiffs' Allegations Regarding the Pathway Program Pre-Hire Employment Incentive Agreement Raise Minor Disputes**

Plaintiffs also allege that by offering the Pathway Program Pre-Hire Agreement, Republic and Cape Air interfered with Plaintiffs' representation rights (Count I), failed to negotiate or otherwise deal with IBT (Count II), and improperly altered the parties' status quo under the Cape Air-IBT CBA (Count III).  Like the allegations against Republic addressed above regarding the Republic Pre-Hire Agreement, these claims raise minor disputes subject to the exclusive jurisdiction of the System Board because the allegations implicate the provisions of the Cape Air-IBT CBA and Republic-IBT CBA.

The Pathway Program Pre-Hire Agreement is permitted by both the Republic-IBT CBA and the Cape Air-IBT CBA.  As explained above, Article 3.O. of the Republic-IBT CBA expressly provides Republic with broad discretion to offer pre-hire employment incentives, including the Pathway Program Pre-Hire Agreement.  *See supra* 15-17.  Similarly, Section 1.J of the Cape Air-IBT CBA provides Cape Air with "the sole and exclusive right . . . to exercise all rights or functions of management except to the extent that such rights of management are limited by this Agreement and so long as the exercise of such rights does not conflict with the terms of this Agreement."  (Markham Decl., Ex. A § 1.J at 11.)  That provision is broad on its face, granting Cape Air wide discretion on, among other things, offering employment incentives and the specific terms to govern any such incentives where they are not otherwise limited.  (*Id.*)  Plaintiffs fails to identify any provision of the Cape Air-IBT CBA that, in fact, limits Cape Air's management rights to enter into the Pathway Program Pre-Hire Agreement.  The Pathway

Program Pre-Hire Agreement is thus "arguably justified" by the express terms of the Republic-IBT CBA and the Cape Air-IBT CBA.

For the same reasons described above with respect to the Republic Pre-Hire Agreement, *see supra* 17-18, Plaintiffs' allegations that the Pathway Program Pre-Hire Agreement conflicts with the Republic-IBT CBA do not alter this conclusion.  On the face of the Pathway Program Pre-Hire Agreement, the terms about which Plaintiffs complain affect the pilot candidate's eligibility with respect to the incentive (which is permitted under Article 3.O.3), they do not result in discipline or discharge.  Moreover, the Pathway Program Pre-Hire Agreement remains "arguably justified" by the terms of the Republic-IBT CBA, which expressly provides that provisions in the CBA that Plaintiffs allege are violated are waivable under the plain language of the CBA.  (Pulley Decl., Ex. A, Art. 6.K.8. at 6-26.)  As with the Republic Pre-Hire Agreement, Plaintiffs' allegations with respect to the Pathway Program Pre-Hire Agreement confirm that the dispute is one of interpretation and application of contract terms, which must be resolved by the System Board.

Plaintiffs' allegations similarly fail with respect to the Cape Air-IBT CBA.  As explained above, the Cape Air-IBT CBA includes a broad management rights clause providing Cape Air wide discretion to offer employment incentives, and Plaintiffs do not plausibly allege how the Pathway Program Pre-Hire Agreement "irrevocably conflict[s]" with the Cape Air-IBT CBA in light of that broad management right.  (*See generally* FAC Ex. 1 (ECF No. 20-1).)  For example, while the Pathway Program Pre-Hire Agreement provides that, in order to obtain the maximum incentive payment amount, pilots would need to "pick up incremental shifts above and beyond a standard line assignment," that provision is permitted by the Cape Air-IBT CBA, which expressly reserves broad rights to Cape Air to both manage and direct its operations absent a

conflict with the terms of the agreement.  (Markham Decl., Ex. A § 1.J at 11.)  Plaintiffs do not

identify any provision of the Cape Air-IBT CBA that prohibits pilots from picking up additional

flying beyond a standard line assignment.  Pursuant to the terms of the Pathway Program Pre-

Hire Agreement, a pilot who chooses to pick up such additional shifts is eligible to receive the

highest amount of the incentive payment but they are not required to do so.[8]  (FAC Ex. 1 at 1-3

¶¶ I., III. (ECF No. 20-1).)  Any dispute as to the meaning of the broad management rights or

other provisions of the Cape Air-IBT CBA is subject to the exclusive jurisdiction of the System

Board.

