# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **INTERNATIONAL BROTHERHOOD OF TEAMSTERS, TEAMSTERS LOCAL UNION NO. 357 and AIRLINE PROFESSIONALS ASSOCIATION TEAMSTER LOCAL UNION NO. 1224,** ) ) ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **v.** ) | **Civil Action No.: 1:23-cv-995-RLY-MG** |
| ) | |
| **REPUBLIC AIRWAYS, INC., REPUBLIC AIRWAYS HOLDINGS, INC. AND HYANNIS AIR SERVICE** INC., ) ) ) ) | |
| **Defendants.** ) ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

### UNDER FED. R. CIV. P. 12(b)(1) and 12(b)(6)

# Table of Contents

TABLE OF AUTHORITIES ..................................................... iv

SUMMARY OF ARGUMENT ................................................. 1

FACTUAL BACKGROUND ................................................... 3

   1. The Parties' Collective Bargaining History. ..................... 3

   2. Hyannis Air has acknowledged it has no right to unilaterally implement bonuses for its pilots ................................................................ 4

   3. Republic and Hyannis Air require new hire pilots to enter the challenged individual agreements as a condition of being hired ................... 4

ARGUMENT .................................................................... 7

I.   Defendants assert a facial challenge to the adequacy of the allegations in the First Amended Complaint to establish this Court's jurisdiction; they do not contest the factual allegations in the FAC. ........................................................................ 7

II.  The federal courts have exclusive jurisdiction to enforce the "status quo" requirements of the Railway Labor Act, including the parties' duty to maintain that status quo of actual, objective working conditions, and have jurisdiction, rather than a system board of adjustment, to determine what constitutes the status quo between the parties. .............................. 8

III. The Amended Complaint sufficiently alleges that the parties' status quo at Hyannis Air and Republic provides that the carriers may not implement the challenged Pathway individual employment agreements with new hire pilots. ....................................... 13

   A.   The Hyannis Air-IBT pilot CBA contains no provision authorizing the carrier to pay bonuses to pilots and Hyannis Air has admitted it may not do so absent the Union's agreement. ............................................................... 13

   B. ...... The plain and unambiguous language of the IBT-Republic contract does not authorize Republic to enter agreements with employees of Hyannis Air .............................. 15

IV. Republic is not authorized to enter the challenged individual employment agreements with new hire pilots at Republic that offer captain upgrade bonuses and retention bonuses to those new employees since the plain language of Articles 3.O.3 and 3.O.4 exclude new hire pilots from coverage under the provisions. ...................................... 17

V.  The First Amended Complaint sufficiently alleges that the challenged individual agreements conflict with terms of the pilots CBAs at Hyannis Air and Republic and therefore violate the Railway Labor Act. ................................................. 19

VI. Defendants' cannot support the challenged agreements based on the silence of their pilot CBAs. ....................................................................... 24

VII.    Sections 2, First, Fourth and Seventh of the Railway Labor Act apply to agents of carriers; Republic Airways Holdings Inc. is a proper defendant to Counts I and III since the FAC alleges it is the agent of Republic Airways for purposes of carrying out its duties under the RLA and is expressly bound by the Republic Pilot collective bargaining agreement. ....... 27

VIII.   Since defendants' Rule 12(b)(1) motion should be denied, their motion to dismiss under Rule 12(b)(6) as to Counts I and II should also be denied ........................................................ 28

CONCLUSION ..................................................................................................................... 31

## TABLE OF AUTHORITIES

**Cases**

*Air Cargo, Inc. v. Teamsters Local 851,*
  733 F.2d 241 (2d Cir. 1984)............................................................................. 10, 11
*Allision v. Union Hosp. Inc.*, 883 N.E. 2d 113, 123 (Ind. Ct. App. 2008)................... 18
*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009)........... 8
*Baker v. Amsted Industries, Inc.*, 656 F.2d 1245, 1248-49 (7th Cir. 1981)................. 29
*Bhd. of Locomotive Eng'rs & Trainmen (Gen. Comm. of Adjustment, Ctr. Region)*
  *v. Union Pac. R.R. Co.*, 879 F.3d 754, 760 (7th Cir. 2017).................................. 29,30
*Bhd. of Railway, Airlines & Steamship Clerks v. Atchison, Topeka & Santa Fe Ry. Co.*,
  847 F.2d 403, 406 (7th Cir. 1988)............................................................................ 11
*Bowes-Northern v. Rest. Brands Int'l.*, 2023 U.S. Dist. Lexis 2484 (N.D. Ind. 2023) ........ 8
*BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers-Transp. Div.*,
  973 F.3d 326 (5th Cir. 2020)....................................................................................... 9
*Burlington Northern R.R. Co. v. United Transp. Union,*
  862 F.2d 1266 (7th Cir. 1988)......................................................................... 9,11,14,24
*Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n,*
  491 U.S. 299 (1989)....................................................................................... 9,10,11
*Farmer v. Levenson, 79 Fed. Appx. 918, 921 (7th Cir. 2003)*................................... 8
*Goldberg v. 401 North Wabash Venture LLC*, 755 F.3d 456 (7th Cir. 2014) ............... 18
*Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100 (2d Cir. 1991) ......................... 24
*Int'l Bhd. of Teamsters v. Chautauqua Airlines,*
  186 F. Supp.2d 901 (S.D. Ind. 2001) ...................................................... 12, 21, 22,23
*Int'l Bhd. of Teamsters v. Frontier Airlines, Inc.*,
  2012 U.S. Dist. LEXIS 43312 (D. Colo. 2012) ....................................................... 30
*Int'l Bhd. of Teamsters (Airline Division) v. Texas International Airlines, Inc.*,
  717 F.2d 157 (5th Cir. 1983)..................................................................................... 9
*International Longshoremen's Association, Local 158 v. Toledo Lakefront Dock Co.*,
  1977 WL 1809 (N.D. Ohio Dec. 16, 1977)................................................................ 9
*Kaplan v. First Options*, 143 F.3d 807 (3d Cir. 1998).............................................. 18
*Order of R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 64 S. Ct. 582, 88 L.
  Ed. 788 (1944)..................................................................................................... 29
*Shore Line Ry. Co. v. United Transp. Union,*
  396 U.S. 142 (1969) ...................................................................................... 9,10
*Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir 2014)................................................... 8
*Teamsters Local Union No. 357 v. Republic Airline Inc*.,
  2015 US Dist. LEXIS 118274  (S.D. Ind 2015)........................................................... 8
*United Mine Workers of Am. v. Rag American Coal Co.*, 392 F.3d 1233 (10th Cir. 2004) .......... 18

**Statutes**

45 U.S.C. 152, First ............................................................................................... 27
45 U.S.C. §§ 152, Fourth ........................................................................................ 27

iv

45 U.S.C. §§ 152, Seventh ................................................................................................ 27

45 U.S.C. § 152, Ninth ................................................................................................ 28,29

## SUMMARY OF ARGUMENT

Defendants assert a "facial challenge" to the sufficiency of the First Amended Complaint's ("FAC") allegations to establish the jurisdiction of this Court.  They also move to dismiss the FAC under Fed. R. Civ. P. 12(b)(6), essentially on the basis that they are correct that plaintiffs' claims present a "minor dispute" subject to arbitration before the system boards of adjustment established under the parties' respective pilot collective bargaining agreements.  In so moving to dismiss, defendants do not dispute the factual allegations of the First Amended Complaint and present no evidence in support of their motion to contest plaintiffs'[1] factual allegations.

