**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

|  |  |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, TEAMSTERS LOCAL UNION NO. 357 AND AIRLINE PROFESSIONALS ASSOCIATION TEAMSTERS LOCAL UNION NO. 1224,<br><br>Plaintiffs,<br><br>v.<br><br>REPUBLIC AIRWAYS INC., REPUBLIC AIRWAYS HOLDINGS INC. AND HYANNIS AIR SERVICE INC.,<br><br>Defendants. | Civil Action No. 1:23-cv-995-RLY-MG |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 2

I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION ....................................... 2

      A.      Plaintiffs Raise A Minor Dispute .......................................................... 2

              i.      The Republic Pre-Hire Agreement Is Arguably Justified by the Terms of the Republic-IBT CBA ............................................................ 4

              ii.     The Pathway Program Pre-Hire Agreement Is Arguably Justified by the Terms of the CBAs .................................................................... 13

II.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER COUNTS I & II AS TO THE CARRIERS AND COUNTS I THROUGH III AGAINST HOLDINGS ....................... 18

CONCLUSION ......................................................................................................... 20

## INTRODUCTION

Plaintiffs' Opposition concedes that this case involves disputes over the meaning of express and implied provisions of the CBAs.  Plaintiffs invite this Court to resolve those disputes, in contravention of the exclusive arbitral jurisdiction of the System Board of Adjustment ("System Board") mandated by the Railway Labor Act ("RLA") and the CBAs. This Court should decline Plaintiffs' invitation, and should instead grant Defendants' pending Motion to Dismiss, thereby permitting the disputes to be submitted to the appropriate System Boards.

The controlling legal standard is the Supreme Court's decision in *Consolidated Rail Corp. v. Railway Labor Executives' Association*, 491 U.S. 299 (1989) ("*Conrail*").  *Conrail* held that disputes regarding the meaning of express and implied CBA terms are "minor disputes" under the RLA for resolution exclusively in arbitration before the System Board, so long as the carrier's position regarding the meaning of the CBA terms is not "frivolous or obviously insubstantial," and is thus "arguably justified."  491 U.S. at 307.  The Supreme Court has characterized the carrier's burden in meeting that standard as "relatively light," *id.*, and the Seventh Circuit has held that "if there is any doubt as to whether a dispute is major or minor a court will construe the dispute to be minor."  *Ry. Lab. Execs. Ass'n v. Norfolk & W. Ry. Co.*, 833 F.2d 700, 705 (7th Cir. 1987).

Plaintiffs pay little attention to these legal precedents.  Rather, they give only lip service to the applicable standard, repeatedly asserting only that the Carriers' contract interpretation positions are "insubstantial," and then arguing that *Plaintiffs'* interpretation of the disputed CBA terms—in addition to several other CBA provisions they now raise in their Opposition—is correct.  But in doing so, Plaintiffs actually highlight in striking detail that there *is* a legitimate dispute over the meaning of the relevant CBA terms.  And by no means have Plaintiffs

demonstrated that the Carriers' positions are "frivolous or obviously insubstantial" within the meaning of *Conrail*.

To be clear, the question at this stage is not *who is right* about the meaning of the parties' CBAs.  Rather, the question before this Court is whether the Carriers have met the "relatively light burden" under *Conrail* of demonstrating a minor dispute.  491 U.S. at 307 (quotation omitted).  The Carriers have met this burden in reliance on the express language of Article 3.O. of the Republic-IBT CBA and Section 1.J. of the Cape Air-IBT CBA, and Plaintiffs have failed to undermine the Carriers' showing.  To the extent Plaintiffs dispute the meaning or application of the contract language upon which the Carriers rely, that disagreement raises interpretation issues for resolution by the System Board.  Counts I through III should therefore be dismissed for lack of jurisdiction.  Because the Court has no original jurisdiction over these claims, Count IV should similarly be dismissed for lack of jurisdiction—which Plaintiffs do not dispute—as the Court cannot exercise supplemental jurisdiction over this state-law claim.

Even if jurisdiction were proper here (it is not), Plaintiffs have not adequately alleged that Republic Airways Holdings Inc. ("Holdings") is a proper Defendant as to any count in the First Amended Complaint ("FAC").  Plaintiffs also have failed to state a claim against the Carriers in Counts I and II.  Those claims must therefore be dismissed on that basis as well.

## ARGUMENT

## I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION

### A.   Plaintiffs Raise A Minor Dispute

Plaintiffs argue that they have raised a major dispute subject to this Court's jurisdiction. To reach that conclusion, Plaintiffs parse through the meaning of numerous provisions of the parties' CBAs—several of which were raised for the first time in their Opposition—and point to areas of contractual silence, purported past practice, and alleged bargaining history between the

2

parties.  Plaintiffs' own arguments undermine their contention that this is a major dispute.