    As with the Republic Pre-Hire Agreement, Plaintiffs now assert in their FAC that none of

the provisions of the Pathway Program Pre-Hire Agreement that allegedly conflict with the

CBAs can be waived or have been waived by pilots under past practice.  (FAC ¶ 40 (citing *id.* ¶

39).)  Plaintiffs ignore the plain language of the CBAs—including Article 6.K.8. of the Republic-

IBT CBA that *expressly provides* that the provisions in the CBA that Plaintiffs allege are

violated are waivable provisions—which arguably justifies the Carriers' decision to implement

the Pathway Program Pre-Hire Agreement.  (Pulley Decl., Ex. A, Art. 6.K.8. at 6-26.)  Plaintiffs

further ignore the principle that a carrier does not waive rights reserved to it in a CBA simply

---

[8] Plaintiffs also allege that Pathway Program Pre-Hire Agreement designates a pilot as "at will," thereby evading the disciplinary just cause and grievance provisions of the contract."  (FAC ¶ 39(i).)  But that allegation is a red herring.  The agreement uses the term "at will" to mean a voluntary commitment by the pilot candidate to the program—it is not a reference to any right of management to supersede the just cause requirement in the parties' CBA, and Plaintiffs make no allegation that it has ever been applied in that manner.  (FAC Ex. 1 at 3 ¶ IV. (ECF No. 20-1) (explaining that Republic "has invested time, resources, and money . . . in return for this three (3) year at-will commitment" by the pilot); *see also* Pulley Decl., Ex. D at 2 ("For example, the at-will reference, of course, was never intended to alter the just cause standard in the CBA but instead was referring to the optional nature of the candidate electing to enter into the agreement.")

because it has not exercised those rights previously.

Plaintiffs also assert that the Pathway Program Pre-Hire Agreement includes provisions on which the CBAs are silent and therefore the agreement is impermissible.  (FAC ¶¶ 26, 28, 33-34, 39(d).)  As demonstrated above with regard to the Republic Pre-Hire Agreement, allegations of contractual silence only show that the pre-hire agreements *do not contradict* any provisions of the CBA.[9]  *See supra* 18-19.  The same point applies here with respect to the Pathway Program Pre-Hire Agreement.  And, as noted above, to the extent the meaning of this alleged silence raises contract interpretation issues, they must be resolved by the System Board.  *Id.*  What matters here, for the purpose of determining the Court's jurisdiction, is that Republic and Cape Air's actions are justified—or at the very least "arguably justified"—by the plain language of Article 3.O. of the Republic-IBT CBA and Section 1.J of the Cape Air-IBT CBA, as well as the implied terms of those CBAs.  *Conrail*, 491 U.S. at 306-07.

### C.   Count IV Must Be Dismissed Along With The Minor Dispute Claims In Counts I Through III

In Count IV, Plaintiffs purport to raise a new state-law claim, alleging that the post-employment non-compete provisions in the pre-hire employment incentive agreements violate the Indiana law of restrictive covenants.  Plaintiffs assert that the Court's jurisdiction over this new claim is proper because the Court can exercise supplemental jurisdiction.  (FAC at 2.)  But Plaintiffs' assertion that jurisdiction is proper is simply wrong as a matter of binding precedent.

The Seventh Circuit has held that the Court cannot exercise supplemental jurisdiction over a state-law claim when the Court has no original jurisdiction over any claim in the

---

[9] Plaintiffs also now allege in their FAC that the Cape Air-IBT CBA does not include a provision allowing Cape Air to pay bonuses.  (FAC ¶ 41.)  But *Republic* is paying the bonuses to as-yet un-hired and unrepresented Cape Air pilots under the pre-hire employment agreements, and Republic is free to do so.  (FAC Ex. 1 at 2-3 ¶¶ I., III. (ECF No. 20-1).)

complaint.  *See, e.g.*, *Jackson v. Pitney Bowes, Inc.*, 753 F. App'x 413, 414 (7th Cir. 2019) ("A district court has no discretion to retain supplemental state-law claims when no basis for original federal jurisdiction exists."); *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 617 (7th Cir. 2018) ("By its plain terms, [28 U.S.C.] § 1367(a) 'makes clear that supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it.'").  As the Seventh Circuit has explained, "[i]f the federal claim is dismissed for lack of subject matter jurisdiction, a district court has no discretion to retain the supplemental claims for adjudication. The dismissal means that there never was a valid claim within the court's original jurisdiction to which the state claims may be supplemental."  *Rivera*, 913 F.3d at 618 (citing 16 James Wm. Moore, Moore's Federal Practice § 106.66(1) (3d ed. 2018)).  Accordingly, courts must dismiss such state-law claims without prejudice.  *Id.*