As shown below, defendants' motions to dismiss should be denied because the First Amended Complaint contains sufficient allegations to establish that this Court has jurisdiction over plaintiffs' claims against defendants' direct dealing with pilots that have no arguable justification under the parties' collective bargaining agreements ("CBAs").  There is no provision of the IBT-Hyannis Air pilot CBA mentioning hiring bonuses for pilots or that an arbitrator could interpret to permit Hyannis Air to enter individual contracts with pilots to pay bonuses.  As the FAC alleges, Hyannis Air has already conceded to IBT in prior bargaining that it has no authority under the parties' CBA to pay bonuses to pilots absent the union's agreement.  Defendants do not contest this fact.  Given the complete absence of language in the Hyannis Air pilot CBA addressing bonuses paid to pilots and the prior history of the parties' dealing that Hyannis Air concedes it has no authority to unilaterally pay such bonuses to pilots, the Hyannis Air-IBT pilot agreement cannot be interpreted to permit the challenged individual employment

---

[1] Plaintiffs International Brotherhood of Teamsters, Airline Division, Teamsters Local Union No. 357 and Airline Professionals Association, Teamsters Local Union No. 1224 will be referred to as "plaintiffs", "IBT" or "Teamsters."

agreements between Hyannis Air, Republic Airways and individual Hyannis Air pilots, which also conflict with numerous provisions of that CBA. The First Amended Complaint sufficiently alleges that the dispute between IBT and Hyannis Air is a "major dispute" subject to this Court's jurisdiction.

The FAC also sufficiently alleges that the dispute between Republic Airways and IBT over that air carrier entering the agreements with Hyannis Air and individual pilots employed by Hyannis Air, and the individual agreements Republic has entered with pilots it hires directly constitute major disputes. As alleged in the FAC, and shown below, the language of Article 3.O of the IBT-Republic pilot agreement, relied on by the airline to assert a contract justification for Republic entering the "Pathway" agreement with Hyannis Air and individual Hyannis Air pilots, plainly excludes Hyannis Air pilots from its coverage. No arbitrator could interpret Article 3.O to apply to pilots employed by Hyannis Air. The FAC also sufficiently alleges that the individual agreement Republic Airways has entered with pilots it directly hires violates the plain language of Article 3.O by paying captain upgrade bonuses and retention bonuses to new hire pilots who are not covered by the provisions of Article 3.O permitting such bonuses. The FAC further sufficiently alleges that the challenged agreements impermissibly conflict with the Republic pilot CBA, including the provisions that Republic will not apply any agreement to its pilots' rates of pay rules or working conditions other than the collective bargaining agreement. Plaintiffs sufficiently allege that defendants' asserted contract justifications are insubstantial and their agreements cannot be interpreted to permit the challenged agreements. Defendants' Rule 12(b)(1) motion should be denied.

Since Defendants' Rule 12(b)(1) motion fails, their companion motion to dismiss under Rule 12(b)(6) also fails. The FAC sufficiently alleges that defendants' direct dealing with pilots

deprives them of rights under Sections 2, Third and Fourth of the RLA and that the parties' system boards of adjustment cannot address those violations.  It also alleges a plausible claim that defendant airlines' direct dealing with pilots through individual agreements violates their duty to deal only with IBT, the certified representative of the pilots of Hyannis Air and Republic Airways, under Section 2, Ninth of the Act.  Finally, while plaintiffs agree defendant Republic Airways Holdings is not properly a defendant to Count II of the First Amended Complaint as it is not an air carrier, it is properly a defendant to Count I of FAC under Sections 2, Third and Fourth of the RLA and Count III under Sections 2, First and Seventh, since Sections 2, First, Fourth and Seventh apply to "agents" of an air carrier. The FAC alleges Holdings acts as agent of Republic Airways in carrying out the airline's duties under the RLA.  Defendants do not contest that allegation.  Accordingly, defendants' Rule 12(b)(6) motion should be denied except as to defendant Holdings under Count II of the FAC.

## FACTUAL BACKGROUND

1.  The Parties' Collective Bargaining History.

Hyannis Air ("Hyannis") and Republic Airways ("Republic") are airlines.  FAC ¶¶ 8, 10. Hyannis employs approximately 167 pilots, who are represented by IBT for purposes of collective bargaining. FAC ¶¶ 5, 17.  It operates as Cape Air.  Hyannis and IBT have entered three collective bargaining agreements in 2012, 2015 and 2020.  *Id.* ¶ 18.

Republic employs approximately 1,900 pilots, who are also represented by IBT.  FAC ¶¶, 5, 13.  IBT and Republic have entered six collective bargaining agreements since 1994, with the latest entered in 2022.  *Id.* ¶ 14.

2. Hyannis Air has acknowledged it has no right to unilaterally implement bonuses for its pilots

The pilot collective bargaining agreement between Hyannis Air and IBT does not contain any provision permitting the carrier to pay bonuses to pilots. FAC ¶ 41.  Hyannis previously negotiated with Teamsters the right to pay retention bonuses to Hyannis Air pilots in an effort to reduce attrition from the airline.  FAC ¶ 42.  In that negotiation, Hyannis Air admitted to Teamsters that it required the union's agreement in order to pay bonuses to its pilots and that such bonuses were not otherwise authorized by the parties' collective bargaining agreement. *Id.*

3. Republic and Hyannis Air require new hire pilots to enter the challenged individual agreements as a condition of being hired

In May 2023, plaintiffs learned that Hyannis Air and Republic were requiring pilots who they offer employment to enter individual agreements with the carriers and were threatened with job loss if they refused. FAC, ¶ 19.  Hyannis Air and Republic entered a "Pathway" agreement with pilots who Hyannis Air hired as first officers offering these Hyannis pilots signing bonuses, stipends, the benefit of a captain upgrade incentive program under the Republic pilot CBA and a $100,000 captain upgrade bonus at Republic.  FAC, Exh. 1, p. 1.  Republic also was requiring pilots it has hired directly to sign individual employment agreements offering bonuses of $100,000 paid at identified intervals in the agreement as well as the benefit of a captain upgrade incentive program under the Republic pilot CBA.  FAC ¶44, Exhs. 2, 3.  The agreements also impose unreasonable terms on the pilots.  FAC ¶ 20.

The Hyannis-Republic Pathway individual agreement requires the pilot to remain employed at Hyannis Air until they accumulate 720 hour of captain flying and then resign from Hyannis to then be hired by Republic. FAC ¶¶ 21, 22.  The pilots then must remain employed by Republic up to five years.  FAC ¶ 24.  Neither the Hyannis pilot CBA nor the Republic pilot

CBA has a provision requiring a minimum period of employment for pilots. FAC ¶ 26.  The Hyannis Pathway agreement's requirement that covered Hyannis pilots resign their employment at Hyannis results in them forfeiting all accrued benefits and entitlements at Hyannis. FAC ¶ 39.g.  While Republic has entered the Pathway agreement with Hyannis and individual Hyannis pilots, the Republic pilot contract does not apply to Hyannis pilots and has no provision permitting the airline to offer new hire bonuses to Hyannis pilots. FAC ¶ 58.

The agreement Republic requires its new hire pilots to sign mandates those pilots remain employed up to five years at Republic or suffer penalties.  FAC ¶ 24.  The agreement also requires pilots to accept the first opportunity to upgrade to captain.  FAC, Exh. 2, p. 2, Exh. 3, p. 1.  During bargaining between Republic and IBT in 2022, Republic proposed that it would be able to force pilots to accept captain upgrades, but IBT rejected the proposal and it was abandoned.  FAC ¶ 45. The Republic pilot contract has no provision permitting the airline to force pilots to accept a captain upgrade or to offer captain upgrade bonuses to persons other than existing Republic First Officers who are eligible for captain upgrade. FAC ¶ 59, 60.