A major dispute occurs when "there is no [collective bargaining] agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy." *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945).  "A major dispute arises from the creation of new contracts or modifications of existing contracts that affect any of the mandatory subjects of bargaining established in the RLA." *BLET GCA UP v. Union Pac. R.R. Co.*, 988 F.3d 409, 412 (7th Cir. 2021).

A minor dispute, in contrast, occurs where "the resolution of the plaintiff's claim requires interpretation of the CBA." *Grimes v. CSX Transp., Inc.*, 2009 WL 10709792, at *1 (S.D. Ind. Feb. 25, 2009) (Young, J.), *aff'd*, 338 F. App'x 522 (7th Cir. 2009).  Minor disputes "include grievances and all those disputes in which a collective bargaining agreement applies as to the disposition of the dispute." *Burlington N. R.R. Co. v. United Transp. Union*, 862 F.2d 1266, 1271 (7th Cir. 1988).  In other words, a minor dispute "relates either to the *meaning or proper application* of a particular provision with reference to a specific situation or to an omitted case." *Elgin*, 325 U.S. at 723 (emphasis added).  In a minor dispute, there is no obligation on the part of the carrier to maintain the status quo; a carrier may implement its interpretation of the collective bargaining agreement pending a decision from the System Board.  *Conrail*, 491 U.S. at 304.  The burden of demonstrating a minor dispute is "relatively light."  *Id.* at 306-07 (quotation omitted).  Where an employer presents a justification in the CBA that is neither "frivolous" nor "obviously insubstantial," the employer has taken action "*arguably justified*" by the parties' CBA; the resulting dispute is minor, and it must be resolved in arbitration.  *Id.*  The Seventh Circuit has explained that "if there is any doubt as to whether a dispute is major or minor a court will construe the dispute to be minor." *Ry. Lab. Execs*, 833 F.2d at 705.

3

Here, the disputed action (*i.e.*, the Carriers' implementation of the pre-hire agreements) is arguably justified by the plain language of Article 3.O. of the Republic-IBT CBA and Section 1.J. of the Cape Air-IBT CBA.  In opposition, Plaintiffs repeatedly argue, based on their own interpretation of the CBAs, that the Carriers' contract interpretation positions are "insubstantial," but under the governing legal standard, Plaintiffs fail to establish that the Carrier's interpretation of the express language of the CBAs is "frivolous or obviously insubstantial."  The dispute is therefore minor.

Plaintiffs further misconstrue the standard of review on a motion to dismiss.  (ECF No. 33 at 7-8.)  For purposes of the Motion, the *Court* accepts Plaintiffs' well-pled allegations as true.  *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). The Carriers of course intend to dispute the truth of the allegations in the proper forum (arbitration) and, as such, do not present those disputes regarding issues of fact to this Court for resolution.  Even accepting Plaintiffs' allegations as true for purposes of the Motion, this Court lacks jurisdiction.  Defendants rely on the CBAs attached to their Motion to demonstrate that this case clearly involves the interpretation and application of a CBA, and is thus a minor dispute subject to exclusive arbitration jurisdiction.

### i.    The Republic Pre-Hire Agreement Is Arguably Justified by the Terms of the Republic-IBT CBA

Plaintiffs argue that Article 3.O. of the Republic-IBT CBA is an "insubstantial" basis for Republic's decision to implement the Republic Pre-Hire Agreement.  To reach this conclusion, Plaintiffs search the CBA for other provisions in an attempt to challenge Republic's application of the broad language in Article 3.O.  Plaintiffs are wrong on the merits, but this Court lacks jurisdiction to decide the CBA-interpretation questions here.  Plaintiffs' various arguments only *confirm* that this is a minor dispute about the meaning of Article 3.O.

4

### (1)    *Plaintiffs dispute the meaning of Article 3.O.*

*First*, Plaintiffs argue that Articles 3.O.3. and 3.O.4. "exclude new hire pilots from coverage under the provisions" and therefore Republic cannot offer incentives associated with upgrade to Captain or retention of employment to "New Hire Pilots." (ECF No. 33 at 17.) Plaintiffs assert that Articles 3.O.3. and 3.O.4. "apply only to 'Pilots'," while Article 3.O.1. applies to "New Hire Pilots," and that those two phrases—*Pilots* and *New Hire Pilots*—are mutually exclusive categories. (*Id.*) Plaintiffs' efforts are misguided.

The Republic Pre-Hire Agreement is offered to pilot candidates before they are hired by Republic to aid in recruitment, when the pilot candidates are not covered by the CBA nor represented by Plaintiffs. (*See generally* ECF No. 25-2, Art. 1; *see also* BNA, *The Railway Labor Act*, Chapter 1 (2022) (under the RLA, only "employees [] organized in units for representation and bargaining . . . and those hired after them in the same units, are bound by the agreements reached on behalf of the unit").) After the pilot candidates are hired by Republic, they become New Hire Pilots under the CBA. The language of Article 3.O.1. allows Republic to apply the agreements (*e.g.*, pay a bonus) to those Pilots after they have become employees of Republic and are covered by the CBA. Article 3.O.1. provides, in relevant part: "the Company has the discretion to offer, . . . incentives in its recruitment efforts of New Hire Pilots. The Company has the discretion to determine the terms of the signing bonus, stipend, and/or other incentives for New Hire Pilots including but not limited to the timing of payments of such signing bonuses, stipends, and/or incentives." (ECF No. 25-2 at 44, Art. 3.O.1.) This language does not limit what kinds of incentives can be provided in Republic's pilot recruitment efforts. Nothing in the language conflicts with Republic's offer of an opportunity and corresponding incentive to upgrade to Captain as part of its recruitment efforts of new pilots or from including incentives to retain newly hired pilots. To the contrary, Republic negotiated and the IBT agreed