Here, Count IV is not properly before the Court.  As discussed above, Counts I through III raise minor disputes and are thus subject to the exclusive jurisdiction of the System Board. *See supra* 12-23.  The Court has no original jurisdiction over Plaintiffs' claims in Counts I through III, and as a result, the Court cannot exercise supplemental jurisdiction over Plaintiffs' new state-law claim in Count IV.  *Jackson*, 753 F. App'x at 414; *Rivera*, 913 F.3d at 618.  The Court's exercise of supplemental jurisdiction over this claim would exceed the scope of the Court's Article III power, and is thus improper.  *Rivera*, 913 F.3d at 618.

## II.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER COUNTS I THROUGH III AGAINST REPUBLIC AIRWAYS HOLDINGS INC. AND COUNTS I & II AS TO THE CARRIERS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  The court "may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint,

documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Here, all Counts of the FAC fail to state a claim against Republic Airways Holdings Inc. because it is not a "carrier by air," and, as a result, all claims against it should be dismissed pursuant to Rule 12(b)(6). *See Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.*, 609 F.3d 338, 344 (4th Cir. 2010). Moreover, even if jurisdiction were proper here, which it is not, Counts I and II against the Carriers are supported by no more than vague and conclusory allegations, and should therefore be dismissed pursuant to Rule 12(b)(6).

### A. Plaintiffs Have Failed To State A Claim Under Counts I Through III Against Republic Airways Holdings Inc.

Plaintiffs have asserted Counts I through III of the FAC against the parent company, Republic Airways Holdings Inc., which wholly owns Republic, as well as approximately 40% of Cape Air through a wholly-owned subsidiary. (*See generally* FAC.) However, Republic Airways Holdings Inc. is not a "carrier by air," and thus, is not subject to the requirements of the RLA. *See U.S. Airways Grp.*, 609 F.3d at 344. Therefore, the FAC fails to state a claim against Republic Airways Holdings Inc. and should be dismissed pursuant to Rule 12(b)(6).[10]

### B. Plaintiffs Have Failed To State A Claim Under Count I

Claims of interference with organizing rights under Sections 2, Third and Fourth of the RLA "address[] primarily the *precertification* rights and freedoms of unorganized employees." *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 440 (1989) (emphasis added). This is because, after a union has been certified, employees have "an arbitral remedy" available. *Renneisen v. Am. Airlines, Inc.*, 990 F.2d 918, 923 (7th Cir. 1993). And as

---

[10] To the extent that the Court finds that the RLA does apply to Republic Airways Holdings Inc., then Defendants' other arguments for dismissal herein apply equally to Republic Airways Holdings Inc.

the Seventh Circuit has explained, "in those disputes in which the RLA's extra-judicial dispute-resolution mechanisms are capable of adequately protecting the rights of the parties, federal courts may not interfere." *Id.* (quotation and alterations omitted).

After a union has been certified, courts have required plaintiffs to show "anti-union animus," or that the RLA's "extrajudicial dispute-resolution framework is . . . either unavailable . . . or ineffective," before intervening in labor disputes under Section 2, Third and Fourth. *See Atchison*, 847 F.2d at 411 (citations omitted); *Dempsey v. Atchison, Topeka & Santa Fe Ry. Co.*, 16 F.3d 832, 841-42 (7th Cir. 1994); *Belcastro v. United Airlines, Inc.*, 2021 WL 1172242, at *5-6 (N.D. Ill. Mar. 29, 2021); *accord Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914, 917-19 (7th Cir. 1974) ("The last sentence allegedly evidences the *anti-union motivation* of the discharge." (emphasis added)).  "Under these circumstances, the courts have intervened only in the unusual case where the plaintiff can show that the employer's actions strike a fundamental blow to union or employer activity and the collective bargaining process itself." *Carr v. Chi., Cent. & Pac. R.R.*, 853 F. Supp. 282, 288 (N.D. Ill. 1994) (internal quotation marks omitted).