Both the Hyannis Pathway agreement and Republic individual employment agreement conflict with numerous terms of the collective bargaining agreements the airlines have entered with Teamsters.  FAC ¶ 39.  None of these provisions may be waived by individual pilots for the duration of their employment at Hyannis or Republic.  FAC ¶ 40.  There has never been a practice at either carrier that pilots may prospectively waive protections of the collective bargaining agreement for the duration of their employment. *Id.*

The agreements also impose post-employment conditions and penalties on the pilots, including a noncompete period that prevents a pilot from working at another airline and financial penalties of $250,000 for Hyannis pilots and $100,000 for Republic pilots in addition to

forfeiting any bonuses received under the agreements. FAC ¶¶ 30-31, 33.  Republic never proposed in bargaining in 2022 that it would have the contract right to impose post-employment restrictions on pilots.  FAC ¶ 46.  Nor did Republic propose that it would be able to require pilots to remain employed at Republic for any period of time.  FAC ¶ 47. . The Republic pilot contract has no provision permitting the airline to impose post-employment restrictions on pilots. FAC ¶ 61.

Hyannis and Republic make false assertions in the individual agreements to support these post-employment restrictions. FAC ¶ 62.  Republic does not provide pilots with trade secrets or confidential proprietary information.  FAC ¶ 37.  Republic does not compete with any airline on routes offered to the flying public, as asserted in support of the noncompete provision, because it only flies routes assigned to it by its mainline partners and does not sell tickets to the flying public. FAC ¶ 12 The noncompete provisions of these agreements do not support any legitimate business interest of the airlines, but are simply intended to prevent the pilots from leaving employment by defendants. FAC ¶¶ 35, 63.

Defendants are using the artifice of individual employment agreements obtained by direct dealing with individual pilots to gain rights not gained in collective bargaining to force pilots to accept captain upgrade, to impose post-employment restrictions on pilots and force pilots to remain employed at Republic, rather than leaving for employment at other airlines. FAC ¶ 48-50. These individual agreements are intended to evade, and have the effect of evading, numerous provisions of the parties' pilot collective bargaining agreements.  FAC ¶ 51.

IBT is not a party to the individual agreements the airlines are forcing pilots to sign and was not involved in negotiating the agreements.  FAC ¶ 64, 65.  IBT does not administer the individual agreements on behalf of the affected employees.  *Id.* ¶ 66.

Republic has told Teamsters Local 357 representatives that it communicates with its airline partners, American Airlines, Delta Airlines and United Air Lines about restrictions in the individual pilots contracts.  FAC ¶ 67.  It has discussed with its airline partners amending its noncompete agreement to allow pilots to be employed by its mainline partners as the only exception to the noncompete restriction imposed on pilots.  FAC ¶ 68.  Republic's purpose is to make its airline partners beneficiaries of the employment restrictions placed on the affected pilots. FAC ¶ 69.

## ARGUMENT

I.    **Defendants assert a facial challenge to the adequacy of the allegations in the First Amended Complaint to establish this Court's jurisdiction; they do not contest the factual allegations in the FAC.**

Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1) asserts a "facial challenge" to the sufficiency of the allegations in the First Amended Complaint to establish this Court's subject matter jurisdiction.  The motion is unsupported by evidence outside the complaint apart from submitting the two "placeholder" grievances filed by the local unions under the Republic and Hyannis pilot CBAs, which on their face state they were submitted to toll contractual time limits and were without prejudice to the unions' position in this case that defendants' challenged actions constitute "major disputes" under the RLA.  Pulley Decl., Exh. C; Markham Decl. Exh. B.  Defendants' motion fails to challenge the truthfulness of Plaintiffs' factual allegations; instead asserting that "Plaintiffs' allegations under the RLA (Counts I-III)…all plainly implicate and are governed by the terms of the applicable CBAs."  Doc. 25, p. 2.[2]

---

[2] By contrast, in litigation between Teamsters Local 357 and Republic Airways in 2015, the carrier mounted a "factual challenge" to subject matter jurisdiction over the Local's claims against Republic's unilateral implementation of an overtime premium for pilots and a new hire

A facial challenge to a complaint under Rule 12(b)(1), "requires only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).  The court reviews the motion under the same plausibility standard applicable to a Rule 12(b)(6) motion and accepts as true all material allegations of the complaint in favor of the complaining party.  *Silha v. ACT, Inc.,* 807 F.3d 169, 173-74  (7th Cir 2014).  Plaintiffs' First Amended Complaint alleges ample facts that the status quo between the carriers and their pilots does not permit unilateral implementation of the individual employment agreements, which deny pilots rights under the collective bargaining agreements, the representation of IBT as their certified representative, and impose onerous post-employment restrictions with the purpose to prevent the affected pilots from leaving defendants' employment.[3]  Accordingly, the First Amended Complaint alleges a sufficient basis for this Court's jurisdiction and sufficiently states the asserted claims for relief.

**II.**    **The federal courts have exclusive jurisdiction to enforce the "status quo" requirements of the Railway Labor Act, including the parties' duty to maintain that status quo of actual, objective working conditions, and have jurisdiction, rather than a system board of adjustment, to determine what constitutes the status quo between the parties.**

Defendants' challenged actions present a "major dispute" under the RLA.  Major disputes between an airline and union over an action by the airline arise from the absence or silence of a

---

pilot bonus supported by three declarations and over 200 pages of exhibits.  *Teamsters Local Union No. 357 v. Republic Airline Inc.*, 2015 US Dist. LEXIS 118274, *3 (S.D. Ind 2015).

[3] Defendants' Rule 12(b)(1) motion also improperly seeks dismissal with prejudice of the FAC. The Seventh Circuit has held that only dismissal without prejudice is appropriate under Rule 12(b)(1). *Farmer v. Levenson*, 79 Fed. Appx. 918, 921 (7th Cir. 2003); *Bowes-Northern v. Rest. Brands Int'l.,* 2023 U.S. Dist. Lexis 2484, *5 (N.D. Ind. 2023), *citing, Levenson* ("Though Defendant asks for dismissal with prejudice, a dismissal for lack of subject matter jurisdiction can only be without prejudice.")

collective bargaining agreement. *Burlington Northern R.R. Co. v. United Transp. Union*, 862 F.2d 1266, 1271 (7th Cir. 1988). Any unilateral alteration or abrogation of an existing collective bargaining agreement during a major dispute is a violation of the status quo under the RLA. *See, e.g., International Brotherhood of Teamsters (Airline Division) v. Texas International Airlines, Inc.*, 717 F.2d 157, 160-61 (5th Cir. 1983)(holding that illegality of unilaterally amending or modifying the terms of a collective bargaining agreement during a "major" dispute is an "unquestioned principle"); *BNSF Ry,* 862 F.2d at 1272 (during pendency of major dispute, parties are obligated to maintain the status and the employer may not implement any contested change). *See also, International Longshoremen's Association, Local 158 v. Toledo Lakefront Dock Co.*, 1977 WL 1809, at *3 (N.D. Ohio Dec. 16, 1977)(" It is clearly within the jurisdiction of the district courts to preserve the status quo by enjoining unilateral attempts by carriers [*11]  to modify existing agreements without compliance with the procedures set forth in 45 U.S.C. § 156").

The RLA establishes procedures for resolution of major disputes, including, but not limited to, negotiation between the parties, mediation before the National Mediation Board, and voluntary interest arbitration. *See, e.g., Conrail v. Railway Labor Execs.,* 491 U.S. 289, 302-03 (1989).  The RLA further imposes on parties a duty to maintain the status quo of rates of pay, rules and working conditions, then in effect, and an employer may not implement any change to those actual, objective working conditions until it has exhausted the Act's major dispute procedures.  *Id.*; *Detroit & Toledo. Shore Line Ry. Co. v. United Transp. Union*, 396 U.S. 142, 143 (1969)("Shore Line")("what must be preserved as the status quo are the actual, objective working conditions out of which the dispute arose, irrespective of whether these conditions are covered in an existing collective agreement.").  Section 6 of the RLA provides that "rates of pay, rules, or working conditions shall not be altered" during the period from the first notice of a proposed change in

agreements up to and through any proceedings before the National Mediation Board. *Id.* Federal courts have the power to enforce the duty to maintain the status quo and enjoin either party from engaging in conduct that violates that duty.