to the broad language in Article 3.O.1. to aid in recruitment efforts and those words—"[t]he Company has the discretion to determine the terms" of the bonuses, stipends, and/or incentives—are sufficiently expansive to include the incentives in the Republic Pre-Hire Agreement.  To the extent Plaintiffs disagree, they may present any evidence of contrary intent to the System Board to decide the proper interpretation.

In addition to Article 3.O.1., Article 3.O.3. also permits the incentives in the Republic Pre-Hire Agreement.  When pilots who have entered into the pre-hire agreement upgrade to Captain, they are indeed qualified pilots employed by Republic.  Article 3.O.3. demonstrates that the Captain upgrade incentives of the Republic Pre-Hire Agreement are not only not in conflict with the Republic-IBT CBA, but are expressly *permitted* by the CBA in Article 3.O.3.  Article 3.O.3. provides: "The Company, in its discretion, may offer a bonus or financial incentive at any time and of any type or form to incentivize a qualified Pilot to complete Captain qualification training.  The Company has the discretion to determine the terms of the bonuses, or other incentives for Pilots, including but not limited to the timing of payments of such bonuses and/or incentives."  (ECF No. 25-2 at 44, Art. 3.O.3.)  That is precisely what Republic has done here.  As to Plaintiffs' argument regarding Article 3.O.4., Republic does not rely on this provision for its right to incentivize retention.  Instead, Republic relies on the discretion reserved to it by the plain language of Article 3.O.1. and 3.O.3.  (*Id.*, Art. 3.O.1., 3.O.3.)

Moreover, it is possible to be both a "Pilot" and a "New Hire" and the terms are not mutually-exclusive *per se* as the term "New Hire" is defined to be a "Pilot."  (*See, e.g.*, *id.* at 29, Art. 2 ¶ 174 ("New Hire – A Company employee newly hired *as a Pilot* . . . ." (emphasis added)).)  Even under Plaintiffs' reading of Article 3.O., New Hire Pilots, who are by definition "Pilots," thus would be entitled to the rights under Article 3.O.3. and Article 3.O.4., which

Plaintiffs claim are reserved to "Pilots."  For all of these reasons, the terms in Article 3.O. on which Plaintiffs rely *do not* foreclose Republic's reading of this provision, and *do not* render Republic's justification "frivolous and obviously insubstantial."

*Second*, Plaintiffs also argue that Republic's discretion under Article 3.O. is limited to the "terms of the bonus," not "what employees may be paid."  (ECF No. 33 at 18.)  But Plaintiffs' disagreement on the meaning of "terms" and its apparently narrow definition is clearly a dispute that belongs before the System Board.  Who qualifies to receive the incentives is as much a part of the terms of the incentive or bonus as the amount of the incentive or bonus itself.

*Third*, Plaintiffs' argument that Republic must exercise its "discretion" under Article 3.O. in a way that does not violate Indiana's "covenant of good faith and fair dealing" is circular and underscores that this dispute requires the interpretation of CBA language.  (*Id.*)  Plaintiffs argue that the covenant requires Republic to exercise its contractual discretion under Article 3.O in a manner consistent with the parties' CBA.  (*Id.* at 18-19.)  But as shown herein, the express terms of Article 3.O. *support* Republic's interpretation of the provision.  Plaintiffs simply claim that Republic is wrong about its reading of Article 3.O. and thus its interpretation is inconsistent with the covenant.  That is an interpretation issue that belongs before the System Board.

Plaintiffs' contract-based arguments to narrow the meaning of this broad discretionary provision only further demonstrate that Article 3.O. and other CBA provisions on which Plaintiffs rely must be construed by a System Board to resolve this dispute.  If Republic is wrong about its interpretation, "the arbitrator will tell it so."  *Bhd. of Locomotive Eng'rs and Trainmen v. Union Pac. R.R. Co.*, 879 F.3d 754, 760 (7th Cir. 2017).  But, as will be apparent in any arbitration, Republic has acted within the rights it negotiated with the IBT in Article 3.O.

(2)     *Plaintiffs dispute the meaning of alleged "conflicts" or silence in the Republic-IBT CBA*

Plaintiffs also claim that Republic's implementation of the pre-hire agreements "conflicts" with other terms of the Republic-IBT CBA.  Plaintiffs' arguments are without merit based on the plain language of the CBA, but to the extent that there is a dispute about how various terms of the CBA interact, that is a quintessential question for the System Board.