Even after amending their Complaint, Plaintiffs make no allegation that the pre-hire employment incentives are in any way motivated by "anti-union animus"—nor could they, given that the agreements are plainly rooted in Article 3.O. of the Republic-IBT CBA and Section 1.J of the Cape Air-IBT CBA, language that the Carriers negotiated for and to which Plaintiffs agreed.  While the FAC asserts that the pre-hire employment agreements are "undermining the bargaining power of Teamsters," such conclusory allegations of undermining the union are not sufficient to state a claim for relief here.  *See Atchison*, 847 F.2d at 411 n.5; *Ass'n of Flight Attendants-CWA, AFL-CIO v. United Airlines, Inc.*, 583 F. Supp. 3d 162, 172 (D.D.C. 2022) (finding union's conclusory allegations that airline's actions showed anti-union animus failed to

satisfy union's burden to "show anti-union animus was a substantial or motivating factor in the defendant's actions") (quotation omitted).  Moreover, Plaintiffs also do not, and cannot, allege that the RLA's dispute resolution framework is unavailable or ineffective here.  Given the absence of any allegation or reasonable inference of anti-union motivation behind the pre-hire employment incentive agreements, Plaintiffs fail to state a viable claim under Count I.

### C.    Plaintiffs Have Failed To State A Claim Under Count II

Count II likewise fails because Plaintiffs assert no factual allegations about the bargaining process that could plausibly support this claim.  Claims against a carrier under Section 2, Ninth for failure to "treat" require allegations that a carrier failed to recognize and/or deal with the NMB-certified union for collective bargaining purposes with respect to rates of pay, rules, and working conditions of the craft or class.  *See, e.g.*, *Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Alitalia Airlines*, 600 F. Supp. 268, 273-74, 276 (S.D.N.Y 1984).

The Supreme Court has held that Section 2, Ninth creates a duty of a carrier to "treat" with the representative of a craft or class of its employees over rates of pay, rules, and working conditions, which arises upon certification of the representative by the NMB.  *See, e.g.*, *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 548 (1937).  But the Supreme Court has also held that making individual agreements with employees governed by a CBA is not prohibited as long as those agreements do not conflict with the CBA.  *See J.I. Case Co. v. N.L.R.B.*, 321 U.S. 332, 339 (1944) ("We know of nothing to prevent the employee's, because he is an employee, making any contract provided it is not inconsistent with a collective agreement or does not amount to or result from or is not part of an unfair labor practice.").  Applying that principle to the RLA, the Supreme Court confirmed that the RLA does not preclude a carrier from entering into agreements with individual employees, but that individual agreements cannot

27

supersede the CBA.  *See Ord. of R.R. Telegraphers*, 321 U.S. at 347.  Thus, resolution of Count

II requires interpretation of the Republic-IBT CBA and Cape Air-IBT CBA to determine if those

agreements allow for the Carriers' pre-hire employment incentives—which, as explained above,

the express CBA provisions clearly do.

Here, Plaintiffs allege only in conclusory terms that the pre-hire employment incentive

agreements offered by Republic and Republic/Cape Air violate Section 2, Ninth.  Plaintiffs make

no factual allegations that the Carriers failed to recognize and/or deal with IBT that could

plausibly support this claim—nor can they.  Indeed, just the opposite is true based on Republic's

express right to enter into these agreements under Article 3.O. of the Republic-IBT CBA, and

Cape Air's similar right under Section 1.J of the Cape Air-IBT CBA, both of which the Plaintiffs

ignore in this claim.  These provisions in the CBAs, as well as the expansion of rights between

Article 3.O. in the previous and current Republic-IBT CBA, demonstrate that the Carriers in fact

negotiated with IBT over this right.  Plaintiffs thus fail to state a viable claim under Count II.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' FAC in its entirety with prejudice.


Dated: August 17, 2023                       Respectfully submitted,


By: /s/ Robert A. Siegel
Robert A. Siegel (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street 18th Floor
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: rsiegel@omm.com


Aparna B. Joshi (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 I Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300

28

Facsimile: (202) 383-5414
Email: ajoshi@omm.com

David J. Carr  (Atty. No. 4241-49)
Paul C. Sweeney (Atty. No. 20392-29)
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282-0002
Telephone: (317) 236-2100
Fax: (317) 236-2219
E-mail: david.carr@icemiller.com
E-mail:  paul.sweeney@icemiller.com

*Attorneys for Defendants*

29