This is in contrast to what are referred to as "minor disputes;" disputes over existing contractual rights, which can be resolved conclusively by interpreting a collective bargaining agreement. *Conrail*, 491 U.S. at 303, 305. "They are instead subject to compulsory arbitration before a board of arbitration referred to as a system board of adjustment made up equally of union and company representatives who serve with a neutral arbitrator as chair. *Id.* at 303-04. "The distinguishing feature of such a case is that the dispute may be ***conclusively resolved*** by interpreting the existing agreement." *Id.* at 305 (emphasis added)

The RLA's status quo requirement is "central to its design. Its immediate effect is to prevent the [u]nion from striking and management from doing anything that would justify a strike." *Shore Line,* 396 U.S. at 150. Because one party may wish to change the status quo without undue delay, the power granted in the RLA to the other party "to preserve the status quo for a prolonged period" encourages the moving party to compromise and reach agreement without interrupting commerce. *Id.*

The federal courts are responsible for enforcing the Act's major dispute procedures, including the status quo. *Air Cargo, Inc. v. Teamsters Local 851*, 733 F.2d 241, 247 (2d Cir. 1984)("Air Cargo, Inc."). The courts therefore have exclusive jurisdiction to determine what constitutes the status quo, rather than a system board of adjustment established by the parties. *Id.* ("while the major dispute procedures of section 6 are being carried out, the district court has exclusive jurisdiction to ensure that the status quo is being maintained. It therefore has exclusive jurisdiction to determine what the status quo is.")

Courts are not bound by a carrier or union's characterization of their dispute.  This Court must determine whether the parties' dispute is major or minor and it has the power under the Railway Labor Act to do so. *Conrail*, 491 U.S. at 306 ("protection of the proper functioning of the statutory scheme requires the court to substitute its characterization for that of the claimant.")  *See also*, *Air Cargo, Inc.,* 733 F.2d at 247. "In a situation in which the party asserting a contractual basis for its claim is "insincere" in so doing, or its "position [is] founded upon . . . insubstantial grounds," the result of honoring that party's characterization would be to undercut "the prohibitions of § 2, Seventh, and § 6 of the Act" against unilateral imposition of new contractual terms." *Id., citing Norfolk & Portsmouth Belt Line R. Co. v. Brotherhood of Railroad Trainmen, Lodge No. 514,* 248 F.2d 34, 43-44, n. 4 (CA4 1957), *cert. denied,* 355 U.S. 914 (1958).  This instruction applies similarly to characterizations of the dispute asserted by a carrier.

In evaluating the character of a dispute under the Railway Labor Act, the court is not limited to the express terms of the parties' contract but may also consider their past practice thereunder. *Bhd. of Railway, Airlines & Steamship Clerks v. Atchison, Topeka & Santa Fe Ry. Co.,* 847 F.2d 403, 406 (7th Cir. 1988).  It may also consider the parties' bargaining history related to the dispute. *Burlington Northern R.R.,* 862 F.2d at 1274 (carrier first negotiated with union and only resorted to its unilateral action after negotiations proved unsuccessful).

The Seventh Circuit Court of Appeals has held that if there is doubt whether a dispute is major or minor, a court should construe it as minor. *Burlington Northern R.R.*, 862 F.2d at 1272. But where the terms of the agreement do not support a carrier's position and it cannot show evidence of an established practice supporting it, the dispute should be considered major.  *Id.* at 1273 ("The relevant collective bargaining agreements here are silent as to trackage rights agreements and any attendant changes. . . .  Burlington has failed to show that the Unions have

established a pattern of mutual assent, understanding or acquiescence as to a trackage rights agreement with a wholly owned Burlington subsidiary. . .  Burlington's argument that it has an implied contractual right to alter unilaterally crew consists is simply too insubstantial to sustain.") *See also, IBT v. Chautauqua Airlines,* 186 F. Supp. 2d 901, 909-911 (S.D. Ind. 2001)(finding airline's unilateral reduction of full-time workweeks for passenger service employees was major dispute when the contract language did not support its claim)[4]

It is for this Court to determine whether the parties' dispute is major.  And at this stage of the proceeding, it need only determine whether the First Amended Complaint sufficiently alleges facts to support a conclusion the parties' dispute is major.  As shown below, the Supreme Court's admonishment against honoring a party's insubstantial contract justification applies aptly to defendants' claims of contract justification for their challenged actions, which ignore that nothing in the IBT-Hyannis Air contract permits the Republic-Hyannis Pathway agreement and the established practice at Hyannis Air is that the carrier  acknowledges it has no authority under its contract to implement bonuses to pilots without the IBT's agreement.  And, in the instance of Republic, defendants' claimed justification ignores the plain and unambiguous language of the IBT-Republic pilot contract which does not permit Republic to pay bonuses to employees of Hyannis Air or to pay upgrade and retention bonuses to its own new hire pilots. And neither agreement can be construed to permit the carriers to adopt individual agreements that conflict with the employees' rights under the contracts or deny them representation by IBT concerning the working conditions covered by the agreements.

---

[4] Chautauqua Airlines was a predecessor and affiliated airline of Defendant Republic Airways.

III.   **The Amended Complaint sufficiently alleges that the parties' status quo at Hyannis Air and Republic provides that the carriers may not implement the challenged Pathway individual employment agreements with new hire pilots.**

   A.   The Hyannis Air-IBT pilot CBA contains no provision authorizing the carrier to pay bonuses to pilots and Hyannis Air has admitted it may not do so absent the Union's agreement

Defendants concede, as they must, that there is no provision in the pilot agreement covering Hyannis Air that expressly permits that airline to enter the Pathway agreement with its new hire pilots and Republic Airways contained in Exhibit 1 to the First Amended Complaint. Instead, defendants claim that the generic "management rights" clause in Section 1.J of that CBA somehow gives Hyannis authority to enter the agreement.  Defendants' Brief at 21; Markham Decl., Exh. A, p. 11. Defendants do not explain why that is the case.  They cite no facts to support their claim that the parties have an established understanding that this Section 1.J has been applied in the past to permit Hyannis Air to enter individual agreements with pilots to pay bonuses.  That provision makes no mention of either bonuses paid to pilots or individual agreements.  And it limits any authority of Hyannis Air under it to actions that do not conflict with terms of the agreement.  Defendants fail to substantively respond to the allegations in the First Amended Complaint that the challenged agreement conflicts with a number of provisions in the Hyannis Air-IBT agreement.  FAC, ¶ 39.[5]  And unquestionably paying stipends and bonuses to an employee to be paid over the duration of the employee's tenure changes the employee's compensation.  Increasing pilot compensation above that provided in the CBA conflicts with the pilot pay rates and other compensation rules established under Section 3 of the Hyannis pilot

---

[5] Defendants rotely assert that plaintiffs' allegations the challenged agreements conflict with numerous provisions of the collective bargaining agreements are conclusory. Defts' Brief, p. 28. They fail to explain why the allegations are conclusory.  The allegations are not conclusory as they identify specific contract rules that the agreements conflict with and how they conflict. *See, e.g.,* FAC, ¶ 39.

collective bargaining agreement, which contains no mention of bonuses or stipends paid to pilots. Markham Decl., Exh. A, pp. 22-32.

Defendants further also ignore and do not respond to the allegations of the FAC that the only time Hyannis pilots have been paid a bonus, that bonus was negotiated over and agreed on by the airline and IBT.  FAC ¶¶ 41-42.  Defendants do not dispute plaintiffs' allegation that in bargaining with IBT over this retention bonus, Hyannis conceded it lacked authority to implement a bonus for pilots absent IBT's agreement.  *Id.*

Hyannis Air hasn't previously asserted the interpretation of Section 1.J in the Hyannis pilot CBA now relied on the avoid this Court's jurisdiction; to the contrary, it has conceded it lacks such authority. Defendants fail to submit any evidence to dispute these allegations, as they could under Rule 12(b)(1), which otherwise must be accepted as true.[6]  Defendants' asserted justification in reliance Section 1.J of the Hyannis Air pilot agreement is insubstantial. *Burlington Northern RR,* 862 F.2d at 1273 (carrier contract justification insubstantial where it lacked express authority in the contract language and failed to show a pattern of union acquiescence to the type of agreement in dispute).