Plaintiffs claim that the Republic Pre-Hire Agreement's terms incentivizing pilots to remain with Republic "conflicts" with Article 9.F. of the Republic-IBT CBA.  (ECF No. 33 at 19.)  Article 9.F. provides, in part, that "[e]ach and every Pilot who separates from the Company under good terms, who is deemed eligible for rehire in his employment separation file, and who the Company has designated as a preferential rehire shall be allowed to return to the Company" under specific conditions.  (ECF No. 25-2 at 122, Art. 9.F.)  Contrary to Plaintiffs' argument, this provision covers the conditions under which a pilot *returns* to Republic after separation—it says nothing about the circumstances for the pilot's departure for employment at another airline.

Plaintiffs miss the mark by arguing that Republic "do[es] not dispute" Plaintiffs' allegations that it has never previously imposed any "post-employment restrictions" on pilots, or asserted that it is contractually entitled to do so.  (ECF No. 33 at 20.)  A carrier does not waive CBA rights reserved to it simply because it has not exercised those rights previously.  (ECF No. 25 at 22-23.)  Plaintiffs claim that Republic fails to contest that pilots do not obtain proprietary information while working at Republic, and therefore, any "justification" for post-employment restrictions is false.  (ECF No. 33 at 20.)  As explained, for purposes of the Motion, Republic need not contest the truth of the allegations to demonstrate that jurisdiction is improper.

Plaintiffs' other arguments regarding alleged "conflicts" with the CBA are equally unavailing.  *First*, Plaintiffs assert that Republic "never proposed that it would have the right to

impose post-employment restrictions on pilots or have the right to require pilots to remain employed at Republic for a defined period of time." (ECF No. 33 at 20.) But as explained in the Motion, evidence on bargaining history should be presented in the proper forum before the System Board. (ECF No. 25 at 12 n.5.) Under *Conrail*, the only question here is whether Republic's actions are "arguably justified" by the Republic-IBT CBA.

*Second*, Plaintiffs claim that under Article 1.C.1. and 1.D. of the Republic-IBT CBA, Republic cannot enter into other agreements "governing the rates of pay, rules and working conditions of its pilots" or rely on the silence in its CBA to justify its authority to enter into the Republic Pre-Hire Agreement. (ECF No. 33 at 26.) But neither Article 1.C.1. nor Article 1.D. conflict with Republic's right to enter into the Republic Pre-Hire Agreement, including under Article 3.O. Article 1.C.1. provides, in part: "This Agreement shall supersede all existing or previously executed Agreements by and between the Company and the Union or any other labor organization or individual with respect to the rates of pay, rules, or working conditions governing the employees covered by this Agreement . . . ." (ECF No. 25-2 at 6, Art. 1.C.1.) The Republic Pre-Hire Agreement is *subsequent* to the CBA, and thus this provision does not preclude the agreement. (*Id.*) Plus, the agreement at issue does not conflict with the CBA, as it is expressly permitted by Article 3.O. Article 1.D. covers the scope of work, and provides, in part, that "[e]xcept as otherwise provided in this Agreement, all present and future Flying," as defined in the provision, "shall be performed by Pilots on the Republic Airways Pilots' System Seniority List in accordance with the terms and conditions of this Agreement or any other applicable agreement . . . ." (*Id.* at 7, Art. 1.D.2.) Article 1.D.2. protects the right of Republic pilots to *fly Republic flights*, which is not affected by the Republic Pre-Hire Agreement. Even if there was a conflict, Article 1.D.2. includes a carve out for Article 3.O., providing: "[e]xcept as otherwise

9

provided in this Agreement." (*Id.*)

*Third*, Plaintiffs claim various other purported conflicts with the Republic-IBT CBA, but nothing in the Republic Pre-Hire Agreement affects a pilot's rights under the CBA. (ECF No. 20 ¶ 39.) A pilot can exercise rights "that govern work schedule bidding, days off, [] leave entitlements," "vacation, sick leave, personal time, fatigue and other leave provisions," and "physical standards," (*id.* ¶ 39(a), (e)-(f)), and still meet the conditions for the payment set forth in the Republic Pre-Hire Agreement. The Republic Pre-Hire Agreement solely provides access to bonus money that the pilot would not otherwise have and the consequence of not satisfying a term of the Republic Pre-Hire Agreement (*e.g.*, upgrading to Captain in 24 months) is only to not receive the bonus; there is no impact on employment. (ECF No. 20-3; ECF No. 25 at 17.)