---

[6] Defendants' vague assertion that they "plan to present evidence of past practice that supports the use of pre-hire agreements in arbitration," Defts' Brief, p. 14, n.7, misses the point of the facial challenge standard under Rule 12(b)(1).  They have accepted plaintiffs' allegations as true in their motion and cannot dispute them.  In any event, given that Republic submitted extensive evidence of an alleged past practice to justify their contract interpretation in prior litigation between these parties, defendants do not do so now because no such evidence exists and any claim by them to that effect is knowingly false, as the FAC alleges.

14

B.  The plain and unambiguous language of the IBT-Republic contract does not authorize Republic to enter agreements with employees of Hyannis Air

Defendants assert Article 3.O of the IBT-Republic Agreement authorizes Republic to enter the Hyannis Pathway agreement in an effort to concoct a minor dispute defense.  But they ignore that the plain and unambiguous language of the Republic pilot CBA restricts its application, and therefore the carrier's authority under it including Article 3.O, to only Republic pilots.  The FAC alleges that "The Republic pilot contract has no provision permitting the airline to offer new hire bonuses to Hyannis Air pilots." FAC ¶ 58.  Article 1.C.2 of the Republic Pilot CBA states, "Whenever the words "Pilot(s)", "employee(s)", or "crew member(s)" are used in this Agreement, they designate and refer to only such Pilots as covered by this Agreement." Pulley Decl., Exh. A, p. 1-1. Further, Article 2.190 states, that the term "Pilot" as used in the Agreement is defined as "A Company employee whose name appears on the [Pilot] Seniority List."  *Id.,* p. 2-16. The plain language of Articles 1.C.2 and 2.190 establishes that the Republic pilot CBA applies only to pilots employed by Republic, not Hyannis pilots.  It cannot be interpreted to cover Hyannis pilots.

Article 3.O.1 of the Republic CBA in its plain language also applies only to pilots employed by Republic.  While Article 1.C.2's unambiguous language compels this conclusion, Article 3.O.1 expressly states who may be paid the bonuses, stipend, and/or incentives established under it:

> With respect to signing bonuses, stipends and other new hire incentives, the Company has the discretion to offer, and to increase or decrease, signing bonuses, stipends, and/or incentives in its recruitment efforts of **New Hire Pilots**. The Company has the discretion to determine the terms of the signing bonus, stipend, and/or other incentives **for New Hire Pilots** including but not limited to the timing of payments of such signing bonuses, stipends, and/or incentives.

(Emphasis added)  "New Hire Pilots" is clearly defined in Article 2.174 of the Republic Pilot

CBA as, "A Company employee newly hired as a Pilot and placed on the [Republic Pilot]

Seniority List as of his Date of Hire." Pulley Decl., Exh. A, p. 2-14.  The clear and unambiguous

language of Article 3.O.1, therefore, limits Republic's authority to pay bonuses for recruitment

to persons who it hires as a Republic pilot.  This language excludes persons employed by

Hyannis Air from coverage under Article 3.O.1 and cannot be construed otherwise.

Hyannis pilots are also excluded from coverage under Article 3.O.3, which states that it

applies to "a qualified Pilot."

> The Company, in its discretion, may offer a bonus or financial incentive at
> any time and of any type or form to incentivize a **qualified Pilot** to
> complete Captain qualification training. The Company has the discretion
> to determine the terms of the bonuses, or other incentives **for Pilots**,
> including but not limited to the timing of payments of such bonuses and/or
> incentives.

(Emphasis added)  As Republic has recently conceded to IBT, the term "qualified Pilot" refers to

a Republic first officer who meets Federal Aviation Administration regulatory requirements to

upgrade to a captain position.  Hyannis Air pilots are obviously not "Pilots" employed by

Republic under the contractual definition of Article 2.190.  The "Pathway Agreement" itself

makes this clear in its paragraph V.D "Independent Employment", which disclaims that Republic

is the employer of any pilot at Hyannis Air.  "The Pilot acknowledges and agrees that when he or

she is employed by Cape Air, such employment is independent of Republic and Republic will

not have any liability with respect to such employment." Exh. 1, p. 4.  Despite Hyannis pilots not

being employed by Republic or "qualified Pilots" under Article 3.O.3, the Pathway Agreement

offers the Hyannis pilot a $100,000 captain upgrade bonus at Republic. FAC Exh. 1, p. 1.

Republic's purported contract justification relying on Article 3.O to authorize it to enter

employment agreements with Hyannis pilots, who are plainly excluded from coverage of those

provisions, is obviously insubstantial.  No further analysis of Article 3.O is necessary to determine that Republic's asserted contract justification is refuted by the plain language of the provision.

**IV.     Republic is not authorized to enter the challenged individual employment agreements with new hire pilots at Republic that offer captain upgrade bonuses and retention bonuses to those new employees since the plain language of Articles 3.O.3 and 3.O.4 exclude new hire pilots from coverage under the provisions.**

The individual agreements Republic has entered with its new hire pilots also provides captain upgrade bonuses to the pilots as well as retention bonuses to incentivize the pilots to remain employed with Republic.  FAC, Exh. 2, p. 2 and Exh. 3, p. 2.  In its effort to evade this Court's jurisdiction, Republic asserts that it is authorized to enter such captain upgrade and retention bonus agreements with these new hire pilots by Article 3.O.3 and 3.O.4 of the Republic pilot CBA.  Defts.' Brief, p. 17.  But, as with Republic's unlawful agreement with Hyannis pilots, those provisions clearly exclude Republic new hire pilots from eligibility for these bonuses. FAC ¶ 59.

Article 3.O.3 and 3.O.4 apply only to "Pilots", a contractual term that is differentiated in Article 3.O from "New Hire Pilots" covered under Article 3.O.1.  The terms are separately defined in Article 2 of the Republic pilot CBA.  Article 3.O cannot be interpreted, therefore, to mean that New Hire Pilots under Article 3.O.1 are at the same time also "Pilots" within the meaning of Article 3.O.3 and 3.O.4.  Indeed, Republic has acknowledged that New Hire Pilots are not covered by Articles 3.O.3 and 3.O.4. Its argument in this litigation that Articles 3.O.3 and 3.O.4 can justify the challenged agreements with Republic new hire Pilots is insubstantial for this clear and unambiguous reason. As with the Hyannis pilot Pathway agreement, no further analysis of Article 3.O is necessary to determine that Republic's asserted contract justification is refuted by the plain language of the provision.