Nevertheless, Plaintiffs allege that the purported "conflicts" in the FAC cannot be waived under the Republic-IBT CBA. (ECF No. 20 ¶¶ 39-40.) Plaintiffs fail to specify the CBA provisions that they allege are in conflict and cannot be waived, and as explained in the Motion, their allegation is incorrect. (*Id.*) Article 6.K.8 of the Republic-IBT CBA does, in fact, permit waiver. (ECF No. 25 at 18.) Plaintiffs claim that Article 6.K.8. "only permit[s] a waiver on an *individual trip basis*" rather than a broad prospective waiver of rights. (ECF No. 33 at 21 (emphasis added).) Plaintiffs misstate the plain language of Article 6.K.8., which provides that "[e]ach Pilot may waive the entitlements and provisions in Article 6 [Scheduling], Article 7 [Reserve Duty], Article 8 [Paid Days Off], Article 23 [Hours of Service], and Article 26 [Vacancies and Displacements] on an individual basis." (ECF No. 25-2 at 91, Art. 6.K.8.) The first sentence of Article 6.K.8. does not refer to waiver on an "individual **trip** basis," as Plaintiffs assert—it says "on an individual basis" and clearly addresses *how* "each Pilot may waive" those provisions. That is, each pilot may *individually* waive the provisions; there is no need for all

pilots to agree to waive a provision.  If this provision were intended to be limited to an "assignment or reassignment," it would say "in the event of an assignment or reassignment, . . . ."  But it does not.  Instead, such "assignment" language is found *after* the broad language in the first sentence.  This provision thus expressly provides that the areas Plaintiffs allege are violated (*e.g.*, scheduling, bidding, minimum days off) *can* be waived by individual pilots.  (ECF No. 20 ¶ 39.)  Plaintiffs' reliance on *International Brotherhood of Teamsters v. Chautauqua Airlines*, 186 F. Supp. 2d 901 (S.D. Ind. 2001) is wholly misplaced.  In that case, "[b]oth parties concede[d] that the agreement did not specifically grant Chautauqua the right" to take its action or "explicitly prohibit it."  *Id.* at 910.  Here, Republic has conceded no such thing, and Article 3.O. arguably justifies the Carriers' actions.

Plaintiff's reliance on contractual silence to establish conflicts with the CBA also does not support their position.  (ECF No. 33 at 24.)  Where the CBA is silent on particular terms of the Republic Pre-Hire Agreement, that silence *supports* Republic's position because it means that the terms in the Republic Pre-Hire Agreement do not contradict or supersede any specific terms in the Republic-IBT CBA.  *See Airline Pros. Ass'n, Teamster Loc. Union 1224 v. ABX Air, Inc.*, 400 F.3d 411, 416 (6th Cir. 2005); *cf. Chicago & N. W. Transp. Co. v. Ry. Lab. Executives' Ass'n*, 908 F.2d 144, 153-54 (7th Cir. 1990).  To the extent Plaintiffs disagree regarding the meaning of contractual silence in this CBA, that disagreement raises interpretation issues for resolution by the System Board.  (ECF No. 25 at 18-19.)

### (3)  *Plaintiffs' arguments do not raise a major dispute*

Plaintiffs' arguments—which require the interpretation of disputed provisions in an existing CBA—undermine any assertion of a major dispute.  In fact, even the cases that Plaintiffs cite demonstrate just how far afield this case is from a "major" dispute.

None of the major-dispute cases cited by Plaintiffs bears any similarity to the dispute

here.  In *International Longshoremen's Association, AFL-CIO, Local 158 v. Toledo Lakefront Dock Co.*, 1977 WL 1809 (N.D. Ohio Dec. 16, 1977), for example, the court found a major dispute because the company refused to recognize and enforce an entire provision of the CBA—rather than merely deriving a different interpretation of a CBA provision.  *See* 1977 WL 1809, at *3 ("By refusing to recognize Article XXII as an enforceable provision for the resolution of disputes arising under the collective bargaining agreement, the Defendant Company has unilaterally attempted to change the content of the agreement.").  Plaintiffs' other case cites are similarly inapposite.  *See Burlington*, 862 F.2d 1266 (finding that even though trackage was not expressly covered by the CBA, the company subcontracted work away from the Union resulting in a change in crew consists, which violated the clear terms of the CBA); *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. (Airline Division) v. Tex. Int'l Airlines, Inc.*, 717 F.2d 157 (5th Cir. 1983) (finding major dispute where company sought to abrogate prior CBA after merger); *BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers-Transp. Div.*, 973 F.3d 326, 336 n.8 (5th Cir. 2020) (finding potential changes to crew consist to constitute a major dispute because "[c]hanging crew consist is routinely found to be a major dispute," while finding that a dispute over whether moratoria included in the CBA permitted section 6 notices to be *minor* because resolving that dispute required interpretation of the CBA); *Detroit & Toledo. Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. 142, 144 (1969) (company unilaterally changed location of distant "outlying work assignments").