17

That Article. 3.O grants Republic "discretion" in exercising the contractual authority set forth in its subsections does not change this analysis. That discretion is not applied to what employees may be paid the bonus, only the "terms" of the bonus; it cannot be invoked to evade the plain language that "New Hire Pilots" are not covered by Articles 3.O.3 and 3.O.4. Further, contractual discretion must be exercised "reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties." *Goldberg v. 401 North Wabash Venture LLC*, 755 F.3d 456, 462 (7th Cir. 2014). This duty is imposed by the covenant of good faith and fair dealing that applies to contracts including collective bargaining agreements. *United Mine Workers of America v. Rag American Coal Co.*, 392 F.3d 1233, 1241 (10th Cir. 2004)(covenant of good faith and fair dealing applies to collective bargaining agreements as with other contracts). Indiana law imposes the covenant on employment contracts as well as contracts that expressly impose such a duty or are ambiguous concerning it. *Allision v. Union Hosp. Inc.*, 883 N.E. 2d 113, 123 (Ind. Ct. App. 2008). A collective bargaining agreement is necessarily an employment contract and so the covenant applies under Indiana law to the Republic Pilot contract. Further, the Republic Pilot CBA recites in its Article 1.B various purposes of the agreement, including "the continuation of employment of Pilots under conditions of reasonable working conditions and proper compensation," and imposes on Republic the obligation to "cooperate fully for the attainment of these mutual beneficial goals." The contract requires Republic to cooperate in administering the parties' collective bargaining agreement to maintain "reasonable" working conditions. "[O]ne purpose of the implied covenant of good faith is to 'check the exercise of a party's discretion under a contract'." *Kaplan v. First Options*, 143 F.3d 807, 818-819 (3d Cir. 1998)(citations omitted). The covenant of good faith and fair dealing requires Republic to exercise its contractual discretion under Article 3.O in a manner consistent

with the parties' collective bargaining agreement and the IBT's expectations under it.  It cannot

exercise contractual discretion in conflict with the express terms of the CBA, such as its

commitments under Articles 1.B, 1.C.1, 1.D.2 by establishing individual agreements in conflict

with the CBA or by entering such agreements with persons who are not eligible under the plain

language of Article 3.O.

Defendants' Rule 12(b)(1) motion should therefore be denied on the bases set forth in

Sections III and IV above as the First Amended Complaint adequately pleads a basis for this

Court's jurisdiction.

**V.  The First Amended Complaint sufficiently alleges that the challenged individual agreements conflict with terms of the pilots CBAs at Hyannis Air and Republic and therefore violate the Railway Labor Act.**

In addition to defendants' contract justification for the challenged agreements being

insubstantial, the individual agreements impermissibly conflict with numerous provisions of the

Teamsters pilot CBAs at Hyannis Air and Republic.  The First Amended Complaint identifies

provisions of the agreements that the individual agreements contradict.  *See, e.g.,* FAC, ¶¶ 25-28,

39.  At Hyannis Air, among other provisions cited in paragraph 39 of the FAC, the Pathway

agreement requires the affected Hyannis Air pilot to abandon his or her employment at Hyannis,

including all seniority, longevity and other employee rights accrued at the carrier, to start over in

employment at Republic Airways.  FAC, ¶ 23.  Defendants do not challenge these allegations.

At Republic Airways, the challenged agreements also include restrictions on the pilot's

ability to leave the airline for other employment that conflict with Article 9.F of the pilot CBA,

which establishes the only conditions in the Republic pilot CBA applying to a pilot's resignation

from Republic.  That provision nowhere imposes a post-employment restriction.  Pulley Exh. A,

p. 9-5 to 9-7. In fact, Article 9.F states plainly that Republic pilots are free to leave Republic to

be employed by other airlines, and establishes conditions for their return to Republic under their previously accrued seniority and longevity.  The post-employment restrictions of the individual agreements are in clear conflict with Article 9.F by preventing pilots' employment at other airlines.

Defendants do not dispute plaintiffs' allegations that Republic has never imposed such post-employment restrictions on pilots previously or asserted that it is contractually entitled to do so.  FAC ¶ 34.  They also fail to respond to plaintiffs' allegations that there is no valid business justification for the post-employment restrictions imposed by Republic and that the recitations in the challenged agreements regarding such alleged interests of Republic protected by the conditions are knowingly false.  FAC ¶¶ 31, 32.   They fail to contest the allegations that Republic's purported justification for post-employment restrictions because it is in competition for the flying public with other carriers and provides proprietary information to pilots are false. FAC ¶¶ 36-37.  Finally, defendants fail to respond to plaintiffs' allegations that during negotiations between IBT and Republic over their 2022 pilot agreement, Republic never proposed that it would have the right to impose post-employment restrictions on pilots or have the right to require pilots to remain employed at Republic for a defined period of time. FAC ¶¶ 46-47.  These allegations, taken as true, establish that the individual agreements conflict with established contractual rights of Republic pilots and that Republic has never asserted a contractual right to impose these post-employment restrictions until the unsubstantiated assertions in Republic's motion to dismiss.

Rather than challenging plaintiffs' factual allegations that the individual agreements conflict with the pilot CBAs, defendants assert those conflicts may be permissible under contract provisions that permit Hyannis pilots and Republic pilots to waive certain contract provisions on

an individual flight basis.  Defendants' brief, pp. 4 (citing Article 6.K.8 of Republic agreement),

5 (citing Sections 10.C.2.b and 14.E.3 of Hyannis Air agreement), and 18.  Defendants ignore

and fail to respond with evidence to the factual allegations in the First Amended Complaint that

neither carrier has ever asserted before that these individual waiver provisions in the Hyannis Air

and Republic contracts can be applied to preemptively waive employment terms for the duration

of a pilot's employment.  FAC ¶ 40.  This is a new interpretation created by defendants just for

this case in an effort to avoid this Court's jurisdiction and for which they do not submit evidence

to substantiate their position.

     A review of these provisions shows that nothing in them can support the broad

preemptive waiver for the duration of a pilot's employment imposed by the individual

agreements; instead, the provisions only permit a waiver on an individual trip basis.  *See, e.g.,*

*Chautauqua Airlines,* 186 F. Supp. 2d at 909-911 (reviewing terms of the contract asserted by

carrier to justify its action and determining that the provision did not support carrier's position).

     Article 6.K.8 of the Republic pilot CBA appears in its Scheduling section that deals with

Pilots' monthly flying schedules.  It states,

> 8. Each Pilot may waive the entitlements and provisions in Article 6,
> Article 7, Article 8, Article 23, and Article 26 **on an individual basis**. If
> the Company is notifying the Pilot of **an Assignment or Reassignment**
> **t**hat requires the Pilot to waive any part of the CBA, the Company must
> notify the Pilot that his consent is required. If in the actual performance of
> **an Assignment or Reassignment** a situation requiring a waiver develops,
> and the Company is not otherwise required to communicate with the Pilot,
> the Pilot's consent shall be implied, unless he communicates otherwise to
> the Company.

Pulley Decl., Exh. A, p. 6-26 (emphasis added).  The provision states that it applies "on an

individual basis."  It then identifies that individual basis to be when Republic notifies a Pilot of

"an Assignment or Reassignment" that requires the Pilot waive any part of the CBA or a Pilot's

21

actual performance of "an Assignment or Reassignment."  By its plain language, the provision is limited to a Pilot's waiver of contractual rules for a specific Assignment or Reassignment. Nothing in Article 6.K.8 refers to a Pilot's employment at Republic.  Nothing in its refers to a Pilot being hired by Republic.  Nothing in Article 6.K.8 references other agreements than the Republic Pilot "CBA."  Nothing in Article 6.K.8 provides for the waiver to apply beyond the specific "Assignment" in question.  Defendants fail to present any evidence that Article 6.K.8, whose plain language has no application to the individual employment agreements or permanent waiver of CBA terms for the duration of a pilot's employment, has ever been applied in the manner Republic now asserts. Its argument is obviously insubstantial.[7]  *Chautauqua Airlines,* 186 F.Supp. 2d at 910-11 ("After reviewing Article 4, however, the Court concludes that it cannot fairly be read to have implicitly authorized Chautauqua's actions.")