Unlike the cases on which Plaintiffs rely, the CBA here contains express language permitting the Republic Pre-Hire Agreement.  Also, most of Plaintiffs' case cites *predate Conrail*, which established the "relatively light burden" for employers to demonstrate a minor dispute.  This Court should reject Plaintiffs' attempt to evade *Conrail* and invoke federal-court

jurisdiction over what is clearly a minor dispute requiring interpretation of an existing CBA.

ii.    **The Pathway Program Pre-Hire Agreement Is Arguably Justified by the Terms of the CBAs**

Plaintiffs have also not overcome the Carriers' showing that the allegations regarding the Pathway Program Pre-Hire Agreement raise minor disputes subject to the exclusive jurisdiction of the System Board, as the allegations implicate the express provisions of the CBAs.  Article 3.O. of the Republic-IBT CBA expressly provides Republic with broad discretion to offer pre-hire employment incentives, including the Pathway Program Pre-Hire Agreement.  *Supra* 5-7. Likewise, Section 1.J. of the Cape Air-IBT CBA provides Cape Air with "the sole and exclusive right . . . to exercise all rights or functions of management except to the extent that such rights of management are limited by this Agreement and so long as the exercise of such rights does not conflict with the terms of this Agreement."  (ECF No. 25-7 § 1.J. at 11.)

(1)    *Plaintiffs dispute the meaning of Section 1.J*

Plaintiffs argue that Cape Air concedes that there is no provision in the Cape Air-IBT CBA "that expressly permits" the company to enter into the Pathway Program Pre-Hire Agreement, and instead, rely on the "generic 'management rights' clause in Section 1.J." to give authority to enter the agreement.  (ECF No. 33 at 13.)  Plaintiffs thus claim that Cape Air's asserted justification is "insubstantial."  But "an employer's reliance on a right set forth in the parties' collective bargaining agreement ordinarily is enough to confirm the existence of a minor dispute unless it is clear that the employer's claim is 'insincere' or founded on 'insubstantial grounds.'"  *Loc. 591, Transp. Workers Union of Am. v. Am. Airlines Inc.*, 2015 WL 3852958, at *6 (N.D. Ill. June 19, 2015) (quotation omitted).  As explained in the Motion, Section 1.J. of the Cape Air-IBT CBA is broad on its face, granting Cape Air wide discretion on, among other things, offering employment incentives and the specific terms to govern any such incentives

13

where they are not otherwise limited.  (ECF No. 25 at 20.)  Contrary to Plaintiffs' arguments that

Cape Air must show "an established understanding that this Section 1.J. has been applied in the

past to permit [Cape] Air to enter individual agreements with pilots to pay bonuses," (ECF No.

33 at 13), the *Conrail* standard does not require that showing.  In *Conrail* itself, the company had

not previously taken the exact action that the plaintiffs challenged under the CBA (*i.e.*,

implementing "drug screens in all routine physical examinations" for employees), but the

Supreme Court found the action was "arguably justified" by the implied CBA terms.  491 U.S. at

316.  Nor does Section 1.J. need to expressly mention "bonuses paid to pilots or individual

agreements," as Plaintiffs suggest.  (ECF No. 33 at 13; *see also Conrail*, 491 U.S. at 320 (finding

that employer "met the light burden of persuading this Court" that its action was "arguably

justified by the *implied terms* of its collective-bargaining agreement" (emphasis added)).)

Many courts have found an employer's reliance on rights set forth in a management

rights clause is sufficient to confirm the existence of a minor dispute.  *See, e.g.*, *Loc. 591*, 2015

WL 3852958, at *6 (finding employer's reliance on right set forth in management rights clause

to manage its operations and supervise its workforce was sufficient to confirm existence of minor

dispute); *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.-Airline Div. &

Teamsters Loc. 19 v. Sw. Airlines Co.*, 875 F.2d 1129, 1136-37 (5th Cir. 1989) (finding drug

testing program implemented by carrier was "arguably justified" by the CBA's management

rights clause); *Air Line Pilots Ass'n Int'l v. Mesa Airlines, Inc.*, 2017 WL 2837135, at *6 (E.D.

Va. June 29, 2017) (carrier argued that bonus program it implemented was justified by the CBA;

court found a minor dispute where, as here, not only did the CBA "not expressly prohibit bonus

programs, those programs are also arguably justified under the Management Rights Clause," as

"any dispute over whether the language within the Management Rights clause permits unilateral

implementation of bonus programs presents a question of contract interpretation").

Plaintiffs correctly note that Section 1.J. limits Cape Air's authority to the extent the exercise of such rights conflicts with the terms of the Cape Air-IBT CBA.  (ECF No. 33 at 13.)  But while Plaintiffs allege the existence of such conflicts, they fail to identify any CBA provision that expressly conflicts with Cape Air's management rights to enter into the Pathway Program Pre-Hire Agreement.  Plaintiffs argue that the incentive payments offered in the Pathway Program Pre-Hire Agreement "unquestionably . . . change[] the employee's compensation" and "conflict[] with the pilot pay rates and other compensation rules."  (*Id.*)  Under the Pathway Program Pre-Hire Agreement, however, Cape Air does not change the pilot candidate's compensation.  Rather, Cape Air simply provides a monthly housing stipend (or directly arranges housing) during the pilot candidate's employment at Cape Air.  (ECF No. 20-1 at 2.)  Plaintiffs also concede that the Cape Air-IBT CBA "contains no mention of bonuses or stipends paid to pilots." (ECF No. 33 at 14.)  As explained in the Motion, allegations of contractual silence only show that the pre-hire agreements do not contradict any provisions of the CBA.  (ECF No. 25 at 23.)  And to the extent the meaning of this alleged silence raises contract interpretation issues, they must be resolved in arbitration by the System Board.