Similarly, the provisions of the Hyannis Air CBA cited by defendants (Sections 10.B.2 and 14.E.3) to justify a permanent waiver of numerous working conditions through the Pathway agreement cannot by any stretch of reading support their position.  The provisions deal only with a pilot waiving required days off during training and a pilot agreeing to change a daily duty break.  Section 10.C.2 of that Agreement states

> 2. Initial, Transition, Upgrade, Differences and Re-qualification Training.
>
>> a. A Pilot shall be scheduled for two (2) Days free from all Duty between the conclusion of classroom ground training of fourteen (14) or more total days and the commencement of flight training. A Pilot who is scheduled for OE trips shall receive no less than two (2) Days free from all Duty in Base prior to the start of OE when returning from a simulator

---

[7] Article 6.K.8 limits the provisions subject to waiver to Articles 6 (scheduling), 7 (reserve pilots) 23 (hours of service) and 26 (vacancies and displacements).  Defendants do not attempt to explain how the  terms and conditions of Republic Pilots alleged in the FAC to be violated by the individual agreements fall under these provisions.

facility. These Days Off may be within the applicable transition duty free period provided in Section 6.C.

b. A Pilot shall be given a minimum of six (6) Days free from all Duty in a twenty-eight (28) Day Bid Period, in which he has been assigned to training for more than twenty-one (21) days. Days Off at a training site shall be counted towards the six (6) Day minimum. A Pilot may waive the Day Off restriction.

Section 14.E. states:

E. Scheduled Duty Breaks

1. Pilots scheduled for six (6) or more consecutive hours of duty shall be scheduled and provided at a minimum, a thirty (30) minute break, free of all duties, within a fifty-five (55) minute block in to block out period. The break shall be taken as close to the middle third of the scheduled Duty Day as possible or after four (4) consecutive segments, whichever comes first.

2. A Pilot scheduled for more than ten (10) hours of duty, whether scheduled or in actual operations, shall be scheduled/assigned a total of two (2) breaks, one of which shall be a thirty (30) minute break free from all Duty, within a fifty-five (55) minute block in to block out period, and the other of which shall be a forty-five (45) minute break free of all duty within a seventy (70) minute block in to block out period. Both breaks will be reasonably scheduled in the course of the day.

3. A Pilot and SOC may mutually agree to waive, reduce or reschedule any break.

4. In the event a Pilot is required to go through Customs, any applicable break shall be extended by ten (10) minutes.

Even a cursory review of these provisions show they are narrow and specific in their application.  Section 10.B.2 applies only to a circumstance where a Hyannis Air pilot is assigned to train for more than 21 days in a 28-day work schedule.  Section 14.E.3 applies only to a pilot's ability to change a required duty break during the pilot's work day, including waiving the break.  That has nothing to do with the permanent waiver of working conditions that the FAC alleges occurs under the Hyannis Air-Republic Pathway agreement.  *Chautauqua Airlines,* 186 F.Supp. 2d at 910-11 ("while Article 4 generally deals with hours of service, it simply does not address the company's ability to reduce the scheduled workweek of full-time

23

employees.")  Defendants arguing, as Hyannis never has before, that these narrow provisions justify the permanent waiver  of employment conditions the airlines require pilots to make under the individual agreements is not only obviously insubstantial, but also in bad faith.

## VI.    Defendants' cannot support the challenged agreements based on the silence of their pilot CBAs.

Defendants' assertion the allegations in the FAC that the individual agreements include terms on which the Pilot Contracts are silent means that such silence permits the agreements, Defendants' Brief, p. 23, ignores the fact that a major dispute "arise[s] in the absence or silence of a collective bargaining agreement."  *Burlington Northern R.R.,*  862 F.2d at 1271.  Further, it ignores that both Hyannis and Republic have agreed that only their collective bargaining agreements will govern the terms and conditions of their pilots' employment. An argument that the airlines may enter other agreements with pilots to address terms not established under the CBAs violates these commitments given the failure of defendants to present a substantial contract justification under the CBAs.  Their contractual commitments to only apply the CBAs to their pilots' rates of pay, rules and working conditions reflect the established principle that "[a] collective bargaining agreement binds all employees in the bargaining unit at the time of the making of the agreement as well as those who thereafter join the unit." *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991).

Section 1.D.1 of the Hyannis Air agreement states the airline's agreement that the pilot CBA shall be the sole agreement governing conditions of its pilots:

D. Sole Agreement

1. This Agreement shall supersede all existing or previously executed Agreements by and between the Company and the Union or any other labor organization or individual with respect to the rates of pay, rules or working conditions specifically covered by the provisions of this Agreement in accordance with the provisions of the

RLA. Any and all subsequent agreements between the parties shall be reduced to writing, signed by their authorized representatives and become a part of this Agreement.

Markham Exh. A, p. 2.

Further, under Section 1.E of the CBA, Hyannis Air agreed that, except as provided elsewhere in the agreement, all flying it conducts will be flown by Hyannis Air pilots "in accordance with the terms and conditions of this Agreement."

E. Scope

1. Except as provided elsewhere in this Agreement, the purpose of this subsection is to ensure, without limitation, that all revenue flying performed by or for or on behalf of the Company or any subsidiary of the Company, the Company's parent or any subsidiary of the Company's parent (collectively designated for purposes of this Section as the "Cape Air Parties"), and any future airline certificate(s) created or obtained by the Cape Air Parties, and all present and future revenue flying and all charters, Ferry Flights with the exception of new aircraft deliveries and/or returns from a manufacturer, training flights, test flights, , or other utilization of aircraft operated, owned or leased by the Cape Air Parties, with the exception of the past practice of non-revenue use of Company aircraft by managers of the Company (collectively referred to as "Covered Flying") **shall be performed by Pilots on the Cape Air Pilots System Seniority List in accordance with the terms and conditions of this Agreement**. Nothing in this Agreement shall preclude the Company from subcontracting

*Id.* (Emphasis added)

Under this plain and unambiguous language, Hyannis Air cannot justify entering the Pathway agreement, which strips pilots of terms and conditions under the pilot CBA, based on the silence of the CBA since it has agreed that agreement is the sole one applicable to its pilots employment terms and that, except as provided in another of its provision, Hyannis pilots will perform flying in accordance with the CBA.  Hyannis Air must justify its position either in an express term of the collective bargaining agreement or by presenting evidence showing an

25

established practice permitting such individual agreements overriding terms of the CBA.  As already shown, it fails to do so.

Republic Airways has similarly agreed that its pilot collective bargaining agreement will be the only agreement governing the rates of pay, rules and working conditions of its pilots:

> C. Status of Agreement
>
> 1. This Agreement shall supersede all existing or previously executed Agreements by and between the Company and the Union or any other labor organization or individual with respect to the rates of pay, rules, or working conditions governing the employees covered by this Agreement in accordance with the provisions of the Railway Labor Act, as amended, with the exception of LOA#4 Jets for Jobs, dated and signed October 17, 2003, and LOA#5 Binding of the Parent, dated and signed October 17, 2003, which shall continue in force. Any and all subsequent agreements between the parties shall be reduced to writing, signed by their authorized representatives, and become a part of this Agreement.
>
>
> D. Scope
>
> 1. This Agreement covers the Company, any subsidiary of the Company, the Company's Parent, any subsidiary of the Company's Parent, and any future Air Carrier that is a subsidiary of the Company or subsidiary of the Company's Parent.
>
> 2. Except as otherwise provided in this Agreement, all present and future Flying (including international Flying) and all charters, ferry flights (not including ferry flights of aircraft prior to being placed into or being removed from revenue service), training flights, test flights (except test flights assigned to management, or in connection with delivery or removal of aircraft), or other Flying by or for the Company, the Company's Parent, or any subsidiary of the Company or subsidiary of the Company's Parent shall be performed by Pilots on the Republic Airways Pilots' System Seniority List in accordance with the terms and conditions of this Agreement or any other applicable agreement between the Company, the Company's Parent, or any subsidiary of the Company or the Company's Parent and the International Brotherhood of Teamsters.

Pulley Exh. A, p. 1-1, 1-2.  As with Hyannis Air, Republic cannot rely on the silence of its collective bargaining agreement to justify its authority to enter into the challenged agreements because, absent a valid contractual basis "otherwise provided in this Agreement", it may not

apply any other agreement to its pilots' working conditions under the plain and unambiguous terms of Articles 1.C.1 and 1.D.2.