Plaintiffs once again miss the mark by arguing that Cape Air does not dispute Plaintiffs' allegation that the company conceded in bargaining that it lacked authority to implement a bonus for pilots absent IBT's agreement, and that the only time Cape Air pilots have been paid a bonus, that bonus was negotiated and agreed on by the company and IBT.  (ECF No. 33 at 14.)  Again, not only does Cape Air not pay a bonus under the pre-hire agreement, even if it did that allegation cannot override the actual agreement in Section 1.J., which grants Cape Air wide discretion on, among other things, offering employment incentives and the specific terms to

15

govern any such incentives where they are not otherwise limited.  (ECF No. 25 at 20.)  By no means is Cape Air's argument on this point "frivolous or obviously insubstantial."  Under *Conrail*, the plain language in Section 1.J. of the CBA is sufficient to satisfy the "relatively light burden" to establish that a dispute is "minor" and subject to mandatory and exclusive arbitration.

Plaintiffs challenge the Carriers' assertion that they "plan to present evidence of past practice that supports the use of pre-hire agreements in arbitration," claiming that they "miss[] the point" of the facial challenge in court and cannot dispute Plaintiffs' allegations.  (ECF No. 33 at 14 n.6.)  But it is Plaintiffs who miss the point here.  Under *Conrail*, Plaintiffs' allegations present minor disputes subject to the exclusive jurisdiction of the System Board.  It is not proper to litigate the facts of this dispute at this stage and in this forum.  Doing so would eviscerate the System Board's exclusive jurisdiction and undermine the RLA's dispute-resolution framework.

### (2) *Plaintiffs dispute the meaning of Article 3.O. as to Cape Air pilots*

Plaintiffs separately dispute whether the Republic-IBT CBA authorizes Republic to enter agreements with employees of Cape Air, and claim that Republic's contract justification on Article 3.O. is "insubstantial" under *Conrail*.  (ECF No. 33 at 15-17.)  Not so.  Nothing in the Republic-IBT CBA restricts Republic's ability to provide incentive payments to employees at other carriers.  The Republic-IBT CBA only applies to pilots employed by Republic.  It cannot—and does not—restrict Republic's ability to enter into contracts with third parties like pilot candidates employed by other carriers.  *Supra* 5-6.

Article 3.O. does not restrict Republic's right to offer incentives under the pre-hire agreements to Cape Air pilots because they are not Republic employees.  The language cannot plausibly be construed to limit bonuses or incentives to individuals who have already been hired by Republic; that would be nonsensical for a provision aimed at "recruitment efforts."  Similarly,

with respect to Captain upgrade training, Article 3.O.3. does not exclude Cape Air pilots.  That provision identifies the purpose of Republic's payments—"to incentivize a qualified Pilot to complete Captain qualification training"—but does not limit that incentive to Republic's pilots. And even if it did, under the Pathway Program Pre-Hire Agreement, the pilot candidate will be eligible for an incentive payment upon successfully upgrading to the position of Captain *while employed by Republic*.  Plaintiffs' efforts to parse the meaning of the terms "New Hire Pilots" and "Pilots" under Article 2 of the Republic-IBT CBA and restrict the universe of who may be covered by those terms (ECF No. 33 at 15-16), fails for the same reasons explained above, *supra* 5-7.

### (3)   *Plaintiffs dispute the meaning of alleged "conflicts" or silence in the CBAs*

Plaintiffs assert that the Pathway Program Pre-Hire Agreement "conflicts" with the terms of the CBAs.  (*Id.* at 19.)  Plaintiffs claim, for the very first time in the Opposition, that under the scope provisions of the CBAs, the Carriers cannot enter into other agreements "governing the rates of pay, rules and working conditions of its pilots."  (*Id.* at 26.)  Nothing in Sections 1.D.1 or 1.E.1. of the Cape Air-IBT CBA, or Articles 1.C. or 1.D. of the Republic-IBT CBA, conflicts with the Carriers' right to enter into the Pathway Program Pre-Hire Agreement, including under Section 1.J.  Section 1.E.1., for example, seeks to protect the right of Cape Air pilots to fly Cape Air flights, in accordance with the terms of the CBA.  (ECF No. 25-7 at 7-8 § 1.E.1.)  And this provision includes a carve out for Section 1.J., providing "[e]xcept as provided elsewhere in this Agreement."  (*Id.* at 7.)  Article 1.D.2. of the Republic-IBT CBA includes the same carve out for the rights covered by other provisions of the CBA.  *Supra* 9-10.  Plaintiffs have thus failed to undermine the Carriers' showing that this is a minor dispute.  *E.g.*, *supra* 11-12.