VII.  **Sections 2, First, Fourth and Seventh of the Railway Labor Act apply to agents of carriers; Republic Airways Holdings Inc. is a proper defendant to Counts I and III since the FAC alleges it is the agent of Republic Airways for purposes of carrying out its duties under the RLA and is expressly bound by the Republic Pilot collective bargaining agreement.**

Defendants' motion to dismiss Republic Airways Holdings Inc. as a defendant on the basis that it is not a carrier subject to the Railway Labor Act ignores that Holdings is expressly covered by the Republic pilot CBA and that the RLA provisions alleged in the First Amended Complaint apply to agents of carriers, which the FAC alleges Holdings so acts on behalf of Republic.  Section 2, First, 45 U.S.C. 152, First, states, "It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof."  Sections 2, Fourth and Seventh similarly expressly make the agents of carriers subject to their provisions.  45 U.S.C. §§ 152, Fourth, Seventh.

Plaintiffs allege Holdings acts as agent of Republic Airways for purposes of the airline's compliance with the Railway Labor Act.  FAC, ¶ 9.  Further, Holdings is expressly covered by the CBA under Article 1.D.1. ("This Agreement covers the Company, any subsidiary of the Company, **the Company's Parent**, any subsidiary of the Company's Parent, and any future Air Carrier that is a subsidiary of the Company or subsidiary of the Company's Parent.")(emphasis added)  It is therefore properly a defendant in this action to Counts I and III.

It is correct, however, that Section 2, Ninth, 45 U.S.C. § 152, Ninth, does not identify agents as subject to its duties.  Plaintiffs agree that it is appropriate to dismiss Holdings as a defendant under Count II.

## VIII.    Since defendants' Rule 12(b)(1) motion should be denied, their motion to dismiss under Rule 12(b)(6) as to Counts I and II should also be denied

Defendants' also moved pursuant to Rule 12(b)(6) to dismiss Counts I and II of the First Amended Complaint.  Defts' Brief, pp. 25.  The motion is premised on the correctness of defendants' Rule 12(b)(1) motion.  *Id.*, p. 26.  Given that the FAC sufficiently alleges that a major dispute exists between the parties, their Rule 12(b)(6) motion to Count I must also fail. The claims under RLA Sections 2, Third and Fourth asserted in the First Amended Complaint, as pleaded, are not subject to the exclusive jurisdiction of the system boards of adjustment at Hyannis Air and Republic.  Defendants' motion to dismiss Count I also ignores that the individual pilots could not file grievances challenging agreements they entered with the airlines since those agreements contain forum selection clauses vesting the state courts of Indiana with exclusive jurisdiction over them for the parties. FAC, Exh. 1, p. 4; FAC Exhs. 2, p. 4, Exh. 3, p. 6. The parties' system boards lack jurisdiction over this major dispute and also lack jurisdiction over the terms of the individual agreements for the individual pilots.

Defendants' motion to dismiss Count II similarly fails since plaintiffs have adequately pled that the challenged individual agreements are not arguably justified under the applicable collective bargaining agreements and conflict with numerous terms of those agreements. Defendant airlines' establishing terms and conditions of employment directly with employees outside their CBAs with Teamsters and to which Teamsters are not a party therefore violates their duty under Section 2, Ninth of the RLA to only deal with Teamsters concerning the terms and conditions of employment of their pilots. *Bhd. of Locomotive Eng'rs & Trainmen (Gen.*

28

*Comm. of Adjustment, Ctr. Region) v. Union Pac. R.R. Co., 879 F.3d 754, 760* (7th Cir.

2017)(direct dealing with employees is a violation of the RLA subject to federal court

jurisdiction where carrier fails to substantiate the existence of minor dispute subject to their

system board of adjustment). *See also Order of R. Telegraphers v. Railway Express Agency,

Inc.*, 321 U.S. 342, 64 S. Ct. 582, 88 L. Ed. 788 (1944). *Baker v. Amsted Industries, Inc.*, 656

F.2d 1245, 1248-49 (7th Cir. 1981)("An agreement between an employer and an individual

employee concerning the terms and conditions of employment is ineffective both as a bar to

collective bargaining, Case v. NLRB, supra, and as a waiver of benefits under an existing

collective bargaining agreement. Order of R. R. Telegraphers v. Railway Express Agency, Inc.,

321 U.S. 342, 64 S. Ct. 582, 88 L. Ed. 788 (1944). Thus, terms and conditions of employment

can be arranged only by the majority representative, and the rules written into the collective

bargaining agreement become the law of the plant for all employees.")

Defendants' motion to dismiss Count II does not deny they have dealt directly with their

pilots under the individual agreements and refuse to deal with IBT over the terms and conditions

of employment covered by those individual agreements.  They present no evidence to dispute the

allegations of the FAC on that fact.  Defendants cannot and do not dispute that the individual

agreements address working conditions within the scope of Section 2, Ninth of the Act, 45

U.S.C. § 152, Ninth.  Rather, defendants focus only on the absence of allegations of union

animus in the First Amended Complaint.  Defts' Brief, pp. 25-28.  Since the FAC adequately

alleges this matter is a major dispute, and defendants fail to present evidence to dispute

allegations of their refusal to treat with IBT concerning terms of employment in the individual

agreements that are subject to Section 2, Ninth, their motion to dismiss Count II should be

denied. *Bhd. of Locomotive Eng'rs & Trainmen (Gen. Comm. of Adjustment, Ctr. Region),* 879

F.3d at 760, nowhere imposed an additional pleading obligation on a union to allege union animus when a dispute is major, not minor. Plaintiffs here adequately allege defendants' violation of the plain language of Section 2, Ninth. *See*, *Int'l Bhd. of Teamsters v. Frontier Airlines, Inc.*, 2012 U.S. Dist. LEXIS 43312 (D. Colo. 2012)(union adequately pled violation of Section 2, Ninth over airline's refusal to deal with union over terms of separate commercial agreement it entered with other entity covering employment terms of its pilots). The district court in *Frontier Airlines* denied the airline's motion to dismiss on the basis that the commercial agreement it entered with an entity other than the certified union of its pilots would continue to be negotiated with a separate entity and so the union plausibly alleged the airline was not treating with the union concerning the terms of that agreement. *Id.* No allegations of anti-union animus were made by the union or cited by the district court in finding the allegations of a plain refusal to deal with the certified representative over the terms of the separate agreement sufficiently stated a violation of Section 2, Ninth.

Since defendants' alleged actions here in entering agreements directly with pilots to which the union is not a party violate the plain language of Section 2, Ninth, it is unnecessary for the allegations of the FAC to go behind defendant carriers' actions to allege they are motivated by anti-union animus. The FAC adequately alleges Defendant airlines have violated Section 2, Ninth.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss pursuant to Rule 12(b)(1) should be denied and their motion to dismiss pursuant to Rule 12(b)(6) should be denied except as to Defendant Holdings under Count II.

Dated: September 22, 2023.   Respectfully submitted,

/s/William R. Wilder
William R. Wilder
Wilder Law Group, PLLC
1750 Tysons Blvd., Suite 1500
Tysons, VA 22102
(703) 712-4772
wwilder@wilderlg.com

Jeffrey Macey
Macey Swanson, LLP
429 N. Pennsylvania Street, Suite 204
Indianapolis, IN 46204
(317) 637-2345
jmacey@maceylaw.com

Attorneys for Plaintiffs

Emily K. Pantoja
International Brotherhood of Teamsters
25 Louisiana Ave NW
Washington, DC 20001
(202)-624-8710
epantoja@teamster.org

Attorney for International Brotherhood of Teamsters

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true copy of the foregoing was served on counsel for

defendants via the Court's Electronic Case Filing system on September 22, 2023.


/s/ William R. Wilder
William R. Wilder