With respect to Plaintiffs' allegations of "conflicts" with the Cape Air-IBT CBA, (ECF

No. 20 ¶ 39), nothing in the Pathway Program Pre-Hire Agreement "deprives" a pilot from exercising any rights under the CBA, (ECF No. 20-1).  A pilot can exercise rights under the CBA regarding "work schedule bidding, days off, [] leave entitlements," "scheduling, overtime bidding, [] minimum days off," "vacation, sick leave, personal time, fatigue and other leave provisions," and "physical standards," (ECF No. 20 ¶ 39(a)-(b), (e)-(f)), and still meet the conditions for participation in the program.  The amount of time it takes to achieve the hours set forth does not impact employment; it only affects the amount of the bonus, to which the pilot is not otherwise entitled.  (ECF No. 20-1.)  Similarly, nothing in the Pathway Program Pre-Hire Agreement affects a pilot's rights under the Republic-IBT CBA.  *Supra* 10-11.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER COUNTS I & II AS TO THE CARRIERS AND COUNTS I THROUGH III AGAINST HOLDINGS

As to Count I against the Carriers, Plaintiffs fail to cite or address the controlling precedent in *Trans World Airlines, Inc. v. Independent Federation of Flight Attendants*, 489 U.S. 426 (1989), upon which the Carriers rely.  Instead, Plaintiffs suggest that the arbitration dispute-resolution framework is ineffective here because the pre-hire agreements contain forum selection clauses, and argue that as a result, individual pilot candidates cannot file grievances to challenge the agreements because the clauses vest Indiana state courts with exclusive jurisdiction.  (ECF No. 33 at 28.)  But Plaintiffs ignore that the *union* can bring a grievance to challenge the pre-hire agreements, as Plaintiffs have done here.  The union is bound by and cannot circumvent the parties' CBA dispute-resolution procedures once it has been certified, as IBT is here.

As to Count II against the Carriers, Plaintiffs claim the Carriers failed to "treat" with IBT over the pre-hire agreements as required under Section 2, Ninth, including by dealing directly with pilot candidates over the terms of the agreements.  (*Id.* at 28-29.)  But claims against a carrier for failure to "treat" require allegations that the carrier failed to recognize and/or deal

with the NMB-certified union for collective bargaining purposes with respect to rates of pay, rules, and working conditions of the craft or class.  *See, e.g.*, *Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Alitalia Airlines*, 600 F. Supp. 268, 273-74, 276 (S.D.N.Y 1984).  Plaintiffs cannot and do not plausibly support this claim.  (ECF No. 25 at 27-28.)

Plaintiffs' case cites are inapposite to their Section 2, Ninth claim.  (ECF No. 33 at 28-30.)  For example, in *International Brotherhood of Teamsters, Airline Division v. Frontier Airlines, Inc.*, 2012 WL 1059997 (D. Colo. Mar. 29, 2012), the court found the Section 2, Ninth claim was sufficiently pled where "an about-to-be ousted union and an employer [] create[d] an agreement whereby the successor union would be prevented from negotiating . . . matters for a portion of its bargaining unit" and a third-party entity would "act as a negotiating representative."  *Id.* at *8.  That case is simply irrelevant here—the Carriers have only treated with IBT, the certified union, and have clearly negotiated over their express rights to enter into the pre-hire agreements, as evidenced by Article 3.O. and Section 1.J.  Further, the RLA does not preclude a carrier from entering into agreements with individual employees so long as the agreements do not conflict with or supersede the CBA.  (ECF No. 25 at 27-28.)  Resolution of this claim thus requires interpretation of the CBAs to determine if the agreements allow for the pre-hire agreements—which, as explained, the express CBA provisions clearly do.

As to Counts I through III against Holdings, Plaintiffs concede that Count II should be dismissed because Holdings is not an "air carrier" covered by the RLA.  Counts I and III against Holdings should be dismissed as well.  The FAC makes only a conclusory allegation that Holdings is an "agent" of Republic without support.  (ECF No. 20 ¶ 9.)  This Court need not accept conclusory allegations as true.  *See Howard v. Gibson*, 2018 WL 11303851, at *1 (S.D. Ind. Apr. 5, 2018) (court need not consider legal conclusions and conclusory allegations are not

entitled to assumption of truth).

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' FAC in its entirety.


Dated: October 6, 2023                 Respectfully submitted,


By: /s/ Robert A. Siegel
Robert A. Siegel (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street 18th Floor
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: rsiegel@omm.com

Aparna B. Joshi (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 I Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: ajoshi@omm.com

David J. Carr  (Atty. No. 4241-49)
Paul C. Sweeney (Atty. No. 20392-29)
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282-0002
Telephone: (317) 236-2100
Fax: (317) 236-2219
E-mail: david.carr@icemiller.com
E-mail:  paul.sweeney@icemiller.com

***Attorneys for Defendants***